**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
*In re:*                                             :
                                                     :          **Chapter 11**
                                                     :
**GEORGE WASHINGTON BRIDGE**           :          **Case No. 19–13196 (SCC)**
**BUS STATION DEVELOPMENT**            :
**VENTURE LLC,**                       :
                                                     :
            **Debtor.**                              :
                                                     :
------------------------------------------------------------ x

### INTERIM ORDER (I) AUTHORIZING DEBTOR TO (A) OBTAIN POSTPETITION SENIOR SECURED FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (IV) INVALIDATING ANY PURPORTED PREPETITION AWARD OF ATTACHMENT OF FUNDS, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**") of George Washington Bridge Bus Station Development Venture LLC, as a debtor and debtor-in-possession (the "**Debtor**") in the above-captioned case (the "**Chapter 11 Case**"), pursuant to sections 105, 361, 362, 363, 364, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), seeking, among other things:

A.      authorization for the Debtor to obtain secured debtor-in-possession financing (the "**DIP Financing**"), consisting of a superpriority senior secured multi-draw loan facility (the "**DIP Facility**"), in an aggregate principal amount of up to $4,400,000.00 (the "**DIP Commitments**"), all on the terms and conditions set forth in this interim order (the "**Interim Order**") and the DIP Documents (as defined below), and on an interim basis, to borrow an aggregate principal amount not to exceed $1,225,031.00 (the "**Interim Amount**");

B.      authorization for the Debtor to execute and enter into the *Superpriority Senior Secured Debtor-in-Possession Loan Agreement*, among the Debtor and New York City Regional Center, LLC, as lender thereto (the "**DIP Lender**"), attached hereto

as **Exhibit A** (as amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Loan Agreement**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments and/or amendments executed and delivered in connection therewith, collectively, the "**DIP Documents**"),[1] and the other DIP Documents, and to perform all such other and further acts as may be required in connection with the DIP Facility and the DIP Documents;

C.      the granting of adequate protection to:

(i)      George Washington Bridge Bus Station and Infrastructure Development Fund, LLC, in its capacity as the lender (the "**Senior Secured Lender**") of a $72,000,000 loan (the "**Senior Secured Loan**") made pursuant to that certain *Permanent Loan Agreement*, dated as of July 20, 2011 (as amended, restated, supplemented, or modified from time to time, the "**Senior Secured Loan Agreement**"), between the Debtor and the Senior Secured Lender;

(ii)     Upper Manhattan Empowerment Zone Development Corporation, in its capacity as a lender ("**UMEZ**") of a $5,000,000 loan (the "**UMEZ Loan**") made pursuant to that certain *Loan Agreement*, dated as of February 27, 2018 (as amended, restated, supplemented, or modified from time to time, the "**UMEZ Loan Agreement**"), between the Debtor and UMEZ; and

(iii)    GSNMF Sub-CDE 12 LLC, as one of the lenders (the "**Building Secured Lender**," and together with the Senior Secured Lender and UMEZ, the "**Prepetition Secured Parties**") of $19,065,000 in loans (the "**Building Loans**") under that certain *Building Loan Agreement*, dated as of December 26, 2013 (as amended, restated, supplemented, or modified from time to time, the "**Building Loan Agreement**") by and among the Debtor, GSB NMTC Investor LLC, as administrative agent (the "**Building Loan Agent**"), LIIF Sub-CDE XXVI, LLC ("**LIIF CDE**") and DVCI CDE XIII, LLC ("**DV CDE**") as co-lenders (collectively with the Building Secured Lender, the "**Building Lenders**").

D.      subject to the restrictions set forth in the DIP Documents and this Interim Order, authorization for the Debtor to use Cash Collateral (as defined below) and all other Prepetition Collateral (as defined below) in which any of the Prepetition Secured Parties have an interest and the granting of adequate protection to the Prepetition Secured Parties with respect to, *inter alia*, such use of Cash Collateral and the other Prepetition Collateral;

---

[1] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the DIP Loan Agreement.

E.    subject to certain challenge rights of parties in interest set forth herein, approval of certain stipulations by the Debtor with respect to the Prepetition Secured Credit Documents (as defined below) and the liens and security interests arising therefrom;

F.    the granting of superpriority claims pursuant to section 364(c)(1) of the Bankruptcy Code to the DIP Lender as well as liens, including priming liens, pursuant to section 364(d) of the Bankruptcy Code, as further described herein, on all prepetition and postpetition property of the Debtor's estate and all proceeds thereof including, subject to Court approval and entry of the Final Order (as defined below), any Avoidance Proceeds (as defined below);

G.    subject to Court approval and entry of the Final Order, the waiver of the Debtor's right to surcharge the Prepetition Collateral and the Debtor Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code and any right of the Debtor under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

H.    subject to Court approval and entry of the Final Order, a finding that none of the DIP Lender or the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Debtor Collateral;

I.    invalidating any purported prepetition award of attachment of funds in favor of Tutor Perini Building Corp. ("**TPBC**") and authorizing the Debtor to utilize rents and monies prepetition and post-petition to fund necessary and critical expenses solely in accordance with the Approved Budget (as defined herein);

J.    the modification of the automatic stay to the extent set forth herein and in the DIP Documents; and

K.    set the date for the hearing (the "**Final Hearing**") to consider on a final basis the Motion and the entry of a final order (the "**Final Order**") authorizing and approving the transactions described in the foregoing clauses.

This Court having reviewed the Motion, the exhibits attached thereto, the *Declaration of Bernard A. Katz* (the "**First Day Declaration**"), the *Declaration of Bernard A. Katz in Support of the Motion* (the "**Katz Declaration**"), and the evidence submitted at the interim hearing held on October 10, 2019 (the "**Interim Hearing**"); and adequate notice of the Motion and the Interim Hearing having been given under the circumstances; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Debtor, its estate, its creditors and all parties in interest

3

and is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending the Final Hearing; and any objections to the Motion having been withdrawn or overruled on the merits; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor;

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, THAT:**

1.    *Disposition.*  The relief requested in the Motion is granted on an interim basis as set forth herein.  Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled are hereby denied and overruled on the merits.  This Interim Order shall become effective immediately upon its entry.

2.    *Debtor-in-Possession Operation*.  On October 7, 2019 (the "**Petition Date**"), the Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.    *Jurisdiction and Venue*.  This Court has jurisdiction over the Chapter 11 Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.  Venue for the Chapter 11 Case and proceeding on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    *Notice*.  Notice of the Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Rules and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.  The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending the Final Hearing, for purposes of Bankruptcy Rule 6003.

48036/0047-17905784v4

5.    *Debtor's Stipulations*.  Without prejudice to the rights of any other party in interest and subject to the limitations thereon contained in paragraphs 23 and 24 below, the Debtor admits, stipulates and agrees that:

(a)    Before the Petition Date, the Debtor was indebted and liable to the Senior Secured Lender in respect of the Senior Secured Loan issued under the Senior Secured Loan Agreement (together with any ancillary documents, security agreements, guarantees, pledge agreements and notes issued in connection therewith, collectively, the "**Senior Secured Loan Documents**") in the aggregate principal amount of not less than $72,000,000 plus all accrued but unpaid interest (including at the default rate, as applicable), fees, expenses, and all other obligations expressly provided for thereunder, or incurred in connection therewith (such obligations under the Senior Secured Loan and the Senior Secured Loan Documents, the "**Senior Secured Loan Obligations**"), and the Debtor is unconditionally liable, without defense, counterclaim, offset or setoff of any kind, with respect to the Senior Secured Loan Obligations.

(b)    To secure the Senior Secured Loan Obligations, the Debtor entered into various security and collateral documents pursuant to and in connection with the Senior Secured Loan Documents, including the Intercreditor Agreements (as defined below), pursuant to which the Senior Secured Lender was granted the benefit of valid, binding, perfected, enforceable, first-priority liens and security interests in the Senior Collateral (as defined below) (the "**Senior Secured Loan Liens**").  The Senior Secured Loan Liens provide the Senior Secured Lender with valid, binding, perfected, enforceable, first-priority liens, and security interests in the Collateral (as defined in the Senior Secured Loan Agreement) (such Collateral, the "**Senior Collateral**") that are (i) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense, or claim under the Bankruptcy Code or applicable non-bankruptcy law and (ii) as of the Petition Date are not subject or subordinate to or *pari passu* with any other liens.

(c)    Before the Petition Date, pursuant to that certain *Assignment of Leases and Rents* dated February 22, 2013 (the "**ALR**") the Debtor assigned to Senior Secured Lender of its right, title and interest in and to all leases, rents, income and profits (collectively, the "**Rents**") arising from all current and future (without any further or supplemental assignment) leases, subleases, tenancies, occupancy agreements, and licenses (as the same may be modified or extended), that may be made by the Debtor, as sub-sublessor under the that certain Memorandum of Lease, dated as of July 21, 2011 by and between the Port Authority of New York and New Jersey and the Debtor, with third parties of the Premises (as defined in the ALR) or any part thereof, and from all guaranties of such leases, tenancies, occupancy agreements (collectively, the "**Leases**") or otherwise arising from the use and occupation of all or any part of the Premises or otherwise arising from the Premises. The ALR provides that so long as there shall exist no event of default continuing under the

5

Senior Secured Loan Agreement, nor any default by the Debtor in the performance of any obligation contained in the ALR, the Senior Secured Lender waives the right to collect the Rents directly from the tenants under the Leases and the Assignor may continue to collect the Rents.

(d)     On July 20, 2019 (the "**Revocation Date**"), on account of the continuation of an event of default under the Senior Secured Loan Agreement, Senior Secured Lender validly revoked the right of the Debtor to collect Rents in accordance with the ALR. On account of such revocation, the Debtor's right to collect Rents was terminated and all monies received became the property of the Senior Secured Lender. Any and all Rents received by the Debtor following the Revocation Date are solely being held by the Debtor in trust for the Senior Secured Lender and do not represent property of the Debtor's estate under Section 541 of the Bankruptcy Code. Any and all Rents received by the Senior Secured Lender after the Revocation Date represent the property of the Senior Secured Lender and the Senior Secured Lender shall continue to be entitled to receive all Rents following the Petition Date.

(e)     By virtue of any of the actions taken with respect to, in connection with, related to or arising from the Senior Secured Loan Documents, the Senior Secured Lender does not control the Debtor or its properties or operations or have authority to determine the manner in which the Debtor's operations are conducted, and is not a control person or insider of the Debtor.

(f)     Before the Petition Date, the Debtor was indebted and liable to GWB Leverage Lender, LLC (the "**Direct Lender**"), under that certain *Loan Agreement*, dated as of April 7, 2014 (as amended, restated, supplemented, or modified from time to time, the "**Direct Loan Agreement**," and together with any ancillary documents, pledge agreements, guarantees, and notes issued in connection therewith, collectively the "**Direct Loan Documents**") in respect of a loan (the "**Direct Loan**") in the aggregate principal amount of not less than $9,000,000 plus all accrued but unpaid interest (including at the default rate, as applicable), fees, expenses, and all other obligations expressly provided for thereunder, or incurred in connection therewith (such obligations under the Direct Loan and the Direct Loan Documents, the "**Direct Loan Obligations**"), and the Debtor is unconditionally liable, without defense, counterclaim, offset or setoff of any kind, with respect to the Direct Loan Obligations.

(g)     Before the Petition Date, the Direct Lender acquired from and was assigned all rights as lender of a loan by FoodCo LLC ("**FoodCo**"), under which GWB NMTC Investment Fund LLC (the "**Funding Borrower**") was indebted and liable to FoodCo under that certain *Senior Leverage Loan Agreement*, dated as of December 26, 2013 (as amended, restated, supplemented, or modified from time to time, the "**FoodCo Loan Agreement**," and together with any ancillary documents, pledge agreements, guarantees, and notes issued in connection therewith, collectively the "**FoodCo Loan Documents**") in respect of a loan (the "**FoodCo Loan**") in the aggregate principal amount of not less than $10,000,000 plus all

6

accrued but unpaid interest (including at the default rate, as applicable), fees, expenses, and all other obligations expressly provided for thereunder, or incurred in connection therewith (such obligations under the FoodCo Loan and the FoodCo Loan Documents, the "**FoodCo Loan Obligations**").  The FoodCo Loan was utilized by the Funding Borrower to indirectly fund $10,000,000 of the Building Loans (such portion of the Building Loan, the "**FoodCo Building Loan**", and collectively with the Senior Secured Loan and the Direct Loan, the "**Prepetition Senior Loans**", and such obligations under the FoodCo Building Loan, the "**FoodCo Building Loan Obligations**" and collectively with the Senior Secured Loan Obligations and the Direct Loan Obligations, the "**Prepetition Senior Loan Obligations**").  Upon the Debtor's repayment of the FoodCo Building Loan Obligations to the Building Lenders, the Building Lenders are required to dividend such proceeds to the Funding Borrower, who is required to repay the FoodCo Loan to the Direct Lender (the Direct Lender collectively with the Senior Secured Lenders and the lenders to the FoodCo Building Loan, the "**Senior Loan Parties**").

(h)     To secure the FoodCo Loan Obligations, the Funding Borrower entered into various security and collateral documents pursuant to and in connection with the FoodCo Loan Documents, pursuant to which FoodCo was granted or otherwise entitled to the benefit of a valid, binding, perfected, enforceable, pledge of all of Funding Borrower's assets, including all of its non-managing membership interests in each of the Building Lenders (the "**FoodCo Loan Pledge**").  The FoodCo Loan Pledge provided FoodCo with a valid, binding, perfected, enforceable, lien, security interest, and pledge of the Collateral (as defined in the FoodCo Loan Agreement) (such Collateral, the "**FoodCo Loan Collateral**") that is not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense, or claim under the Bankruptcy Code or applicable non-bankruptcy law.  The benefit of the FoodCo Loan Pledge was assigned to Direct Lender contemporaneously with Direct Lender acquiring the rights as lender under the FoodCo Loan.

(i)     Before the Petition Date, the Debtor was indebted and liable to UMEZ in respect of the UMEZ Loan issued under the UMEZ Loan Agreement (together with any ancillary documents, security agreements, guarantees, pledge agreements and notes issued in connection therewith, collectively, the "**UMEZ Loan Documents**") in the aggregate principal amount of not less than $5,000,000 plus all accrued but unpaid interest, fees, expenses, and all other obligations expressly provided for thereunder, or incurred in connection therewith (such obligations under the UMEZ Loan and the UMEZ Loan Documents, the "**UMEZ Loan Obligations**"), and (i) the Debtor is unconditionally liable, without defense, counterclaim, offset or setoff of any kind, with respect to the UMEZ Loan Obligations, and (ii) in accordance with the Intercreditor Agreement, UMEZ (subject to limited exclusions) is subordinated in right of payment to the prior payment in full of the Prepetition Senior Loans.

7

(j)     To secure the UMEZ Loan Obligations, the Debtor entered into various security and collateral documents pursuant to and in connection with the UMEZ Loan Documents, including the Intercreditor Agreement, pursuant to which UMEZ was granted or otherwise entitled to the benefit of a valid, binding, perfected, enforceable, mortgage (the "**UMEZ Mortgage**") on the Mortgaged Property (as defined in the UMEZ Loan Agreement) (such Mortgaged Property, the "**UMEZ Loan Collateral**"). The UMEZ Mortgage provides UMEZ with a valid, binding, perfected, enforceable, mortgage on the UMEZ Loan Collateral that is (i) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense, or claim under the Bankruptcy Code or applicable non-bankruptcy law and (ii) as of the Petition Date is subject and subordinate only to certain valid, perfected, and unavoidable liens, including the Senior Secured Loan Liens and the Building Loan Mortgage (solely to the extent the Building Loan Mortgage applies to the FoodCo Building Loan Obligations), which are senior to the liens of UMEZ on the UMEZ Loan Collateral.

(k)     Before the Petition Date, the Debtor was indebted and liable to the Building Lenders in respect of the Building Loans issued under the Building Loan Agreement (together with any ancillary documents, security agreements, guarantees, pledge agreements and notes issued in connection therewith, collectively, the "**Building Loan Documents**" and, together with the Senior Secured Loan Documents, the UMEZ Loan Documents, and the Intercreditor Agreements (as defined below), the "**Prepetition Secured Credit Documents**") in the aggregate principal amount of not less than $19,065,000 plus all accrued but unpaid interest, fees, expenses, and all other obligations expressly provided for thereunder, or incurred in connection therewith (such obligations under the Building Loan and the Building Loan Documents, the "**Building Loan Obligations**"), and in accordance with the Intercreditor Agreements, the Building Lenders are subordinated in right of payment to the prior payment in full of (i) the Senior Secured Loan, (ii) the Direct Loan, and (iii) the UMEZ Loan, other than in respect of the FoodCo Building Loan, which shall be paid in full before any repayment on account of the UMEZ Loan.

(l)     To secure $5,000,000 (plus interest thereon and any and all fees with respect thereto) of Building Loan Obligations (the "**Building Secured Loan Obligations**," and, together with the Senior Secured Loan Obligations and the UMEZ Loan Obligations, the "**Prepetition Secured Debt**"), the Debtor entered into various security and collateral documents pursuant to and in connection with the Building Loan Documents pursuant to which the Building Secured Lender (but not the other Building Lenders) was granted or otherwise entitled to the benefit of a valid, binding, perfected, enforceable, mortgage (the "**Building Loan Mortgage**" and, together with the Senior Secured Loan Liens and the UMEZ Mortgage, the "**Prepetition Liens**") in the Mortgaged Property (as defined in the Building Loan Agreement) (such Mortgaged Property, the "**Building Loan Collateral**," and collectively with the Senior Collateral and the UMEZ Loan Collateral, the "**Prepetition Collateral**"). The Building Loan Mortgage provides the Building

8

Secured Lender with valid, binding, perfected, enforceable, liens, and security interests in the Building Loan Collateral that are (i) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense, or claim under the Bankruptcy Code or applicable non-bankruptcy law and (ii) as of the Petition Date, are subject and subordinate only to certain valid, perfected, and unavoidable liens, including the Senior Secured Loan Liens, which are senior to the liens of the Building Secured Lender on the Building Loan Collateral. The Debtor is unconditionally liable, without defense, counterclaim, offset or setoff of any kind, with respect to the Building Secured Loan Obligations.

(m)     The Prepetition Secured Debt constitutes the legal, valid, binding, non-avoidable and enforceable obligations of the Debtor, and the Prepetition Secured Parties have, or are the beneficiaries of, valid, binding, properly perfected, non-avoidable, and enforceable liens on and security interests in the Prepetition Collateral, as applicable.

(n)     All proceeds of the Prepetition Collateral, as applicable, and all cash and cash equivalent proceeds maintained in deposit or securities accounts subject to prepetition control agreements or otherwise within the control of the Prepetition Secured Parties, as applicable, are "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

(o)     The Debtor, the Prepetition Secured Parties, the Direct Lender, and the Building Lenders are subject to that certain *Subordination and Intercreditor Agreement* dated as of February 27, 2018 (as amended, restated, supplemented or modified from time to time before the date hereof, the "**Intercreditor Agreement**"), pursuant to which (i) the Prepetition Secured Parties set forth the respective priorities of the Prepetition Liens on the Prepetition Collateral, and (ii) the Prepetition Secured Parties, the Direct Lender, and the Building Lenders set forth the priority of payment in respect of the Prepetition Secured Debt and the Building Loans. Pursuant to the Intercreditor Agreement (x) any lien on the Prepetition Collateral securing the Senior Secured Loan Obligations shall have priority over and be senior in all respects and before any lien on the Prepetition Collateral securing any UMEZ Loan Obligations or Building Secured Loan Obligations and (y) any lien on the Prepetition Collateral securing the UMEZ Loan Obligations shall have priority over and be senior in all respects and before any lien on the Prepetition Collateral securing any Building Secured Loan Obligations (other than the liens pertaining to the FoodCo Building Loan Obligations, which such FoodCo Building Loan Obligations shall rank first and prior to the UMEZ Loan Obligations). Furthermore, pursuant to the Intercreditor Agreement, the UMEZ Loan Obligations and the Building Loan Obligations are subordinated in right of payment to the Prepetition Senior Loan Obligations.

(p)     The Prepetition Senior Secured Lender, the Direct Lender, and the Debtor are subject to that certain *Subordination and Intercreditor Agreement*, dated as of

9

February 27, 2018 (as amended, restated, supplemented or modified from time to time, the "**Senior Intercreditor**"), pursuant to which the Direct Lender is payment and lien subordinated to the Senior Secured Lender.

(q)     The Direct Lender and the Building Lenders are subject to that certain *Subordination and Intercreditor Agreement*, dated as of April 7, 2014 (as amended, restated, supplemented or modified from time to time, the "**Direct Loan Intercreditor**"), pursuant to which the Building Loan Obligations, including the Building Loan Secured Obligations, are lien and payment subordinated in all respects to the Direct Loan Obligations.

(r)     The Senior Secured Lender and the Building Lenders are subject to that certain *Subordination and Intercreditor Agreement*, dated as of December 26, 2013 (as amended, restated, supplemented or modified from time to time, the "**Building Loan Intercreditor**", and collectively with the Senior Intercreditor, the Direct Loan Intercreditor, and the Intercreditor Agreement, the "**Intercreditor Agreements**"), pursuant to which the Building Loan Obligations, including the Building Loan Secured Obligations, are lien and payment subordinated in all respects to the Senior Secured Loan Obligations.

(s)     UMEZ's and the Building Secured Lender's interests in the Prepetition Collateral pursuant to and in connection with the Prepetition Secured Credit Documents are or shall be subject and subordinate to: (i) the DIP Liens, the Senior Secured Loan Liens, and the Senior Secured Loan Adequate Protection Liens (as defined below); (ii) the Carve-Out (as defined below) to which the DIP Liens and the Senior Secured Loan Adequate Protection Liens are subject; (iii) any valid, perfected and unavoidable liens permitted under the DIP Documents or the Prepetition Secured Credit Documents; and (iv) the Prepetition Senior Loan Obligations.

(t)     The liens granted to the DIP Lender shall be valid, enforceable and non-avoidable liens against the Debtor.

(u)     Events of default have occurred and are continuing under the terms of the Senior Secured Loan Documents.  The Senior Secured Lender expressly reserves all of its respective rights, powers, privileges, and remedies under the Senior Secured Loan Documents and the ALR, including, but not limited to the collection of Rent from all Leases.

6.     *Release.*   Subject in all respects to paragraph 23 hereof, the Debtor hereby absolutely, unconditionally, and irrevocably releases and forever discharges and acquits the Senior Secured Lender and its respective Representatives (as defined below) (collectively, the "**Released Parties**") from any and all obligations and liabilities to the Debtor (and their successors and assigns) and from any and all claims, counterclaims, demands, debts, accounts, contracts,

10

liabilities, actions and causes of action arising before the Petition Date (collectively, the "**Released**

**Claims**") of any kind, nature or description, whether known or unknown, foreseen or unforeseen

or liquidated or unliquidated, arising in law or equity or upon contract or tort or under any state or

federal law or otherwise, arising out of or related to (as applicable) the Prepetition Secured Credit

Documents, the obligations owing and the financial obligations made thereunder, the negotiation

thereof and of the deal reflected thereby, and the obligations and financial obligations made

thereunder, in each case that the Debtor at any time had, now have or may have, or that their

successors or assigns hereafter can or may have against any of the Released Parties for or by reason

of any act, omission, matter, cause, or thing whatsoever arising at any time on or before the date

of this Interim Order, whether such Released Claims are matured or unmatured or known or

unknown.

7.    *Findings Regarding the DIP Financing and Cash Collateral.*

(a)    Good and sufficient cause has been shown for the entry of this Interim Order.

(b)    The Debtor has an immediate need to obtain the DIP Financing and continue to use the Prepetition Collateral (including Cash Collateral). The Debtor's borrowings from the DIP Lender under the DIP Facility will be used in a manner consistent with the terms and conditions of the applicable DIP Documents and this Interim Order for: (i) working capital and other general corporate purposes of the Debtor in accordance with the Budget (as defined in the DIP Loan Agreement); (ii) payment of amounts due under the DIP Facility in accordance with the Budget; (iii) payment of the professional fees and expenses of administering the Chapter 11 Case (including payments benefiting from the Carve-Out (as defined below)); and (iv) other purposes as expressly set forth in this Interim Order or the Budget, or as expressly approved by the DIP Lender. Except with the prior written consent of the DIP Lender in its sole discretion, the Debtor shall not be permitted to use the proceeds of the DIP Facility and the proceeds of the Prepetition Collateral (including the Cash Collateral) in contravention of the provisions of the orders entered in the Chapter 11 Case, including any restrictions or limitations on the use of proceeds contained therein. The Debtor's access to sufficient working capital through the use of Cash Collateral and other Prepetition Collateral and the incurrence of indebtedness under the DIP Facility are necessary and vital to the preservation and maintenance of the going-concern value of the Debtor. The Debtor's use of Cash Collateral alone would be insufficient to meet the Debtor's

11

cash disbursement needs during the period of effectiveness of this Interim Order. The access by the Debtor to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, incurrence of new indebtedness under the DIP Facility, and other financial accommodations provided under the DIP Documents are necessary and vital to avoid an immediate liquidation and for the preservation and maintenance of the going concern value of the Debtor and to a successful restructuring of the Debtor.

(c)     The Debtor is unable to obtain financing on terms more favorable than that offered by the DIP Lender under the DIP Documents and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtor is also unable to obtain secured credit allowable solely under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code.

(d)     Based on the Motion, the declarations filed in support of the Motion, and the record presented to the Court at the Interim Hearing, the terms of the DIP Financing, the terms of the Adequate Protection Obligations, and the terms on which the Debtor may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order and the DIP Documents are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and fair consideration.

(e)     The Prepetition Secured Parties have consented to the use of Cash Collateral and the other Prepetition Collateral, the priming of the Prepetition Liens pursuant to section 364(d)(1) of the Bankruptcy Code, and the Debtor's entry into the DIP Documents in accordance with and subject to the terms of this Interim Order and the DIP Documents.

(f)     The DIP Financing, as well as the terms of the Adequate Protection Obligations, and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the Debtor, the Prepetition Secured Parties, and the DIP Lender, and their respective advisors, and all of the Debtor's obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including: (i) all loans made to and guarantees issued by the Debtor pursuant to the DIP Documents (collectively, the "**DIP Loans**") and (ii) any "**Secured Obligations**" (as defined in the DIP Loan Agreement) of the Debtor owing to the DIP Lender or any of its affiliates, in accordance with the terms of the DIP Documents, including any obligations, to the extent provided for in the DIP Documents, to indemnify the DIP Lender and to pay any fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the DIP Documents), amounts, charges, costs, indemnities and other obligations that are chargeable or reimbursable under this Interim Order, the Final Order or the DIP Documents (the foregoing in clauses (i) and (ii) collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Lender and its

12

respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Lender (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise. In providing the DIP Loan and consenting to the use of Cash Collateral, the DIP Lender, the Senior Secured Lender and their principals and affiliates have acted in the best interests of the Debtor's estate, for the benefit of all stakeholders, to preserve and enhance the value of the Prepetition Collateral and maximize recoveries for stakeholders, including the Prepetition Secured Parties. The Senior Secured Lender has acted in good faith regarding the DIP Financing and the Debtor's continued use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtor's estate and continued operation of its businesses (including the incurrence and payment of the Adequate Protection Obligations and the granting of the Adequate Protection Liens), in accordance with the terms hereof, and the Senior Secured Lender (and the successors and assigns thereof) shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(g)     The Prepetition Secured Parties are entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code. Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtor's prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral; *provided* that nothing in this Interim Order or the other DIP Documents shall (i) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral, other than on the terms set forth in this Interim Order and in the context of the DIP Financing authorized by this Interim Order, (ii) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) or (iii) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different or additional adequate protection or assert the interests of any of the Prepetition Secured Parties.

(h)     the Debtor has prepared and delivered to the DIP Lender a Budget (such initial budget, the "**Initial DIP Budget**"), a copy of which is attached hereto as **Exhibit B**. The Initial DIP Budget reflects the Debtor's anticipated net cash flow and anticipated disbursements for each month during the period from the Petition Date through and including February 29, 2020. The Initial DIP Budget may be modified, amended and updated from time to time in accordance with the DIP Loan Agreement, and once approved by, in form and substance satisfactory to the DIP Lender, shall supplement and replace the Initial DIP Budget (the Initial DIP Budget

13

and each subsequent approved budget, shall constitute without duplication, an "**Approved Budget**").  The Debtor believes that the Initial DIP Budget is reasonable under the facts and circumstances.  The DIP Lender is relying, in part, upon the Debtor's agreement to comply with the Approved Budget, the other DIP Documents, and this Interim Order in determining to enter into the postpetition financing arrangements provided for in this Interim Order.

(i)     The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Rule 4001-2(c).  Absent granting the relief set forth in this Interim Order, the Debtor's estate will be immediately and irreparably harmed.  Consummation of the DIP Financing and the use of Prepetition Collateral, including Cash Collateral, in accordance with this Interim Order and the DIP Documents are therefore in the best interests of the Debtor's estate and consistent with the Debtor's exercise of its fiduciary duties.

8.     *Authorization of the DIP Financing and the DIP Documents.*

(a)     The Debtor is hereby authorized to execute, enter into and perform all obligations under the DIP Documents.  The Debtor is hereby authorized to borrow money pursuant to the DIP Loan Agreement in an aggregate principal or face amount not to exceed $4,400,000.00 under the DIP Facility, which shall be used for all purposes permitted under the DIP Documents (and subject to the terms and conditions set forth herein and therein); *provided* that no more than $1,225,031.00 shall be available to the Debtor pending the entry of the Final Order.

(b)     In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees that may be reasonably required or necessary for the Debtor's performance of its obligations under or related to the DIP Financing, including:

(i)     the execution and delivery of, and performance under, each of the DIP Documents;

(ii)     the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as the Debtor and the DIP Lender may agree, it being understood that no further approval of the Court shall be required for authorizations, amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees and other expenses (including any attorneys', accountants', appraisers' and financial advisors' fees), amounts, charges, costs, indemnities and other obligations paid in connection therewith) that do not shorten the maturity of the extensions of credit thereunder, increase the aggregate commitments or the rate of interest payable thereunder, modify the lien and claim priorities set forth herein, alter the challenge rights of non-Debtor parties contained

14

herein, or otherwise materially modify, in a manner adverse to the Debtor, the terms of the DIP Documents;

    (iii)    the incurrence of, and the non-refundable payment to the DIP Lender, of all fees including the Origination Fee and the Exit Fee (each as defined in the DIP Loan Agreement, which fees shall be fully earned and approved upon entry of this Interim Order and shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise) and any amounts due (or that may become due) in respect of the indemnification obligations, in each case referred to in the DIP Loan Agreement, and the costs and expenses as may be due from time to time, including fees and expenses of the professionals retained by the DIP Lender, in each case, as provided for in the DIP Documents, shall be without the need to file retention or fee applications or to provide notice to any party, other than as provided in paragraph 16 hereof; and

    (iv)    the performance of all other acts required under or in connection with the DIP Documents, including the granting of the DIP Liens and DIP Superpriority Claims and perfection of the DIP Liens as permitted herein and therein.

    (c)    Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding and unavoidable obligations of the Debtor, enforceable against the Debtor in accordance with the terms of the DIP Documents and this Interim Order.  No obligation, payment, transfer or grant of security to the DIP Lender under the DIP Documents or this Interim Order shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including under sections 502(d), 548 or 549 of the Bankruptcy Code, any applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or other similar state statute or common law), or subject to any defense, reduction, setoff, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim, claim or counterclaim.

    9.    *Application of Proceeds of Collateral.*  As a condition to entry into the DIP Loan Agreement, the extension of funds under the DIP Facility and authorization to use Cash Collateral, the Debtor, the DIP Lender, and the Prepetition Secured Parties have agreed that as of and commencing on the date of entry of this Interim Order (and the date of entry of Final Order, if entered), and to the extent set forth therein, the Debtor shall apply the proceeds of Debtor Collateral

15

(as defined below) solely in accordance with this Interim Order (and the Final Order, if entered), the DIP Documents, and the Approved Budget, and *thereafter* to pay accrued interest, principal and other amounts outstanding under the DIP Credit Agreement.

10.    *DIP Superpriority Claims.*

(a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Debtor (without the need to file any proof of claim) with priority over any and all claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) (including the Prepetition 507(b) Claim as defined below)) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations (as defined below)), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "**DIP Superpriority Claims**") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all pre- and postpetition property of the Debtor and all proceeds thereof (excluding the Debtor's claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "**Avoidance Actions**"), but, subject to Court approval and entry of the Final Order, including any proceeds or property recovered, unencumbered or otherwise from Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance Proceeds**")), subject only to payment of the Carve-Out.  The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(b)    For purposes hereof, the "**Carve-Out**" is an amount equal to the sum of (i) all fees required to be paid to the clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $25,000 (without regard to the notice set forth in (iii) below); and (iii) (A) all paid and unpaid claims for fees, costs, disbursements and expenses to the extent allowed at any time, whether by interim order, final order, procedural order or otherwise of (a) persons or firms retained by the Debtor pursuant to sections 327, 328 or 363 of the Bankruptcy Code, (b) BAK Advisors, as independent manager of the Debtor, or (c) persons or firms retained by any official committee formed by the Office of the United States

16

Trustee, including an official committee of unsecured creditors in the Chapter 11 Case (collectively, the "**Professional Fees**", and the professionals, the "**Professional Persons**") incurred at any time on or before the Debtor's receipt of the Trigger Notice, plus (B) Professional Fees incurred after the Debtor's receipt of the Trigger Notice in an amount not to exceed $200,000 (such amounts incurred in (B), collectively with any paid and unpaid claims in (A), the "**Carve-Out Cap**"), in each case subject to the limits imposed by this Interim Order, the Final Order (if and when entered) or otherwise, on Professional Fees permitted to be incurred, including in connection with any permitted investigation of the claims, liens, and defenses against the Prepetition Secured Parties; *provided* that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i), (ii), (iii)(A) or (iii)(B) above on any other grounds. "**Trigger Notice**" shall mean a written notice delivered by the DIP Lender describing the event of default that is alleged to continue under the DIP Documents (or after the payment in full of the DIP Obligations, the Senior Secured Lender describing the reason for termination of the use of Cash Collateral). Immediately upon delivery of a Trigger Notice, and before the payment to any Prepetition Secured Party on account of any adequate protection or otherwise, the Debtor shall be required to deposit, in a segregated account not subject to the control of the DIP Lender or the Senior Secured Lender (the "**Carve-Out Account**"), an amount equal to the Carve-Out Cap. The funds on deposit in the Carve-Out Account shall be available only to satisfy obligations benefitting from the Carve-Out, and the (i) DIP Lender and the Senior Secured Lender shall not sweep or foreclose on cash of the Debtor necessary to fund the Carve-Out Account and (ii) the Senior Secured Lender shall have a security interest upon any residual interest in the Carve-Out Account available following satisfaction in cash in full of all obligations benefitting from the Carve-Out. Professional Fees for Professional Persons retained by the Creditors' Committee (as defined herein) shall not exceed $375,000 for the duration of the Debtor's Chapter 11 Case.

(c)     Notwithstanding the foregoing, the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (a) the investigation (other than, before the receipt of a Trigger Notice, as permitted under paragraphs 23 and 24 of this Interim Order), initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against any of the DIP Lender and the Prepetition Secured Parties, each in such capacity, and their respective agents, attorneys, advisors or representatives, including challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the DIP Documents or the Prepetition Secured Credit Documents, including the Senior Secured Loan Obligations, (whether in such capacity or otherwise), including, in each case, for lender liability or pursuant to section 105, 506(c), 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise, (b) attempts to modify any of the rights granted to the DIP Lender or the Prepetition Secured Parties hereunder or under the applicable DIP Documents or Prepetition Secured Credit Documents, (c) attempts to prevent,

17

hinder, or otherwise delay any of the DIP Lender's assertion, enforcement or realization upon any Debtor Collateral or Prepetition Collateral in accordance with the DIP Documents, this Interim Order or the Final Order, or (d) paying any amount on account of any claims arising before the Petition Date unless such payments are approved by an order of the Court and permitted under the DIP Documents, including the Approved Budget.

11.    *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the date of this Interim Order and without the necessity of the execution, recordation of filings by the Debtor of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, any notation of certificates of title for a titled good, or the possession or control by the DIP Lender of, or over, any Debtor Collateral (as defined below), the following security interests and liens are hereby granted to the DIP Lender for its own benefit (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "**Debtor Collateral**"), subject only to the Carve-Out (all such liens and security interests granted to the DIP Lender pursuant to this Interim Order and the DIP Documents, the "**DIP Liens**"):

(a)    First Lien on Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all tangible and intangible pre- and postpetition property of the Debtor, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to a valid, perfected and non-avoidable lien (collectively, "**Unencumbered Property**"), including any and all unencumbered cash of the Debtor and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing, in each case other than the Avoidance Actions, but, upon Court approval and entry of the Final Order, including the Avoidance Proceeds;

(b)    Priming Liens on Prepetition Collateral.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and postpetition

18

property of the Debtor (including any and all cash and cash collateral and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date (including post-petition intercompany claims against the Debtor and its non-Debtor affiliates), contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing), whether now existing or hereafter acquired, that is subject to the Prepetition Liens, which lien shall be senior in all respects to such Prepetition Liens. Such security interests and liens shall be senior in all respects to the interests in such property of the Prepetition Secured Parties arising from current and future liens of the Prepetition Secured Parties (including the Adequate Protection Liens granted hereunder);

(c)     <u>DIP Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior security interest in and lien upon all tangible and intangible pre- and postpetition property of the Debtor subject to valid, binding, and unavoidable liens or secured claims of TPBC, if any, including any secured setoff claims arising under Section 506(a)(1) of the Bankruptcy Code that are otherwise senior to the Senior Secured Loan Liens as of the Petition Date (the "**Senior Liens**"), if any; *provided* that, for the avoidance of doubt, any liens securing obligations owing to UMEZ or the Building Secured Lender shall not constitute Senior Liens; and

(d)     <u>DIP Liens Senior to Certain Other Liens</u>.  The DIP Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents or in this Interim Order, any liens or security interests arising after the Petition Date, including any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtor, (C) any intercompany or affiliate liens of the Debtor, or (D) any orders of attachment or judicial liens; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code.

12.     *Protection of DIP Lender's Rights.*

(a)     So long as there are any DIP Obligations outstanding or the DIP Lender has any outstanding DIP Commitments under the DIP Loan Agreement, the Prepetition Secured Parties shall, other than as expressly consented to in writing by the DIP Lender: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Secured Credit Documents or this Interim Order, or otherwise seek to exercise or enforce any rights

19

or remedies against such Debtor Collateral or the Adequate Protection Liens; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, such DIP Collateral (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of the DIP Obligations and termination of the DIP Commitments), to the extent such transfer, disposition, sale or release is authorized under the DIP Documents; (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in such Debtor Collateral unless, solely as to this clause (iii), the DIP Lender file financing statements or other documents to perfect the liens granted pursuant to this Interim Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date; and (iv) deliver or cause to be delivered, at the Debtor's cost and expense, any termination statements, releases, or assignments in favor of the DIP Lender or other documents necessary to effectuate and/or evidence the release, termination, or assignment of liens on any portion of such Debtor Collateral subject to any sale or disposition.

(b)      To the extent any Prepetition Secured Party has possession of any Prepetition Collateral or Debtor Collateral or has control with respect to any Prepetition Collateral or Debtor Collateral, or has been noted as secured party on any certificate of title for a titled good constituting Prepetition Collateral or Debtor Collateral, then such Prepetition Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee or gratuitous agent for perfection for the benefit of the DIP Lender, and shall comply with the instructions of the DIP Lender with respect to the exercise of such control.

(c)      Other than as expressly consented to in writing by the DIP Lender, any proceeds of Prepetition Collateral received by any Prepetition Secured Party in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise received by such Prepetition Secured Party (other than on account of the Adequate Protection Obligations) shall be segregated and held in trust for the benefit of and forthwith paid over to the DIP Lender in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct.  The DIP Lender is hereby authorized to make any such endorsements as agent for any such Prepetition Secured Party.  This authorization is coupled with an interest and is irrevocable.

(d)      The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to the extent necessary to permit the DIP Lender to enforce all of its rights under the DIP Documents and (i) immediately upon the occurrence of an Event of Default, declare (A) the termination, reduction or restriction of any further DIP Commitment to the extent any such DIP Commitment remains and (B) all Secured Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Debtor and (ii) upon the occurrence of an Event of Default and the giving of seven (7)

20

days' prior written notice (which shall run concurrently with any notice required to be provided under the DIP Documents) via email to counsel to the Debtor, counsel to any official committee of unsecured creditors appointed in connection with the Chapter 11 Case (the "**Creditors' Committee**"), and the U.S. Trustee to (A) withdraw consent to the Debtor's continued use of Cash Collateral and (B) exercise all other rights and remedies provided for in the DIP Documents and under applicable law.  In any hearing regarding any exercise of rights or remedies under the DIP Documents, the only issues that may be raised by the Debtor and the Prepetition Secured Parties in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtor and the Prepetition Secured Parties hereby waive their right to and shall not be entitled to seek relief, including under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the DIP Lender set forth in this Interim Order or the DIP Documents.  Subject to Court approval and entry of the Final Order, in no event shall the DIP Lender or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Debtor Collateral.  Furthermore, and subject to Court approval and entry of the Final Order, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Prepetition Secured Parties.

(e)    No rights, protections or remedies of the DIP Lender granted by the provisions of this Interim Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the Debtor's authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Debtor's authority to continue to use Cash Collateral; or (iii) except as provided herein or in the Final Order, the terms of any other order or stipulation related to the Debtor's continued use of Cash Collateral or the provision of adequate protection to any party.

13.    *Limitation on Charging Expenses Against Collateral*.  Subject to Court approval

and entry of the Final Order, no costs or expenses of administration of the Chapter 11 Case or any

future proceeding that may result therefrom, including liquidation in bankruptcy or other

proceedings under the Bankruptcy Code, shall be charged against or recovered from the Debtor

Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any

similar principle of law, without the prior written consent of the DIP Lender or the Senior Secured

Lender, as applicable, and no such consent shall be implied from any other action, inaction, or

acquiescence by the DIP Lender or the Senior Secured Lender and nothing contained in this

48036/0047-17905784v4

Interim Order shall be deemed to be a consent by the DIP Lender or the Senior Secured Lender to any charge, lien, assessment or claim against the Debtor Collateral under section 506(c) of the Bankruptcy Code or otherwise.

14.     *Payments Free and Clear.*  Any and all payments or proceeds remitted to the DIP Lender pursuant to the provisions of this Interim Order or Final Order (if and when entered) or the DIP Documents shall be received free and clear of any claim, charge, assessment or other liability, whether asserted or assessed by, through or on behalf of the Debtor.

15.     *Use of Cash Collateral.*  The Debtor is hereby authorized, subject to the terms and conditions of this Interim Order, to use all Cash Collateral (other than as expressly consented to in writing by the DIP Lender); *provided* that (a) the Prepetition Secured Parties are granted the adequate protection as hereinafter set forth and (b) except on the terms and conditions of this Interim Order, the Debtor shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court.

16.     *Adequate Protection of Prepetition Secured Parties.*  The Senior Secured Lender is entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of its interests in all Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in the value of the Senior Secured Lender's interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including any such diminution resulting from the depreciation, sale, lease or use by the Debtor (or other decline in value) of the Prepetition Collateral, the priming of the Senior Secured Lender's security interests and liens on the Prepetition Collateral by the DIP Lender pursuant to the DIP Documents and this Interim Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code

22

(the "**Senior Secured Loan Adequate Protection Claim**").  The Senior Secured Loan Adequate

Protection Claim will be subordinate in all cases to the Carve-Out.  UMEZ and Building Secured

Lender are entitled, pursuant to sections 361, 362, 363(e), and 364(d)(1) of the Bankruptcy Code,

to adequate protection of their interests in the Prepetition Collateral, as applicable, in an amount

equal to the aggregate diminution in the value of UMEZ's and Building Secured Lender's interests

in the Prepetition Collateral, as applicable, from and after the Petition Date, if any, for any reason

provided for under the Bankruptcy Code, including any such diminution resulting from the

depreciation, sale, lease or use by the Debtor (or other decline in value) of the Prepetition

Collateral, the granting of the DIP Liens pursuant to the DIP Documents and this Interim Order,

and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; *provided,*

*however*, that such adequate protection claims (i) will be subordinate in all cases to the Senior

Secured Loan Adequate Protection Claim and (ii) as between the Building Secured Lender and

UMEZ, the priority of such claims shall be in accordance with the priorities as set forth in the

Intercreditor Agreements (collectively, the "**Subordinate Loans Adequate Protection Claims**"

and, together with the Senior Secured Loan Adequate Protection Claim, the "**Adequate**

**Protection Claims**").  In consideration of the foregoing, each of the Prepetition Secured Parties,

as applicable, shall be afforded the following (collectively, the "**Adequate Protection**

**Obligations**"):

> (a)     Adequate Protection Liens.  The Senior Secured Lender is hereby granted (effective
> and perfected upon the date of this Interim Order and without the necessity of the
> execution of any mortgages, security agreements, pledge agreements, financing
> statements or other agreements), in the amount of the Senior Secured Loan
> Adequate Protection Claim, a valid, perfected replacement security interest in and
> lien upon all of the Debtor Collateral including all Unencumbered Property and
> subject to Court approval and entry of the Final Order, the Avoidance Proceeds, in
> each case subject and subordinate only to (i) the DIP Liens and any liens to which
> the DIP Liens are junior, including the Senior Liens, if any, and (ii) the Carve-Out
> (the "**Senior Secured Loan Adequate Protection Liens**").   UMEZ and the

23

Building Secured Lender are hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Subordinate Loans Adequate Protection Claim, a valid, perfected replacement security interest in and lien upon all of the Debtor Collateral including any Unencumbered Property and subject to Court approval and entry of the Final Order, the Avoidance Proceeds, in each case subject and subordinate only to (i) the DIP Liens, (ii) any prepetition liens that are senior in priority to the UMEZ Loan Mortgage and Building Loan Mortgage, including the Senior Secured Loan Liens, (iii) the Senior Secured Loan Adequate Protection Liens, (iv) as between UMEZ and the Building Secured Lender, the priority of such liens shall be in accordance with the priorities as set forth in the Intercreditor Agreements, and (v) the Carve-Out (collectively, the "**Subordinate Loans Adequate Protection Liens**" and, together with the Senior Secured Loan Adequate Protection Liens, the "**Adequate Protection Liens**").  For the avoidance of doubt, the Subordinate Loans Adequate Protection Liens shall be subordinated to the Senior Secured Loan Adequate Protection Liens on the same basis as all other prepetition liens securing the claims of each UMEZ and the Building Secured Lender are so subordinated to the liens securing the Senior Secured Loan Obligations owed to the Senior Secured Lender.

(b)    <u>Prepetition Section 507(b) Claim</u>.  The Senior Secured Lender is hereby granted, subject to the Carve-Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Senior Secured Loan Adequate Protection Claim with, except as set forth in this Interim Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**Prepetition 507(b) Claim**"), which Prepetition 507(b) Claim shall have recourse to and be payable from all of the Debtor Collateral in accordance with the priorities set forth herein, including, subject to Court approval and entry of the Final Order, the Avoidance Proceeds.  The Prepetition 507(b) Claim shall be subject and subordinate to the Carve-Out and the DIP Superpriority Claims.  Except to the extent expressly set forth in this Interim Order or the DIP Loan Agreement, the Senior Secured Lender shall not receive or retain any payments, property or other amounts in respect of the Prepetition 507(b) Claim unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and any claims having a priority superior to or *pari passu* with the DIP Superpriority Claims, including claims that benefit from the Carve-Out, have indefeasibly been paid in cash in full and all DIP Commitments have been terminated.

(c)    <u>Senior Secured Lender's Fees and Expenses</u>.  Without duplication of amounts required to be paid pursuant to the DIP Documents, upon entry of this Interim Order, the Debtor shall pay in cash all fees, expenses, and disbursements payable to the Senior Secured Lender, including the fees and expenses of Weil, Gotshal & Manges LLP, whether accrued before or after the Petition Date, in accordance with

24

and subject to the Approved Budget. The post-petition payment of the fees, expenses and disbursements set forth in the foregoing sentence, along with the professional fees and expenses of the DIP Lender, shall be made within ten (10) days (which time period may be extended by the applicable professional) after the receipt by the Debtor, the Creditors' Committee (if any), and the U.S. Trustee (the "**Review Period**") of invoices therefor (the "**Invoiced Fees**") and without the necessity of filing formal fee applications, including such amounts arising before or after the Petition Date; *provided*, *however*, that any such invoice: (i) may be redacted to protect privileged, confidential or proprietary information and (ii) shall not be required to contain individual time detail. The Debtor, the Creditors' Committee (if any), and the U.S. Trustee may object to any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") within the Review Period by filing with the Court a motion or other pleading, on at least five (5) days' prior written notice to the Senior Secured Lender and the applicable professional of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees in reasonable narrative detail and the bases for such objections; *provided*, that payment of any undisputed portion of Invoiced Fees shall be paid within the time frame set forth above and shall not be delayed based on any objections thereto; *provided, further*, that the applicable parties shall endeavor in good faith to consensually resolve any such dispute before the filing of any such motion or pleading; *provided, further*, that no fees, expenses, and disbursements shall be paid by the Debtor pursuant to this Interim Order unless such fees, expenses, and disbursements are provided for in the Approved Budget.

(d)    <u>Information Rights</u>. The Debtor shall promptly provide the Senior Secured Lender with any written financial reporting and other periodic reporting that is actually provided to the DIP Lender under the DIP Loan Agreement.

(e)    <u>Intercreditor Agreements</u>. To the extent necessary and appropriate to prosecute this Chapter 11 Case and enforce the priorities set forth in the stipulations set forth in paragraph 5 herein, the Debtor shall enforce the terms of the Intercreditor Agreements in a manner that would not be expected to adversely impact the Senior Loan Parties' rights and priorities hereunder.

(f)    <u>Interim Attachment Order</u>. Subject in all respects to the Final Order, and notwithstanding anything in this Interim Order to the contrary, solely to the extent the Court determines that the Interim Attachment Order granted TPBC a prepetition lien or security interest in any rent proceeds held by the Debtor as of the Petition Date (the "**Prepetition Rent Proceeds**") and/or any Postpetition Rent Proceeds (as defined below) that is senior to the interests of the Senior Secured Lender, TPBC shall be entitled to adequate protection liens and claims (in the form and priority provided to the Senior Secured Lender under this paragraph 16) on account of such lien or security interest in such Prepetition Rent Proceeds and/or Postpetition Rent Proceeds (and solely to the extent of any diminution in value), which shall be junior in all respects only to the DIP Liens granted to the DIP Lender on account of new-money advances under the DIP Facility.

25

17.     *Reservation of Rights of Prepetition Secured Parties*.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties.

18.     *Consent to Adequate Protection; Right to Seek Additional Adequate Protection; No Admission*.  The Prepetition Secured Parties have consented to the Adequate Protection Obligations, the priming of the Prepetition Liens by the DIP Liens, and the use of Cash Collateral provided for herein; *provided, however*, that such consent is expressly conditioned upon the entry of this Interim Order, and such consent shall not be deemed to extend to any other Cash Collateral usage or other replacement financing or debtor-in-possession financing other than the DIP Facility provided under the DIP Documents; and *provided further*, that such consent shall be of no force and effect in the event this Interim Order is reversed, modified, stayed, or amended (unless such reversal, modification, stay, or amendment is acceptable to the Prepetition Secured Party) or the DIP Documents and DIP Facility as set forth herein are not approved.  The Adequate Protection provided to the Prepetition Secured Parties hereunder adequately protects the Prepetition Secured Parties as of the date hereof; *provided that* this Interim Order: (i) is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Senior Secured Lender to request additional or alternative forms of adequate protection from the Debtor, and the Debtor's and any other party in interest's right to object to such requests are hereby preserved; and (ii) shall not be deemed an admission, acknowledgement, or stipulation by the Senior Secured Lender that the Senior Secured Lender is in fact adequately protected by the terms and conditions of this Interim Order or otherwise following the date of this Interim Order.

48036/0047-17905784v4

19.    *Perfection of DIP Liens and Adequate Protection Liens.*

(a)    The DIP Lender, and the Prepetition Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the Debtor, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Lender or the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim Order.  Upon the request of the DIP Lender, each of the Prepetition Secured Parties and the Debtor, without any further consent of any party, is authorized (in the case of the Debtor) and directed (in the case of the Prepetition Secured Parties) to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Lender to further validate, perfect, preserve and enforce the DIP Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)    A certified copy of this Interim Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Interim Order for filing and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code is hereby modified to the extent necessary to permit the DIP Lender to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

(c)    Notwithstanding anything to the contrary in the Motion, the DIP Documents or this Interim Order, for purposes of this Interim Order, in no event shall the Debtor Collateral include, or the DIP Liens or Adequate Protection Liens attach to, any lease, license, contract or agreement or other property right to which the Debtor is a party, or any such relevant Debtor's rights or interests thereunder, if and for so long as the grant of such security interest would constitute or result in: (i) the abandonment, invalidation, unenforceability or other impairment of any right, title or interest of the Debtor therein or (ii) in a breach or termination pursuant to the terms of, or a default under, any such lease, license, contract or agreement or other property right pursuant to any provision thereof, unless, in the case of each of clauses (i) and (ii), the applicable provision is rendered ineffective by applicable non-bankruptcy law or the Bankruptcy Code (such leases, licenses, contracts or agreements or other property rights are collectively referred to as the "**Specified**

27

Contracts"); *provided* that the DIP Liens, Senior Secured Loan Adequate Protection Liens, DIP Superpriority Claims, and Prepetition 507(b) Claims shall in all events attach to and have recourse from all proceeds, products, offspring or profits from any and all Specified Contracts (including from the sale, transfer, disposition or monetization thereof).

20. *Proceeds of Subsequent Financing.* If the Debtor, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in this Chapter 11 Case or any successor case, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in violation of the DIP Documents at any time before the repayment in full in cash of all DIP Obligations and the termination of the DIP Lender's obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to the Debtor and the Debtor's estate, and such financing is secured by any Debtor Collateral, then all of the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender, to be applied as set forth in the DIP Documents, except as provided under such confirmed plan (if applicable).

21. *Disposition of Debtor Collateral; Rights of DIP Lender.* The Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any Debtor Collateral without the prior written consent of the DIP Lender (and no such consent shall be implied, from any other action, inaction, or acquiescence), except as expressly permitted in the DIP Documents.

22. *Preservation of Rights Granted Under This Interim Order.*

(a)  Other than the Carve-Out and other claims and liens expressly granted or permitted by this Interim Order and the DIP Documents, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Lender or the Prepetition Secured Parties shall be permitted while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding. No lien or security interest shall be granted to any other party in any of the Specified Contracts without first granting such lien or security interest to the DIP Lender or the Prepetition Secured Parties (solely with respect to the Adequate Protection Obligations), as applicable.

28

(b)    Notwithstanding any order that may be entered dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered: (i) the DIP Superpriority Claims, the Prepetition 507(b) Claims, the DIP Liens, and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash (and that such DIP Superpriority Claims, Prepetition 507(b) Claims, DIP Liens, and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Interim Order shall not be affected; and (iii) this Court shall, to the extent permitted by applicable law, retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(c)    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred before the actual receipt of written notice by the DIP Lender or the Prepetition Secured Parties, as applicable, of the effective date of such reversal, modification, vacation or stay; or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, modification, vacation or stay of any use of Cash Collateral, any DIP Obligations, DIP Liens, Adequate Protection Obligations, or Adequate Protection Liens incurred or granted by the Debtor to or for the benefit of the DIP Lender or the Prepetition Secured Parties, as the case may be, before the actual receipt of written notice by the DIP Lender or the Prepetition Secured Parties, as applicable, of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order, and the DIP Documents with respect to all uses of Cash Collateral, DIP Obligations, and Adequate Protection Obligations.

(d)    Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Obligations and all other rights and remedies of the DIP Lender and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting the Chapter 11 Case to a case under chapter 7, dismissing the Chapter 11 Case, or by any other act or omission; (ii) the entry of an order approving the sale of any Debtor Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); or (iii) the entry of an order confirming a chapter 11 plan in the Chapter 11 Case and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Interim Order and the DIP

29

Documents shall continue in this Chapter 11 Case, in any successor cases and in any superseding chapter 7 case under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Obligations and all other rights and remedies of the DIP Lender and the Prepetition Secured Parties granted by the provisions of this Interim Order (including the Carve-Out) and the DIP Documents shall continue in full force and effect until the entry of the Final Order or the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the DIP Commitments have been terminated.

23.    *Effect of Stipulations on Third Parties.*    The Debtor's stipulations, admissions, releases, and agreements contained in this Interim Order, including in paragraphs 5 and 6 of this Interim Order, shall be binding upon the Debtor and any successor thereto (including any chapter 7 or chapter 11 trustee or examiner appointed or elected for the Debtor) in all circumstances and for all purposes.    The Debtor's stipulations, admissions, releases, and agreements contained in this Interim Order, including in paragraphs 5 and 6 of this Interim Order, shall be binding upon all other parties in interest, including any statutory or non-statutory committees appointed or formed in the Chapter 11 Case (including the Creditors' Committee, if any) and any other person or entity acting or seeking to act on behalf of the Debtor's estate, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for the Debtor, in all circumstances and for all purposes unless: (a) such committee or any other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, among others, in this paragraph 23) by no later than the later of (i) (x) sixty (60) days after the date of entry of the Final Order in the event of the appointment of a Creditors' Committee and (y) seventy-five (75) days after the date of entry of the Final Order in the event no such committee has been appointed; (ii) any such later date as has been agreed to, in writing, by the applicable Prepetition Secured Party; and (iii) any such later date as has been

30

ordered by the Court for cause upon a motion filed and served within any applicable period of time set forth in this paragraph (the time period established by the foregoing clauses (i), (ii), and (iii), the "**Challenge Period**"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of any of the Prepetition Secured Debt or the Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Challenges**") against any of the Prepetition Secured Parties or their respective subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to the Prepetition Secured Credit Documents, the Prepetition Secured Debt, the Prepetition Liens and the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided*, *however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified before the expiration of the Challenge Period shall be deemed forever, waived, released and barred.  If (i) no such Challenge is timely and properly filed during the Challenge Period, or (ii) the Court does not rule in favor of the plaintiff in any such proceeding then: (a) the Debtor's stipulations, admissions, releases, and agreements contained in this Interim Order, including those contained in paragraphs 5 and 6 of this Interim Order, shall be binding on all parties in interest, including the Creditors' Committee (if any); (b) the obligations of the Debtor under the Prepetition Secured Credit Documents,

31

including the Prepetition Secured Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in the Chapter 11 Case, and any subsequent chapter 7 case(s); (c) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens on the Prepetition Collateral, not subject to recharacterization, subordination, avoidance or other defense; and (d) the Prepetition Secured Debt and the Prepetition Liens on the Prepetition Collateral shall not be subject to any other or further claim or challenge by the Creditors' Committee (if any), any non-statutory committees appointed or formed in the Chapter 11 Case or any other party in interest acting or seeking to act on behalf of the Debtor's estate, including any successor thereto (including any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for the Debtor) and any defenses, claims, causes of action, counterclaims and offsets by the Creditors' Committee (if any), any non-statutory committees appointed or formed in the Chapter 11 Case, or any other party acting or seeking to act on behalf of the Debtor's estate, including any successor thereto (including any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for the Debtor), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to any of the Prepetition Secured Credit Documents shall be deemed forever waived, released and barred.  If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, releases, and agreements contained in this Interim Order, including those contained in paragraphs 5 and 6 of this Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any statutory or nonstatutory committee appointed or formed in the Chapter 11 Case, including the Creditors' Committee (if any), and on any other person or entity, except to the extent that such stipulations, admissions,

32

releases, and agreements were expressly and successfully challenged in such Challenge as set forth

in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Interim Order

vests or confers on any Person (as defined in the Bankruptcy Code), including the Creditors'

Committee (if any) or any non-statutory committees appointed or formed in the Chapter 11 Case,

standing or authority to pursue any claim or cause of action belonging to the Debtor or its estate,

including Challenges with respect to the Prepetition Secured Credit Documents, the Prepetition

Secured Debt, or the Prepetition Liens.

24.     *Limitation on Use of DIP Loans and Debtor Collateral*.  Notwithstanding any other

provision of this Interim Order or any other order entered by the Court, no DIP Loans, Debtor

Collateral, Prepetition Collateral or any portion of the Carve-Out, may be used directly or

indirectly by the Debtor, any official committee appointed in the Chapter 11 Case, or any trustee

appointed in the Chapter 11 Case or any successor case, including any chapter 7 case, or any other

person, party or entity (i) in connection with the investigation, initiation or prosecution of any

claims, causes of action, adversary proceedings or other litigation (a) against any of the DIP Lender

or the Prepetition Secured Parties or their respective predecessors-in-interest, agents, affiliates,

representatives, attorneys, or advisors, or any action purporting to do the foregoing in respect of

the Prepetition Secured Debt, liens on the Prepetition Collateral, DIP Obligations, DIP Liens, DIP

Superpriority Claims, or the adequate protection obligations, adequate protection liens and

superpriority claims granted to the Prepetition Secured Parties, as applicable, under the Interim

Order or the Final Order, as applicable, or (b) challenging the amount, validity, perfection, priority

or enforceability of or asserting any defense, counterclaim or offset with respect to, the Prepetition

Secured Debt, the DIP Obligations, or the liens, claims, rights, or security interests granted under

this Interim Order, the Final Order, the DIP Documents, or the Prepetition Secured Credit

33

Documents including, in each case for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; *provided*, however, advisors to any Creditors' Committee may investigate any potential challenges with respect to the Prepetition Secured Credit Documents, the Prepetition Secured Debt, or Prepetition Liens during the Challenge Period at an aggregate expense for such investigation, but not litigation, prosecution, objection or challenge thereto, not to exceed $25,000 in the aggregate; (ii) to prevent, hinder, or otherwise delay the Prepetition Secured Parties' or the DIP Lender's, as applicable, enforcement or realization on the Prepetition Secured Debt, Prepetition Collateral, DIP Obligations, Debtor Collateral, and the liens, claims, and rights granted to such parties under the Orders, each in accordance with the DIP Documents, the Prepetition Secured Credit Documents, or this Interim Order, or the Final Order, other than, and subject to the notice period set forth in paragraph 12(d) hereof, to seek a determination that an Event of Default has not occurred or is not continuing; or (iii) to seek to modify any of the rights and remedies granted to the Senior Secured Lender or the DIP Lender under this Interim Order, the Senior Secured Loan Documents or the DIP Documents, as applicable; (iv) to apply to the Court for authority to approve superpriority claims or grant liens or security interests in the Debtor Collateral or any portion thereof that are senior to, or on parity with, the Carve-Out or the DIP Liens, DIP Superpriority Claims, adequate protection liens, and superpriority claims granted to the Senior Secured Lender unless all DIP Obligations, Senior Secured Loan Obligations, adequate protection obligations, and claims granted to the DIP Lender or Senior Secured Lender under this Interim Order, have been refinanced or paid in full in cash (including the cash collateralization of any letters of credit) or otherwise agreed to in writing by the DIP Lender; or (v) to seek to pay any amount on account of any claims arising

34

before the Petition Date unless such payments are agreed to in writing by the DIP Lender or are otherwise included in the Approved Budget.

25.    *Postpetition Rent Proceeds.*  To the extent any Rents are received by the Debtor after the Petition Date ("**Postpetition Rent Proceeds**"), the Debtor shall have the authority, and Senior Secured Lender consents to, the Debtor utilizing such proceeds to fund necessary general operating and administrative expenses solely in accordance with the Approved Budget provided that (i) all Postpetition Rent Proceeds shall be held in a segregated account by the Debtor and the Debtor shall provide an accounting of all Postpetition Rent Proceeds to the DIP Lender and Senior Secured Lender upon receipt of any Postpetition Rent Proceeds or upon request by the DIP Lender or Senior Secured Lender, and (ii) all Postpetition Rent Proceeds shall be deemed to be held by the Debtor in trust for the Senior Secured Lender (and shall not be considered property of the Debtor's estate under Section 541 of the Bankruptcy Code) until such time as the Debtor uses such Postpetition Rent Proceeds to fund necessary general operating and administrative expenses, upon such time the Postpetition Rent Proceeds shall be, first applied to reduce the Senior Secured Loan Obligations (applied first to costs and expenses owing to Senior Secured Lender under the Senior Secured Loan Agreement, second to default interest owing to Senior Secured Lender under the Senior Secured Loan Agreement, third to all other interest owing to Senior Secured Lender under the Senior Secured Loan Agreement, and fourth to all other Senior Secured Loan Obligations) and then deemed, on a dollar-for-dollar basis, DIP Obligations under the DIP Facility in accordance with the terms of the DIP Documents and this Interim Order.  To the extent any Rents are received by the Senior Secured Lender after the Petition Date, such Rents shall be applied to reduce the Senior Secured Loan Obligations (applied as detailed in the foregoing sentence) pursuant to Section 2 of the ALR.

35

26.     *Loss or Damage to Collateral*.  Nothing in this Interim Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Senior Secured Lender of any liability for any claims arising from the prepetition or postpetition activities of the Debtor in the operation of its business, or in connection with its restructuring efforts.  The DIP Lender and the Senior Secured Lender shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Debtor Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the Debtor Collateral shall be borne by the Debtor.

27.     *Interim Order Governs*.  In the event of any inconsistency between the provisions of this Interim Order, on the one hand, and the DIP Documents or any other order entered by this Court, on the other hand, the provisions of this Interim Order shall govern.  Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to and any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Interim Order and the DIP Documents, including the Approved Budget.

28.     *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Case, including the DIP Lender the Prepetition Secured Parties, the Creditors' Committee (if any), any non-statutory committees appointed or formed in the Chapter 11 Case, the Debtor, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor, an examiner appointed

36

pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) and shall inure to the benefit of the DIP Lender, the Prepetition Secured Parties, and the Debtor and their respective successors and assigns; *provided* that the DIP Lender and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estate of the Debtor).

29.    *Limitation of Liability*.  In determining to make any loan or other extension of credit under the DIP Loan Agreement, to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Lender shall not (i) be deemed to be in "control" of the operations of the Debtor; (ii) owe any fiduciary duty to the Debtor, its creditors, shareholders or estate; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtor (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq.*, as amended, or any similar federal or state statute).

30.    *No Waiver.*  No delay or failure by the Senior Secured Lender or the DIP Lender in the exercise of its rights and remedies under the DIP Documents or this Interim Order, as applicable, shall constitute a waiver, in whole or in part, of any of such party's rights hereunder or otherwise.

31.    *Proofs of Claim*.  Each Prepetition Secured Party and Senior Loan Party shall not be required to file proofs of claim in the Chapter 11 Case or any successor case to assert claims on behalf of itself for payment of its respective Prepetition Secured Debt arising under the Prepetition

48036/0047-17905784v4

Secured Credit Documents, including any principal, unpaid interest (including default interest therein), fees, expenses, and other amounts under the Prepetition Secured Credit Documents. The statements of claim in respect of the Prepetition Secured Debt set forth in this Interim Order, together with any evidence accompanying the Motion and presented at the Interim Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status. The stipulations of the Debtor set forth in paragraph 5 hereof shall be deemed to constitute a timely filed proof of claim for each Prepetition Secured Party in respect of all of its respective Prepetition Secured Debt. In addition, each Prepetition Secured Party shall not be required to file any request for allowance or payment of any administrative expenses, and this Interim Order shall be deemed to constitute a timely filed request for allowance or payment of any Prepetition Secured Debt constituting administrative expenses, as applicable.

32.    *Insurance*. To the extent that the Senior Secured Lender is listed as loss payee under the Debtor's insurance policies, the DIP Lender is also deemed to be the loss payee under such insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies in the order of priorities set forth herein.

33.    *Effectiveness*. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

34.    *Headings*. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

35.    *Payments Held in Trust*.   Except as expressly permitted in this Interim Order or the DIP Documents, in the event that any person or entity receives any payment on account of a security interest in Debtor Collateral, receives any Debtor Collateral or any proceeds of Debtor Collateral or receives any other payment with respect thereto from any other source before indefeasible payment in full in cash of all DIP Obligations under the DIP Documents, and termination of the DIP Commitments in accordance with the DIP Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of Debtor Collateral in trust for the benefit of the DIP Lender and shall immediately turn over such proceeds to the DIP Lender, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Interim Order.

36.    *Credit Bidding*.   Subject to entry of a Final Order and unless the Court for cause orders otherwise, (i) the DIP Lender shall have the right to credit bid, in accordance with the DIP Documents, up to the full amount of the DIP Obligations in any sale of the Debtor Collateral and (ii) subject to paragraph 23 hereof, the Senior Secured Lender shall have the right to credit bid up to the full amount of the Senior Secured Loan Obligations in connection with any sale of any Debtor Collateral pursuant to section 363 of the Bankruptcy Code, a sale plan of reorganization or liquidation under section 1129 of the Bankruptcy Code, or a sale or disposition by a chapter 7 trustee for the Debtor under section 725 of the Bankruptcy Code, in each case, as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

39

37.     *Bankruptcy Rules*.  The requirements of Local Rule 4001-2 and Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

38.     *Necessary Action*.  The Debtor is authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

39.     *Retention of Jurisdiction*.  The Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for the Debtor notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

40.     *Final Hearing*.  The Final Hearing is scheduled for October 30, 2019 at 11:00 a.m. (Prevailing Eastern Time) before this Court.

41.     *Objections and Reply*.  Any party in interest objecting to the relief sought at the Final Hearing shall file and serve written objections, which objections shall be served upon:  (i) the Debtor, c/o SJM Partners, Inc., 11890 Sunrise Valley Drive, Suite 554, Reston, Virginia 20190 (Attn: Stephen J. Garchik); (ii) counsel for the Debtor, Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor, New York, New York 10019 (Attn:  Michael D. Sirota, Esq. and Ryan T. Jareck, Esq.); (iii) counsel for the DIP Lender and the Senior Secured Lender, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Matthew S. Barr, Esq. and David J. Cohen, Esq.); (iv) counsel for UMEZ, Venable LLP, Rockefeller Center, 1270 Avenue of the Americas, 24th Floor, New York, New York 10020 (Attn:  Rishi Kapoor, Esq. and Michael C. Phillipou, Esq.); (v) counsel for the Building Secured Lender and the Building Loan Agent, Manatt, Phelps & Phillips, LLP, 7 Times Square, New York, New York 10036 (Attn: Neil S. Faden, Esq.); (vi) counsel for The Port Authority of New York and New Jersey, Skadden, Arps,

48036/0047-17905784v4

Slate, Meagher & Flom LLP, 4 Times Square, New York, New York 10036 (Attn: Jay M. Goffman, Esq. and Christine A. Okike, Esq.); (vii) Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, New York, 10014; and (viii) if any statutory committee has been appointed in the Chapter 11 Case, counsel to such committee, in each case to allow actual receipt by the foregoing no later than October 18, 2019 at 4:00 p.m. (Prevailing Eastern Time). Any reply of the Debtor shall be filed and served on the above parties and counsel to TPBC, Pepper Hamilton LLP, Hercules Plaza, 1313 Market Street, Suite 5100, P.O. Box 1709, Wilmington, DE 19899-1709 (Attn: Henry J. Jaffe, Esq.), no later than October 23, 2019 at 4:00 p.m. (Prevailing Eastern Time). Notwithstanding the foregoing, to the extent a Creditors' Committee is appointed, it shall have the right to request an extension of time to file and serve an objection to the relief sought at the Final Hearing until October 23, 2019 at 4:00 p.m.

42.     The Debtor shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing, including notice that the Debtor will seek approval at the Final Hearing of a waiver of rights under sections 506(c) and 552(b) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court, and to the Creditors' Committee after the same has been appointed, or such Creditors' Committee's counsel, if the same shall have been appointed.

Dated:  October 11, 2019                         /S/ Shelley C. Chapman
          New York, New York                  _____
                                              HONORABLE SHELLEY C. CHAPMAN
                                              UNITED STATES BANKRUPTCY JUDGE

48036/0047-17905784v4