**COLE SCHOTZ P.C.**
Michael D. Sirota
Felice R. Yudkin
Ryan T. Jareck
Mark Tsukerman
Rebecca W. Hollander
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
(212) 752-8000
(212) 752-8393 Facsimile

*Proposed Counsel to the Debtor and
Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>GEORGE WASHINGTON BRIDGE BUS STATION DEVELOPMENT VENTURE LLC,[1]<br><br>                              Debtor. | Chapter 11<br><br>Case No. 19-13196 (SCC) |

**NOTICE OF HEARING ON DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF HOULIHAN LOKEY CAPITAL, INC. AS ITS FINANCIAL ADVISOR AND INVESTMENT BANKER *NUNC PRO TUNC* TO THE PETITION DATE**

        **PLEASE TAKE NOTICE** that George Washington Bridge Bus Station Development

Venture LLC, the debtor and debtor in possession in the above-captioned case (the

"**Debtor**"), hereby files the Debtor's *Application for Entry of an Order Authorizing the Retention*

*and Employment of Houlihan Lokey Capital, Inc. as its Financial Advisor and Investment*

*Banker Nunc Pro Tunc to the Petition Date* (the "**Application**").

---

[1] The last four digits of the debtor's federal taxpayer identification number are 8685. The debtor's business address is 11890 Sunrise Valley Drive, Suite 554, Reston, VA  20191.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Application will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom 623, New York, New York 10004 (the "**Bankruptcy Court**"), on **October 30, 2019 at 11:00 a.m. (Prevailing Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that responses or objections, if any, to the Application and the relief requested therein, must be made in writing and (a) filed with the Bankruptcy Court no later than **4:00 p.m. (Prevailing Eastern Time) on October 23, 2019** (the "**Objection Deadline**"), and (b) served so as to be actually received by the following parties by the Objection Deadline:

(1)     the Debtor, George Washington Bridge Bus Station Development Venture LLC, c/o Bernard A. Katz, 626 S State Street, Newtown, Pennsylvania 18940.

(2)     proposed counsel to the Debtor, Cole Schotz P.C., 1325 Avenue of the Americas, 19th Fl., New York, New York 10019, Attn: Michael D. Sirota (msirota@coleschotz.com), Felice R. Yudkin (fyudkin@coleschotz.com), Ryan T. Jareck (rjareck@coleschotz.com), Mark Tsukerman (mtsukerman@coleschotz.com), and Rebecca W. Hollander (rhollander@coleschotz.com).

(3)     William K. Harrington, United States Trustee For Region 2, United States Department of Justice, Office of the United States Trustee, 201 Varick Street, Room 1006, New York, New York 10014, Attn: Greg Zipes (Greg.Zipes@usdoj.gov) and Reema Lateef (Reema.Lateef@usdoj.gov).

(4)     counsel for New York City Regional Center, LLC and George Washington Bridge Bus Station and Infrastructure Development Fund, LLC, Weil, Gotshal & Manges LLP, 767

48036/0050-17964295v1

Fifth Avenue, New York, New York 10153, Attn: Matthew S. Barr, Esq. (Matt.Barr@weil.com) and David J. Cohen, Esq. (DavidJ.Cohen@weil.com).

(5) counsel for UMEZ, Venable LLP, Rockefeller Center, 1270 Avenue of the Americas, 24th Floor, New York, New York 10020, Attn: Rishi Kapoor, Esq. (rkapoor@Venable.com) and Michael C. Phillipou, Esq. (mcphillipou@Venable.com).

(6) counsel for GSNMF Sub-CDE 12 LLC and GSB NMTC Investor LLC, Manatt, Phelps & Phillips, LLP, 7 Times Square, New York, New York 10036, Attn: Neil S. Faden, Esq. (nfaden@manatt.com).

(7) counsel for The Port Authority of New York and New Jersey, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, New York 10036 Attn: Jay M. Goffman, Esq. (jay.goffman@skadden.com) and Christine A. Okike, Esq. (christine.okike@skadden.com).

[remainder of page left intentionally blank]

48036/0050-17964295v1

**PLEASE TAKE FURTHER NOTICE** that unless a written objection to the

Application, with proof of service, is filed with the Bankruptcy Court and a courtesy copy

delivered to the Honorable Shelley C. Chapman's chambers by the Objection Deadline, the

Debtor may, on or after the Objection Deadline, submit to the Bankruptcy Court an Order

substantially in the form of the proposed Order attached to the Application, which Order may be

entered with no further notice or opportunity to be heard.

Dated:  October 14, 2019
        New York, New York

**COLE SCHOTZ P.C.**

By: */s/ Ryan T. Jareck*    
    Michael D. Sirota
    Felice R. Yudkin
    Ryan T. Jareck
    Mark Tsukerman
    Rebecca W. Hollander
    1325 Avenue of the Americas, 19th Fl.
    New York, New York 10019
    Telephone: (212) 752-8000

*Proposed Counsel to the Debtor and
Debtor in Possession*

4

**COLE SCHOTZ P.C.**
Michael D. Sirota
Felice R. Yudkin
Ryan T. Jareck
Mark Tsukerman
Rebecca W. Hollander
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
(212) 752-8000
(212) 752-8393 Facsimile

*Proposed Counsel to the Debtor and*
*Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re | Chapter 11 |
| GEORGE WASHINGTON BRIDGE BUS STATION DEVELOPMENT VENTURE LLC, | Case No. 19-13196 (SCC) |
| Debtor.[1] |  |

## DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF HOULIHAN LOKEY CAPITAL, INC. AS ITS FINANCIAL ADVISOR AND INVESTMENT BANKER *NUNC PRO TUNC* TO THE PETITION DATE

George Washington Bridge Bus Station Development Venture LLC (the "**Debtor**"), the

debtor and debtor in possession in the above-captioned case (the "**Chapter 11 Case**"), hereby

applies (the "**Application**") to this Court for entry of an order, substantially in the form attached

hereto as **Exhibit A** (the "**Proposed Order**"), pursuant to sections 327(a), 328(a) and 1107 of

title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2014 of the Federal Rules of

---

[1]       The last four digits of the debtor's federal taxpayer identification number are 8685. The debtor's business address is 11890 Sunrise Valley Drive, Suite 554, Reston, VA 20191

Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1 of the Local Bankruptcy

Rules for the Southern District of New York (the "**Local Rules**"), (i) authorizing the

employment and retention of Houlihan Lokey Capital, Inc. ("**Houlihan Lokey**") as the Debtor's

financial advisor and investment banker in accordance with the terms and conditions set forth in

that certain engagement agreement, dated as of October 4, 2019 (the "**Engagement**

**Agreement**"), a copy of which is attached as **Exhibit 1** to the Proposed Order, (ii) waiving

certain informational requirements, and (iii) granting related relief.  In support of this

Application, the Debtor relies upon and incorporates by reference the *Declaration of Bernard A.*

*Katz in Support of Chapter 11 Petition and First Day Papers*, dated October 7, 2019 [Docket

No. 2] (the "**First Day Declaration**") and the Declaration of Reid Snellenbarger, a Managing

Director of Houlihan Lokey (the "**Snellenbarger Declaration**"), which is attached hereto as

**Exhibit B**.  In further support of the Application, the Debtor respectfully represents:

**RELIEF REQUESTED**

1.      By this Application, pursuant to Bankruptcy Code sections 327(a), 328(a) and

1107, Bankruptcy Rule 2014, and Local Bankruptcy Rule 2014-1, the Debtor requests entry of

an order (i) authorizing the employment and retention of Houlihan Lokey as the Debtor's

financial advisor and investment banker in accordance with the terms and conditions set forth in

the Engagement Agreement, (ii) waiving certain informational requirements, and (iii) granting

related relief.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska,

C.J.).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2

## BACKGROUND

3.      On October 7, 2019 (the "**Petition Date**"), the Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtor continues to operate its business and manage its property is as debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee, examiner or statutory committee of creditors has been appointed in the Chapter 11 Case.

5.      To date, the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") has not appointed a creditors' committee in the Chapter 11 Case, nor has any trustee or examiner been appointed therein.

6.      Information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of the Chapter 11 Case is set forth in the First Day Declaration.  As set forth therein, the Debtor has a 99-year lease with the Port Authority of New York and New Jersey to operate and maintain the retail portion (the "**Retail Space**") of the George Washington Bridge Bus Station.  In connection therewith, the Debtor is responsible for leasing, managing and maintaining the Retail Space.

## HOULIHAN LOKEY'S QUALIFICATIONS

7.      The Debtor seeks to retain Houlihan Lokey as its financial advisor and investment banker because, among other things, Houlihan Lokey has extensive experience and an excellent reputation in providing high quality investment banking services to debtors and creditors in financial restructurings and bankruptcy proceedings, including in the Real Estate and Retail sectors.

8.      Houlihan Lokey, together with the other subsidiaries of its direct parent company, Houlihan Lokey, Inc., is an internationally recognized investment banking and financial advisory firm, with offices worldwide and more than 900 professionals.  Houlihan Lokey is a leader in

3

providing such services to debtors, acquirers, unsecured and secured creditors, and other parties-in-interest involved with financially troubled companies both in and outside of bankruptcy. Houlihan Lokey has been, and is, involved in some of the largest restructurings in the United States, both out of court and in chapter 11 cases.

9.    Houlihan Lokey has been retained to provide investment banking and financial advisory services in, among other cases, *In re Specialty Retail Shops Holding Corp.,* No. 19-80064 (TLS) (Bankr. D. Neb. Jan. 25, 2019); *In re Sears Holdings Corporation,* No. 18-23538 (RDD) (Bankr. S.D.N.Y. Dec. 18, 2018); *In re Nine West Holdings, Inc.,* No. 18-10947 (SCC) (Bankr. S.D.N.Y. June 18, 2018); *In re Cobalt Int'l Energy, Inc.,* No. 17-36709 (MI) (Bankr. S.D. Tex. Jan. 11, 2018); *In re Walter Investment Management Corporation*, Case No. 17-13446 (Bankr. S.D.N.Y. Nov. 30, 2017); *In re Seadrill Limited*, Case No. 17-60079 (Bankr. S.D. Tex. Sep. 12, 2017); *In re Westinghouse Electric Company LLC*, Case No. 17-10751 (Bankr. S.D.N.Y. Mar. 29, 2017); *In re Roust Corporation*, Case No. 16-23786 (Bankr. S.D.N.Y. Dec. 30, 2016); *In re Sports Authority Holdings, Inc.*, Case No. 16-10527 (Bankr. D. Del. Mar. 2, 2016); *In re Relativity Fashion, LLC* (a.k.a. Relativity Media), Case No. 15-11989 (Bankr. S.D.N.Y. Jul. 30, 2015); *In re RadioShack Corporation*, Case No. 15-10197 (Bankr. D. Del. Feb. 5, 2015); *In re Caesars Entertainment Operating Company, Inc.*, Case No. 15-01145 (Bankr. N.D. Ill. Jan. 15, 2015); *In re Entegra Power Group LLC*, Case No. 14-11859 (Bankr. D. Del. Aug. 4, 2014); *In re Premier International Holdings Inc.* (a.k.a. Six Flags Theme Parks), Case No. 09-12019 (Bankr. D. Del. June 13, 2009); *In re Gen. Growth Props.,* No. 09-11977 (ALG) (Bankr. S.D.N.Y Apr. 16, 2009); *In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 15, 2008); *In re Buffets Holdings, Inc.*, Case No. 08-10141 (Bankr. D. Del. Jan. 22, 2008); *In re Conseco Inc*, Case No. 02-49672 (Bankr. N.D. Ill. Dec. 17, 2002); *In*

48036/0047-17951351v2
48036/0047-17951351v3

*re WorldCom, Inc.*, Case No. 02-13533 (Bankr. S.D.N.Y. July 21, 2002); and *In re Enron Corp.*,

Case No. 01-16034 (Bankr. S.D.N.Y. Dec. 2, 2001).

10.     The Debtor has selected Houlihan Lokey as its investment banker based upon,

among other things, (a) the Debtor's need to retain an investment banking firm to provide advice

with respect to the restructuring, (b) Houlihan's market leading Real Estate Group that provides

extraordinary expertise and relationships in the industry, and (c) Houlihan's extensive experience

and excellent reputation in providing investment banking services in complex chapter 11 cases.

## SERVICES TO BE PROVIDED

11.     The parties have entered into the Engagement Agreement, which governs the

relationship between the Debtor and Houlihan Lokey.  The terms and conditions of the

Engagement Agreement were negotiated at arm's length and in good faith between the Debtor

and Houlihan Lokey and reflect the parties' mutual agreement as to the substantial efforts that

will be required in this engagement.  Under the Engagement Agreement, in consideration for the

compensation contemplated thereby, Houlihan Lokey has agreed to provide the following

services:

    (a)    Conducting immediate and comprehensive due diligence on the Debtor's operations, assets, legal entities and capital structure;

    (b)    Assisting the Debtor in the development and distribution of selected information, documents and other materials, including, advising the Debtor in the preparation of an offering memorandum and teaser for potential investors;

    (c)    Contacting potential investors/acquirers to gauge interest level and discuss the opportunity;

    (d)    Establishing and operating an online data room for relevant materials;

    (e)    Coordinating site visits and management presentations;

(f)    Assisting the Debtor in evaluating indications of interest and proposals regarding any transaction(s) from current and/or potential lenders, equity investors, acquirers and/or strategic partners;

(g)    Assisting the Debtor with the negotiation of any transaction(s), including participating in negotiations with creditors and other parties involved in any transaction(s);

(h)    Providing expert advice and testimony regarding financial matters related to any Transaction(s), if necessary;

(i)    Attending meetings of the Debtor's Board of Directors, creditor groups, official constituencies and other interested parties, as the Debtor and Houlihan Lokey mutually agree; and

(j)    Rendering such other financial advisory and investment banking services as may be mutually agreed upon by Houlihan Lokey and the Debtor.

12.    The Debtor believes that Houlihan Lokey's services will not duplicate the services that any other professionals will be providing to the Debtor in the Chapter 11 Case. Houlihan Lokey will use reasonable efforts to coordinate with the Debtor's other retained professionals to avoid unnecessary duplication of services.

## HOULIHAN LOKEY'S COMPENSATION

13.    In consideration of the services to be provided by Houlihan Lokey, and as more fully described in the Engagement Agreement, subject to the Court's approval, the Debtor has agreed to pay Houlihan Lokey the following proposed compensation, which is set forth in the Engagement Agreement (the "**Fee and Expense Structure**"):

(a)    *Monthly Fees:*  In addition to the other fees provided for herein, upon the first monthly anniversary of the Effective Date, and on every monthly anniversary of the Effective Date during the term of the Engagement Agreement, Houlihan Lokey shall earn, and the Debtor shall accrue, without notice or invoice, a nonrefundable cash fee of $50,000 ("**Monthly Fee**"), which shall be payable upon the consummation of a Transaction. Each Monthly Fee shall be earned upon accrual thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein. Notwithstanding the foregoing, if this Engagement Agreement is terminated before the end of three months from the Effective Date, the Debtor agrees to pay to Houlihan Lokey in cash, on the effective

48036/0047-17951351v2
48036/0047-17951351v3

date of such termination, $100,000.  All of the Monthly Fees after the second Monthly Fee shall be credited against the Transaction Fee (as defined below), except that, in no event, shall such Transaction Fee be reduced below zero;[2]

(b)   *Transaction Fee(s):*  In addition to the other fees provided for herein, the Debtor shall pay Houlihan Lokey the following transaction fee(s):

    a.   *Sale Transaction Fee.* Upon the closing of each Sale Transaction (as defined in the Engagement Agreement), Houlihan Lokey shall earn, and the Debtor shall thereupon pay immediately and directly from the gross proceeds of such Sale Transaction, as a cost of such Sale Transaction, a cash fee ("**Sale Transaction Fee**") based upon Aggregate Gross Consideration ("AGC"), calculated as follows:

        <u>For AGC up to $100 million:</u> 1.55% of AGC, plus

        <u>For AGC from $100 million to $110 million:</u> 3.00% of such incremental AGC, plus

        <u>For AGC above $110 million:</u> 5.00% of such incremental AGC

    To the extent a third-party broker presents an interested party that Houlihan Lokey (i) did not plan to contact, (ii) does not contact, or (iii) had not contacted through the use of any outside services utilized by Houlihan Lokey, including but not limited to Real Capital Markets, and such interested party ultimately consummates a Sale Transaction (as defined below), the Sale Transaction Fee shall be reduced by 25%.

    b.   *Restructuring Transaction Fee.* Upon the earlier to occur of: (I) in the case of an out-of-court Restructuring Transaction (as defined om the Engagement Agreement), the effectiveness of all necessary waivers, consents, amendments or restructuring agreements between any entity comprising the Debtor and the Debtor's creditors or the closing of such Restructuring Transaction; and (II) in the case of an in-court Restructuring Transaction, the date that the requisite consents to a "pre-packaged" plan of reorganization under chapter 11 of the Bankruptcy Code are obtained or the date of confirmation of a plan of reorganization or liquidation under chapter 11 or chapter 7 of the Bankruptcy Code pursuant to an order of the applicable bankruptcy court or the effective date of a confirmed plan of reorganization or liquidation under chapter 11 or chapter 7 of the Bankruptcy Code, Houlihan Lokey shall earn, and the Debtor shall promptly pay to

---

[2]   In accordance with paragraph 3 of the Engagement Agreement, the Debtor paid Houlihan Lokey an initial nonrefundable cash fee of $50,000 upon execution of the Engagement Agreement (the "**Initial Fee**").

48036/0047-17951351v2
48036/0047-17951351v3

Houlihan Lokey, a cash fee ("**Restructuring Transaction Fee**") of $1,450,000.  Provided, however, that in the event a Sale Transaction Fee or Restructuring Transaction Fee is paid pursuant to the Engagement Agreement, Houlihan Lokey shall not be entitled to any other Transaction Fees (defined below).

Any Sale Transaction Fee and Restructuring Transaction Fee is each referred to herein as a "**Transaction Fee**" and collectively as "Transaction Fees".  All payments received by Houlihan Lokey pursuant to the Engagement Agreement at any time shall become the property of Houlihan Lokey without restriction.  No payments received by Houlihan Lokey pursuant to the Engagement Agreement will be put into a trust or other segregated account.

(c)     *Expenses.* In addition to all of the other fees and expenses described in this Engagement Agreement, and regardless of whether any Transaction is consummated, the Debtor shall, upon Houlihan Lokey's request, reimburse Houlihan Lokey for its reasonable out of-pocket expenses incurred from time to time in connection with its services hereunder. Houlihan Lokey bills its clients for its reasonable out-of-pocket expenses including, but not limited to (i) travel-related and certain other expenses, without regard to volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed-fee arrangements made with, travel agents, airlines or other vendors, and (ii) research, database and similar information charges paid to third party vendors, and reprographics expenses, to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan Lokey.  Houlihan Lokey shall, in addition, be reimbursed by the Debtor for the fees and expenses of its legal counsel incurred in connection with the negotiation and performance of the Engagement Agreement and the matters contemplated thereby.

**THE FEE AND EXPENSE STRUCTURE IS APPROPRIATE AND REASONABLE AND SHOULD BE APPROVED UNDER BANKRUPTCY CODE §328(a)**

14.     The Debtor believes that the Fee and Expense Structure is comparable to those generally charged by financial advisors and investment bankers of similar stature to Houlihan Lokey for comparable engagements, both in and out of bankruptcy proceedings, and reflects a balance between a fixed fee and a contingency amount tied to the consummation and closing of the transactions and services contemplated by the Debtor and Houlihan Lokey in the Engagement Agreement.

48036/0047-17951351v2
48036/0047-17951351v3

15.     The Fee and Expense Structure is consistent, and likely more favorable for the Debtor than Houlihan Lokey's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out of bankruptcy proceedings, involving the services to be provided in connection with the Chapter 11 Case.  Moreover, the Fee and Expense Structure is consistent with and likely more favorable for the Debtor than arrangements entered into by Houlihan Lokey and other financial advisors and investment banks in connection with the rendering of comparable services to clients such as the Debtor.

16.     Houlihan Lokey's restructuring expertise, capital markets knowledge, as well as its Real Estate sale expertise, some or all of which may be required by the Debtor during the term of Houlihan Lokey's engagement, were important factors in determining the Fee and Expense Structure.  The ultimate benefit to the Debtor derived from the services provided by Houlihan Lokey pursuant to the Engagement Agreement cannot be measured by a reference to the number of hours expended by Houlihan Lokey's professionals.

17.     The Debtor and Houlihan Lokey negotiated the Fee and Expense Structure to function as an interrelated, integrated unit corresponding to Houlihan Lokey's overall services. It would be contrary to the intention of Houlihan Lokey and the Debtor for any isolated component of the Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of Houlihan Lokey's services.  Instead, the Debtor and Houlihan Lokey intend that Houlihan Lokey's services be considered as a whole for which Houlihan Lokey is to be compensated by the Fee and Expense Structure in its entirety.

18.     In light of the foregoing and given the numerous issues that Houlihan Lokey may be required to address in the performance of its services pursuant to the Engagement Agreement, Houlihan Lokey's commitment to the variable level of time and effort necessary to address all

such issues as they arise, and the market prices for Houlihan Lokey's services for both in court and out of court engagements of this nature, the Debtor believes that the Fee and Expense Structure is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

## **RECORD KEEPING AND APPLICATIONS FOR COMPENSATION**

19.    It is not the general practice of financial advisory and investment banking firms, including Houlihan Lokey, to keep detailed time records similar to those customarily kept by attorneys and required by the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*.  Because Houlihan Lokey does not ordinarily maintain contemporaneous time records in one-tenth hour (0.10) increments or provide or conform to a schedule of hourly rates for professional services, the Debtor requests that Houlihan Lokey be excused from compliance with such requirements and instead should only be required to maintain time records in half-hour (0.50) increments setting forth, in a summary format, a reasonably detailed description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtor.

20.    Houlihan Lokey will also maintain reasonably detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.

21.    Houlihan Lokey's applications for compensation and expense reimbursement will be paid by the Debtor in accordance with the terms of the Engagement Agreement and subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures established by the Court.

48036/0047-17951351v2
48036/0047-17951351v3

## HOULIHAN LOKEY'S DISINTERESTEDNESS

22.     To the best of the Debtor's knowledge and except to the extent disclosed herein and in the Snellenbarger Declaration, Houlihan Lokey: (i) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; and (ii) does not hold or represent any interest adverse to the Debtor or its estate.

23.     As set forth in further detail in the Snellenbarger Declaration, Houlihan Lokey has certain connections with creditors and other parties in interest in the Chapter 11 Case. The Debtor and Houlihan Lokey believe that all of these matters, however, are unrelated to the Chapter 11 Case. The Debtor and Houlihan Lokey do not believe that any of these matters represent an interest materially adverse to the Debtor's estate or otherwise create a conflict of interest regarding the Debtor or the Chapter 11 Case.

24.     To the extent Houlihan Lokey discovers any material facts bearing on the matters described herein during the period of Houlihan Lokey's retention, Houlihan Lokey has undertaken to amend and supplement the information contained in this Application and the Snellenbarger Declaration to disclose such facts.

25.     During the 90 days immediately preceding the Petition Date, the Debtor paid Houlihan Lokey $50,000 in an Initial Fee. Other than as set forth herein, Houlihan Lokey did not receive any payments from the Debtor during the 90 days immediately preceding the Petition Date.

26.     As of the Petition Date, the Debtor did not owe Houlihan Lokey for any fees or expenses incurred prior to the Petition Date. It is possible that certain expenses that were incurred by Houlihan Lokey that are reimbursable under the terms of the Engagement Agreement were not yet reflected on Houlihan Lokey's books and records as of the Petition

48036/0047-17951351v2
48036/0047-17951351v3

Date.  Upon entry of an order approving the Application, Houlihan Lokey will waive any claim for such unreimbursed expenses in excess of amounts paid to Houlihan Lokey prepetition.

27.      As set forth in the Snellenbarger Declaration, Houlihan Lokey has not shared or agreed to share any of its compensation from the Debtor with any other person, other than as permitted by section 504 of the Bankruptcy Code.  If any such agreement is entered into, Houlihan Lokey has undertaken to amend and supplement the information contained in this Application and the Snellenbarger Declaration to disclose the terms of any such agreement.

28.      No promises have been received by Houlihan Lokey, or by any professionals engaged hereunder, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

## INDEMNIFICATION PROVISIONS

29.      Among other things, the Engagement Agreement provides that the Debtor shall indemnify Houlihan Lokey and the other Indemnified Parties (as defined in the Engagement Agreement) against any and all losses, claims, damages, or liabilities to which the Indemnified Parties may become subject in connection with the Engagement Agreement, except to the extent such losses are finally judicially determined to have resulted primarily from such Indemnified Party's gross negligence or willful misconduct.

30.      The Debtor and Houlihan Lokey believe that the indemnification, contribution, reimbursement, and other related provisions contained in the Engagement Agreement are customary and reasonable for financial advisory and investment banking engagements, both in and out of court, and, as modified by the Proposed Order, reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.

48036/0047-17951351v2
48036/0047-17951351v3

31.     The terms and conditions of the Engagement Agreement, including these

provisions, were negotiated by the Debtor and Houlihan Lokey at arm's length and in good faith.

The Debtor respectfully submits that such provisions, viewed in conjunction with the other terms

of Houlihan Lokey's proposed retention, are reasonable and in the best interests of the Debtor, its

estate and creditors in light of the fact that the Debtor requires Houlihan Lokey's services in the

Chapter 11 Case.

## BASIS FOR RELIEF

32.     The Debtor seeks authority to employ and retain Houlihan Lokey as its financial

advisor and investment banker under Bankruptcy Code section 327, which authorizes the employ

of professional persons "that do not hold or represent an interest adverse to the estate, and that

are disinterested persons, to represent or assist the trustee in carrying out the Debtor's duties

under this title." 11 U.S.C. § 327(a).

33.     Subject certain exceptions inapplicable to this case, Bankruptcy Code section

1107(a) provides, in pertinent part, that a debtor in possession shall have all the right and powers

and shall perform all the duties and functions of a trustee. *See* 11 U.S.C. § 1107(a).

Furthermore, Bankruptcy Code section 1107(b) provides that "a person is not disqualified for

employment under section 327 of the Bankruptcy Code by a debtor in possession solely because

of such person's employment by or representation of the debtor before the commencement of the

case." 11 U.S.C. § 1107(b).

34.     In addition, the Debtor seeks approval of the Engagement Agreement (including

the Fee and Expense Structure and the indemnification, contribution, reimbursement and other

related provisions) pursuant to section 328(a) of the Bankruptcy Code, which provides, in

relevant part, that the Debtor "with the court's approval, may employ or authorize the

employment of a professional person under section 327. . . on any reasonable terms and

conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage

fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328 of the Bankruptcy

Code permits the compensation of professionals, including financial advisors and investment

bankers, on more flexible terms that reflect the nature of their services and market conditions.

As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin &*

*Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to
> work for bankruptcy estates where their compensation would be
> subject to the uncertainties of what a judge thought the work was
> worth after it had been done. That uncertainty continues under the
> present § 330 of the Bankruptcy Code, which provides that the court
> award to professional consultants "reasonable compensation" based
> on relevant factors of time and comparable costs, etc. Under present
> § 328 the professional may avoid that uncertainty by obtaining court
> approval of compensation agreed to with the trustee (or debtor or
> committee).

*Id.* at 862 (citations omitted); *accord Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official*

*Comm. of Unsecured Creditors (In re Smart World Techs. LLC)*, 383 B.R. 869, 874

(S.D.N.Y. 2008).

35.    The Engagement Agreement appropriately reflects (i) the nature and scope of

services to be provided by Houlihan Lokey, (ii) Houlihan Lokey's substantial experience with

respect to financial advisory and investment banking services, and (iii) the Fee and Expense

Structure typically utilized by Houlihan Lokey and other leading financial advisors and

investment bankers.

36.    Similar fixed and contingency fee arrangements have been approved and

implemented by courts in other large chapter 11 cases. *See, e.g.*, *In re Arcapita Bank B.S.C.*,

Case No. 14-01849 (Bankr. S.D.N.Y. March 17, 2014); *In re Buffets Holdings, Inc.*, Case No.

12-10238 (Bankr. D. Del. Jan. 18, 2012); and *In re Lehman Brothers Holdings Inc.*, Case No. 08-

13555 (Bankr. S.D.N.Y. Sept. 15, 2008).  Accordingly, the Debtor believes that Houlihan

Lokey's retention on the terms and conditions proposed herein is appropriate.

## NOTICE

37.     The Notice of this Application will be given to: (i) Office of the United States

Trustee, 201 Varick Street, Suite 1006, New York, New York, 10014, (ii) counsel for New York

City Regional Center, LLC and George Washington Bridge Bus Station and Infrastructure

Development Fund, LLC, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New

York 10153 (Attn:  Matthew S. Barr, Esq. and David J. Cohen, Esq.); (iii) counsel for UMEZ,

Venable LLP, Rockefeller Center, 1270 Avenue of the Americas, 24th Floor, New York, New

York 10020 (Attn:  Rishi Kapoor, Esq. and Michael C. Phillipou, Esq.); (iv) counsel for GSNMF

Sub-CDE 12 LLC and GSB NMTC Investor LLC, Manatt, Phelps & Phillips, LLP, 7 Times

Square, New York, New York 10036 (Attn: Neil S. Faden, Esq.); (v) counsel for The Port

Authority of New York and New Jersey, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times

Square, New York, New York 10036 (Attn: Jay M. Goffman, Esq. and Christine A. Okike,

Esq.);  (vi) counsel for Tutor Perini Building Corp., Nida & Romyn, P.C., 1900 Avenue of the

Stars, Suite 650, Los Angeles, CA 90067 (Attn: Robert Nida, Esq.), (vii) the Internal Revenue

Service, (viii) the Securities and Exchange Commission, (ix) the parties included on the Debtor's

consolidated list of their 20 largest unsecured creditors, (x) the United States Attorney of the

Southern District of New York, and (xi) all parties entitled to notice pursuant to Local

Bankruptcy Rule 9013-1(b).  The Debtor submits that no other or further notice is required.

## No Prior Request

38.     No prior application for the relief requested herein has been made to this or any

other court.

48036/0047-17951351v2
48036/0047-17951351v3

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form of the Proposed Order attached hereto as **Exhibit A** (i) granting the relief sought herein and (ii) granting such other and further relief as the Court may deem proper.

Dated:  October 14, 2019
New York, New York

Respectfully Submitted,

COLE SCHOTZ P.C.

By: */s/ Ryan T. Jareck*
Michael D. Sirota
Felice R. Yudkin
Ryan T. Jareck
Mark Tsukerman
Rebecca W. Hollander
1325 Avenue of the Americas, 19th Fl.
New York, New York 10019
Telephone: (212) 752-8000

*Proposed Counsel to the Debtor and Debtor in Possession*

16

**<u>EXHIBIT A</u>**

**PROPOSED ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GEORGE WASHINGTON BRIDGE BUS STATION DEVELOPMENT VENTURE LLC, | Case No.  19-13196 (SCC) |
| Debtor.[1] | |

**ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF HOULIHAN
LOKEY CAPITAL, INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER
TO THE DEBTOR *NUNC PRO TUNC* TO THE PETITION DATE**

Upon the application (the "**Application**")[2] of the Debtor for entry of an order pursuant to

Bankruptcy Code sections 327 and 328(a), Bankruptcy Rule 2014, and Local Rule 2014-1,

authorizing the employment and retention of Houlihan Lokey Capital, Inc. ("**Houlihan Lokey**")

as its financial advisor and investment banker pursuant to the terms of the Engagement Agreement,

dated as of October 4, 2019 (the "**Engagement Agreement**"), a copy of which is attached hereto

as **Exhibit 1**; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334 and the *Amended Standing Order of Reference*, M-431, dated January 31, 2012 (Preska, C.J.);

and venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter

being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and due and sufficient notice of the

Application having been given under the circumstances; and it appearing that no other or further

notice is necessary; and the Court having considered the Application, the First Day Declaration,

and the Snellenbarger Declaration; and the Court being satisfied with the representations made

---

[1]     The last four digits of the debtor's federal taxpayer identification number are 8685. The debtor's business address is 11890 Sunrise Valley Drive, Suite 554, Reston, VA 20191.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

therein; and the Court finding that (A) the terms and conditions of Houlihan Lokey's employment set forth in the Engagement Agreement (including the Fee and Expense Structure) as modified by this Order, are reasonable as required by section 328(a) of the Bankruptcy Code; (B) Houlihan Lokey (i) does not hold or represent an interest adverse to the interest of the estate; and (ii) is a "disinterested person" as that term is defined under section 101(14) of the Bankruptcy Code; (C) the Application and the Snellenbarger Declaration are in full compliance with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; and (D) the relief requested in the Application is in the best interests of the Debtor, its estate and creditors; and after due deliberation, and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Application is GRANTED as set forth herein.

2.      The Debtor is authorized to retain and employ Houlihan Lokey as its financial advisor and investment banker pursuant to sections 327, 328(a) and 1107 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1, *nunc pro tunc* to the Petition Date, on the terms and conditions set forth in the Engagement Agreement and the Application, and is directed to perform its obligations set forth therein, except as expressly modified herein.

3.      None of the fees payable to Houlihan Lokey shall constitute a "bonus" or fee enhancement under applicable law.

4.      Houlihan Lokey's compensation shall be subject to review only pursuant to the standard of review set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code.

5.      Notwithstanding the preceding paragraph, the U.S. Trustee shall retain the right to object to the compensation and fees and expenses to be paid to Houlihan Lokey pursuant to the

48036/0047-17951351v2
48036/0047-17951351v3

Application and the Engagement Agreement, including the Monthly Fee and the Transaction Fee, based on the reasonableness standard provided for in section 330 of the Bankruptcy Code, and the Court shall consider any such objection by the U.S. Trustee under section 330 of the Bankruptcy Code; provided, that reasonableness for this purpose shall include, among other things, an evaluation by comparing the fees payable in this case to the fees paid to other investment banking firms for comparable services in other chapter 11 cases and outside of chapter 11 cases, and shall not be evaluated primarily on the basis of time committed or the length of such cases.

6.      The Debtor is authorized to compensate and reimburse Houlihan Lokey pursuant to the terms of the Engagement Agreement, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable orders of this Court.

7.      In light of the services to be provided by Houlihan Lokey and the compensation structure in the Engagement Agreement, Houlihan Lokey and its professionals shall be excused from: (i) any requirement to maintain or provide detailed time records in accordance with Bankruptcy Rule 2016(a), the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, and the United States Trustee Fee Guidelines; and (ii) conforming with a schedule of hourly rates for its professionals.  Instead, notwithstanding that Houlihan Lokey does not charge for its services on an hourly basis, Houlihan Lokey will nonetheless maintain reasonably detailed time records in 0.5 hour increments containing descriptions of those services rendered for the Debtor, and the individuals who provided those services, and will present such records together with its fee applications filed with the Court.

8.      To the extent requested in the Application, Houlihan Lokey is granted a waiver with respect to the information requirements contained in the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*.

3

9.      The Debtor shall be bound by the indemnification, contribution, reimbursement and exculpation provisions set forth in the Engagement Agreement, subject during the pendency of the Chapter 11 Case to the following:

(a)      All requests by Indemnified Parties for the payment of indemnification, contribution, or otherwise as set forth in the Engagement Agreement during the pendency of the Chapter 11 Case shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity, contribution, or other payment conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity, contribution, or other payment is sought; <u>provided</u> that in no event shall any Indemnified Party be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.  In no event shall an Indemnified Party be indemnified if the Debtor or a representative of the estate asserts a claim for, and the Court determines by final order that such claim arose out of, such Indemnified Party's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

(b)      In the event an Indemnified Party seeks reimbursement from the Debtor for attorneys' fees and expenses in connection with the payment of an indemnity, contribution or other claim pursuant to the Engagement Agreement, the invoices and supporting time records from such attorneys shall be included in Houlihan Lokey's own applications, both interim and final, and such invoices and time records shall be subject to the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, dated January 29, 2013 (General Order M-447), and the approval of the Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

10.     Notwithstanding any provision in the Engagement Agreement to the contrary, the contribution obligations of the Indemnified Parties shall not be limited to the aggregate amount of fees actually received by Houlihan Lokey from the Debtor pursuant to the Engagement Agreement.

11.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

4

12.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding the possible applicability of Bankruptcy Rule 6004, 7062, or 9014.

13.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in the Chapter 11 Case, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of the Chapter 11 case to a case under chapter 7.

14.     To the extent that this Order is inconsistent with the Engagement Agreement, the terms of this Order shall govern.

15.     This Court shall retain jurisdiction to construe and enforce the terms of this Order.


DATED:  October ___, 2019
        New York, New York


                                        _____
                                        HONORABLE SHELLEY C. CHAPMAN
                                        UNITED STATES BANKRUPTCY JUDGE

5

**<u>EXHIBIT 1</u>**

**ENGAGEMENT AGREEMENT**



October 4, 2019


George Washington Bridge Bus Station Development Venture LLC
4211 Broadway
New York, New York 10033
Attn: Bernard A. Katz, Manager


Dear Bernard:

  This letter agreement (this "Agreement") confirms the terms under which George Washington Bridge Bus Station Development Venture LLC (collectively with its direct and indirect subsidiaries, the "Company") has engaged Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), effective as of the date indicated above (the "Effective Date"), as its exclusive financial advisor to provide financial advisory and investment banking services in connection with one or more merger or acquisition transactions for the Company and/or a financial restructuring or reorganization and with respect to such other financial matters as to which the Company and Houlihan Lokey may agree in writing during the term of this Agreement.

1.  **Services**.  In connection with each potential Transaction (as defined below), Houlihan Lokey will assist and advise the Company with the analysis, evaluation, pursuit and effectuation of any such Transaction.  Houlihan Lokey's services will consist of, if appropriate and if requested by the Company, (i) Conducting immediate and comprehensive due diligence on the Company's operations, assets, legal entities and capital structure; (ii) assisting the Company in the development and distribution of selected information, documents and other materials, including, if appropriate, advising the Company in the preparation of an offering memorandum and teaser for potential investors (it being expressly understood that the Company will remain solely responsible for such materials and all of the information contained therein); (iii) contacting potential investors / acquirers to gauge interest level and discuss the opportunity; (iv) establishing and operating an online data room for relevant materials; (v) coordinating site visits and management presentations; (vi) assisting the Company in evaluating indications of interest and proposals regarding any Transaction(s) from current and/or potential lenders, equity investors, acquirers and/or strategic partners; (vii) assisting the Company with the negotiation of any Transaction(s), including participating in negotiations with creditors and other parties involved in any Transaction(s); (viii) providing expert advice and testimony regarding financial matters related to any Transaction(s), if necessary; (ix) attending meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as the Company and Houlihan Lokey mutually agree; and (x) providing such other financial advisory and investment banking services as may be required by additional

George Washington Bridge Bus Station Development Venture LLC
Page 2

issues and developments not anticipated on the Effective Date, as described in Section 10 of this Agreement.

2.      **Exclusive Agency.**  The Company agrees that neither it nor its management will initiate any discussions regarding a Transaction during the term of this Agreement, except with prior consultation with Houlihan Lokey.  In the event the Company or its management receives or has received any inquiry regarding a Transaction from any party, the Company shall promptly inform Houlihan Lokey of such inquiry so that Houlihan Lokey can assist the Company in evaluating such party and its interest in a Transaction and in any resulting negotiations.

3.      **Fees.**  In consideration of Houlihan Lokey's acceptance of this engagement, the Company shall pay the following:

(i)     *Initial Fee:*  In addition to the other fees provided for herein, upon the execution of this Agreement, the Company shall pay Houlihan Lokey a nonrefundable cash fee of $50,000, which shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement ("Initial Fee");

(ii)    *Monthly Fees*:  In addition to the other fees provided for herein, upon the first monthly anniversary of the Effective Date, and on every monthly anniversary of the Effective Date during the term of this Agreement, Houlihan Lokey shall earn, and the Company shall accrue, without notice or invoice, a nonrefundable cash fee of $50,000 ("Monthly Fee"), which shall be payable upon the consummation of a Transaction.  Each Monthly Fee shall be earned upon accrual thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein. Notwithstanding the foregoing, if this Agreement is terminated before the end of three months from the Effective Date, the Company hereby agrees to pay to Houlihan Lokey in cash, on the effective date of such termination, $100,000. All of the Monthly Fees after the second Monthly Fee shall be credited against the Transaction Fee (as defined below), except that, in no event, shall such Transaction Fee be reduced below zero;

(iii)   *Transaction Fee(s)*:  In addition to the other fees provided for herein, the Company shall pay Houlihan Lokey the following transaction fee(s):

a.      *Sale Transaction Fee.*  Upon the closing of each Sale Transaction (as defined below), Houlihan Lokey shall earn, and the Company shall thereupon pay immediately and directly from the gross proceeds of such Sale Transaction, as a cost of such Sale Transaction, a cash fee ("Sale Transaction Fee") based upon Aggregate Gross Consideration ("AGC"), calculated as follows:

| | |
|---|---|
| For AGC up to $100 million: | 1.55% of AGC, plus |
| For AGC from $100 million to $110 million: plus | 3.00% of such incremental AGC, |
| For AGC above $110 million: | 5.00% of such incremental AGC. |

To the extent a third-party broker presents an interested party that Houlihan Lokey (i) did not plan to contact, (ii) does not contact, or (iii) had not contacted through the use of any outside services utilized by Houlihan Lokey, including but not limited to Real Capital Markets, and such interested party ultimately consummates a Sale Transaction (as defined below), the Sale Transaction Fee shall be reduced by 25%.

George Washington Bridge Bus Station Development Venture LLC
Page 3

      b.   *Restructuring Transaction Fee.* Upon the earlier to occur of: (I) in the case of an out-of-court Restructuring Transaction (as defined below), the effectiveness of all necessary waivers, consents, amendments or restructuring agreements between any entity comprising the Company and the Company's creditors or the closing of such Restructuring Transaction; and (II) in the case of an in-court Restructuring Transaction, the date that the requisite consents to a "pre-packaged" plan of reorganization under Chapter 11 of the Bankruptcy Code (as defined below) are obtained or the date of confirmation of a plan of reorganization or liquidation under Chapter 11 or Chapter 7 of the Bankruptcy Code (as defined below) pursuant to an order of the applicable bankruptcy court or the effective date of a confirmed plan of reorganization or liquidation under Chapter 11 or Chapter 7 of the Bankruptcy Code (as defined below), Houlihan Lokey shall earn, and the Company shall promptly pay to Houlihan Lokey, a cash fee ("Restructuring Transaction Fee") of $1,450,000.

Any Sale Transaction Fee and Restructuring Transaction Fee is each referred to herein as a "Transaction Fee" and are collectively referred to herein as "Transaction Fees." All payments received by Houlihan Lokey pursuant to this Agreement at any time shall become the property of Houlihan Lokey without restriction. No payments received by Houlihan Lokey pursuant to this Agreement will be put into a trust or other segregated account.

4.    **Term and Termination.** This Agreement may be terminated at any time by either party upon thirty days' prior written notice of termination to the other party. The expiration or termination of this Agreement shall not affect (i) any provision of this Agreement other than Sections 1 through 3 and (ii) Houlihan Lokey's right to receive, and the Company's obligation to pay, any and all fees, expenses and other amounts due, whether or not any Transaction shall be consummated prior to or subsequent to the effective date of expiration or termination, as more fully set forth in this Agreement; *provided, however,* that Houlihan Lokey shall not be entitled to a Transaction Fee or any additional Monthly Fees to the extent Houlihan Lokey terminates this Agreement for a reason other than a breach by the Company of the obligations set forth in this Agreement that would have a material adverse impact on Houlihan Lokey's ability to provide services or the consummation of a Transaction

In addition, notwithstanding the expiration or termination of this Agreement, Houlihan Lokey shall be entitled to full payment by the Company of the Transaction Fees described in this Agreement: (i) so long as a Transaction is consummated during the term of this Agreement, or within 18 months after the date of expiration or termination of this Agreement ("Tail Period"), and/or (ii) if an agreement in principle to consummate a Transaction is executed by any entity comprising the Company during the term of this Agreement, or within the Tail Period, and such Transaction is consummated at any time following such execution with the counterparty named in such agreement, or with any affiliate or employee of, or investor in, such counterparty, or any affiliate of any of the foregoing; *provided, however*, that in the event a Sale Transaction Fee or Restructuring Transaction Fee is paid pursuant to this Agreement, Houlihan Lokey shall not be entitled to any other Transaction Fees pursuant to the foregoing (i) and (ii).

5.    **Agreement from Secured Lenders.** Houlihan Lokey's obligations to provide the services described herein are contingent upon, and expressly subject to, the execution of a waiver, subordination or similar agreement, in form and substance satisfactory to Houlihan Lokey, pursuant to which the Company's senior secured lenders consent to the performance of the Company's obligations under this Agreement, including, without limitation, the Company's payment of Houlihan Lokey's fees and expenses described in Sections 3 and 11 hereof, free and clear of such lenders' security interests in the Company's assets.

6.    **Transaction.** As used in this Agreement, the term "Transaction" shall mean any of the following:

48036/0047-17922412v2

George Washington Bridge Bus Station Development Venture LLC
Page 4

(i)  *Sale Transaction*.   Any transaction or series of related transactions that constitute the disposition to one or more third parties (including, without limitation, any person, group of persons, partnership, corporation or other entity, and also including, among others, any of the existing owners, shareholders, employees, or creditors of any entity comprising the Company and/or the affiliates of each) in one or a series of related transactions of (a) all or a material portion or majority of the equity securities of any entity comprising the Company or any interest held by any entity comprising the Company and/or (b) all or substantially all of the assets (including the assignment of any executory contracts) or operations of any entity comprising the Company or any joint venture or partnership or other entity formed by it, in either case, including, without limitation, through a sale or exchange of capital stock, options or assets with or without a purchase option, a merger, consolidation or other business combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity, or any similar transaction, including, without limitation, any sale transaction under Sections 363, 1129 or any other provision of Title 11, United States Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code") (each a "Sale Transaction"); or

(ii)  *Restructuring Transaction*.   Any transaction or series of transactions that constitute a recapitalization or restructuring of the equity and/or debt securities and/or other indebtedness, obligations or liabilities (including, without limitation, preferred stock, partnership interests, lease obligations, trade credit facilities, collective bargaining agreements and other contract or tort obligations) of any entity comprising the Company, including accrued and/or accreted interest thereon, which are outstanding as of the Effective Date, including, without limitation, interest bearing trade debt and the Company's agreements with George Washington Bridge Bus Station and Infrastructure Development Fund, LLC, George Washington Bridge Bus Station and Infrastructure Development Fund, Phase II, LLC, Upper Manhattan Empowerment Zone Development Corporation, GWB Leverage Lender, LLC, LIIF SUB-CDE XXVI, LLC, DVCI CDE XIII, LLC, and GSNMF SUBCDE 12 LLC, which recapitalization or restructuring is effected pursuant to an exchange transaction, tender offer, a plan of reorganization or liquidation under the Bankruptcy Code, a solicitation of consents, waivers, acceptances or authorizations, any change of control transaction, any refinancing, sale, acquisition, merger, repurchase, exchange, conversion to equity, cancellation, forgiveness, retirement and/or a modification or amendment to the terms, conditions, or covenants (including, without limitation, the principal balance, accrued or accreted interest, payment term, other debt service requirement and/or financial or operating covenant) of any agreements or instruments governing any of the equity and/or debt securities and/or other indebtedness of any entity comprising the Company (such modification or amendment shall include, without limitation, any forbearance for at least 12 months with respect to any payment obligation) or any combination of the foregoing transactions (each a "Restructuring Transaction").

7.    **Aggregate Gross Consideration ("AGC")**.  For the purpose of calculating the Sale Transaction Fee, the AGC shall be the gross proceeds and other consideration paid to, or received by, or to be paid to or received by, any entity comprising the Company, or any of its equity or debt holders, or other parties in interest, including, without limitation, holders of warrants and convertible securities, and holders of options or stock appreciation rights, whether or not vested (collectively "Constituents"), in connection with the relevant Sale Transaction. Such proceeds and consideration shall be deemed to include, without limitation: amounts in escrow and any deposits or other amounts forfeited by any investor; cash, notes, securities, and other property; payments made in installments; amounts payable under consulting agreements, above-market employment contracts, non-compete or severance agreements, consulting contracts or similar arrangements with any equity holder; Contingent Payments (as defined below) and/or insurance proceeds upon the occurrence of an insurable event that diminishes the value of the Company. Upon the closing of a Sale Transaction in which less than 100% of the ownership of the equity interests

George Washington Bridge Bus Station Development Venture LLC
Page 5

are sold, the AGC shall be calculated as if 100% of the ownership of the equity interests of the Company on a fully diluted basis had been sold by dividing (i) the total consideration, whether in cash, securities, notes or other forms of consideration, received or receivable by the Company and/or its Constituents by (ii) the percentage of ownership which is sold. If, in the Sale Transaction, no consideration is being paid in respect of the existing equity, AGC of the retained equity shall be determined by the good faith agreement of the parties as to the value of such retained equity implied by the Sale Transaction. In addition, if any of the liabilities of any entity comprising the Company are assumed, decreased, reinstated, satisfied or otherwise paid off in conjunction with a Sale Transaction (by any entity comprising the Company or any investor, in the form of "cure" payments or otherwise), or any of the assets of any entity comprising the Company are sold or otherwise transferred outside of the Company's ordinary course of business to another party prior to the closing of a Sale Transaction (including, without limitation, any dividends or distributions paid to security holders or amounts paid to repurchase any securities) or are retained by any entity comprising the Company after the closing of the Sale Transaction, the AGC will be increased to reflect the face value of any such liabilities and the fair market value of any such assets. Contingent Payments shall be defined as the consideration received or receivable by the Company, or any of its Constituents and/or any other parties in the form of deferred performance-based payments, "earn-outs", or other contingent payments based upon the future performance of any entity comprising the Company, or any of its businesses or assets.

8.      **Value of Consideration.**  For the purpose of calculating the AGC received in a Sale Transaction, any securities, other than a promissory note, will be valued at the time of the closing of the Sale Transaction, without regard to any restrictions on transferability, as follows: (i) if such securities are traded on a stock exchange, the securities will be valued at the average last sale or closing price for the ten trading days immediately prior to the closing of the Sale Transaction; (ii) if such securities are traded primarily in over-the-counter transactions, the securities will be valued at the mean of the closing bid and asked quotations similarly averaged over a ten trading day period immediately prior to the closing of the Sale Transaction; and (iii) if such securities have not been traded prior to the closing of the Sale Transaction, Houlihan Lokey and the Company shall negotiate in good faith to agree on a fair valuation thereof, without regard to any restrictions on transferability, for the purposes of calculating the AGC.  For any lease payments and other consideration that is not freely tradable or has no established public market, if the consideration utilized consists of property other than securities, then the value of such property shall be the fair market value thereof as determined in good faith by Houlihan Lokey and the Company.  If any consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such consideration is payable.  The value of any purchase money or other promissory notes shall be deemed to be the face amount thereof.  In the event the AGC includes any Contingent Payments, Houlihan Lokey's Transaction Fee shall be calculated based on the mutually agreed value of such Contingent Payments as of closing. If the parties cannot reach such an agreement, an additional Sale Transaction Fee shall be paid to Houlihan Lokey from, and on account of, such Contingent Payments at the same time that each of such Contingent Payments are received regardless of any prior termination or expiration of this Agreement.  Each such additional Sale Transaction Fee shall be calculated pursuant to the provisions of this Agreement based upon the amount of each such Contingent Payment.

9.      **Characterization of Multiple and/or Complex Transactions.**  In the event the Company and Houlihan Lokey are unable to agree in good faith upon the classification of any single Transaction as a Restructuring Transaction or Sale Transaction, or if a single Transaction with only one third party shall consist of two, or more, of the foregoing types of Transactions, or elements thereof, Houlihan Lokey shall receive only one Transaction Fee in respect of such Transaction, which shall be equal to the greater of the Restructuring Transaction Fee or Sale Transaction Fee, as applicable, as calculated in accordance with the terms of this Agreement.

George Washington Bridge Bus Station Development Venture LLC
Page 6

10.    **Reasonableness of Fees.**  The parties acknowledge that this engagement will require a substantial professional commitment of time and effort by Houlihan Lokey.  Moreover, the amount of time and effort may vary substantially during different periods of the engagement. As a result, in order to ensure the availability of all necessary professional resources, whenever required, Houlihan Lokey may be foreclosed from pursuing other alternative engagement opportunities. In light of the foregoing, and given: (i) the numerous issues which can currently be anticipated in engagements such as this, (ii) Houlihan Lokey's commitment to the variable level of time and effort necessary to address such issues, (iii) the expertise and capabilities of Houlihan Lokey that will be required in this engagement, and (iv) the market rate for Houlihan Lokey's services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates Houlihan Lokey, and provides the requisite certainty to the Company. The parties further agree and acknowledge that: (a) additional issues and developments, not currently anticipated, may arise and have an impact upon the services to be rendered by Houlihan Lokey hereunder, and may result in substantially more work and/or services being performed by Houlihan Lokey than is anticipated at this time; and (b) as a result of such unanticipated issues and/or developments, the results of Houlihan Lokey's services under this Agreement may also be substantially more beneficial than anticipated at this time. Accordingly, in the event of the occurrence of (a) and/or (b), in the prior sentence, each of the parties to this Agreement may, at the conclusion of the services rendered by Houlihan Lokey pursuant hereto, agree to a modification of the Transaction Fees described herein to more appropriately reflect the actual work performed, services rendered and/or any extraordinary results achieved by Houlihan Lokey pursuant to its engagement hereunder.

11.    **Expenses.**  In addition to all of the other fees and expenses described in this Agreement, and regardless of whether any Transaction is consummated, the Company shall, upon Houlihan Lokey's request, reimburse Houlihan Lokey for its reasonable and reasonably documented out-of-pocket expenses incurred from time to time in connection with its services hereunder, but in no event greater than $25,000 without the Company's prior approval, which approval shall not be unreasonably withheld (provided that such limitation shall not affect the Company's obligations to reimburse other expenses under the terms of this Agreement).  Houlihan Lokey bills its clients for its reasonable out-of-pocket expenses including, but not limited to (i) reasonably documented travel-related and certain other expenses, without regard to volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed-fee arrangements made with, travel agents, airlines or other vendors, and (ii) research, database and similar information charges paid to third party vendors, and reprographics expenses, to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan Lokey.

Houlihan Lokey shall, in addition, be reimbursed by the Company for the reasonable and reasonably documented fees and expenses of Houlihan Lokey's outside legal counsel incurred in connection with the negotiation and performance of this Agreement, but in no event greater than $10,000 without the Company's prior approval, which approval shall not be unreasonably withheld (provided that such limitation shall not affect the Company's obligations to reimburse other expenses under the terms of this Agreement).

12.    **Invoicing and Payment.**  All amounts payable to Houlihan Lokey shall be made in lawful money of the United States in accordance with the payment instructions set forth on the invoice provided with this Agreement, or to such accounts as Houlihan Lokey shall direct, and the Company shall provide contemporaneous written notice of each such payment to Houlihan Lokey.  All amounts invoiced by Houlihan Lokey shall be exclusive of value added tax, withholding tax, sales tax and any other similar taxes ("Taxes").  All amounts charged by Houlihan Lokey will be invoiced together with Taxes where appropriate.

George Washington Bridge Bus Station Development Venture LLC
Page 7

13.    **Information.**  The Company will provide Houlihan Lokey with access to management and other representatives of the Company and other participants in any Transaction, as reasonably requested by Houlihan Lokey. The Company will furnish Houlihan Lokey with such information as Houlihan Lokey may reasonably request for the purpose of carrying out its engagement hereunder, all of which will be, to the Company's best knowledge, accurate and complete at the time furnished. In addition, with respect to financial forecasts and projections that may be furnished to or discussed with Houlihan Lokey by the Company or any other entity, Houlihan Lokey will be entitled to assume that such financial forecasts and projections have been or will be reasonably prepared in good faith on bases reflecting the best currently available estimates and judgments of the Company's or such other entity's management, as the case may be, as to the matters covered thereby. The Company will promptly notify Houlihan Lokey in writing of any material inaccuracy or misstatement in, or material omission from, any information previously delivered to, or discussed with, Houlihan Lokey, or any materials provided to any interested party. Houlihan Lokey shall rely, without independent verification, on the accuracy and completeness of all information that is publicly available and of all information furnished by or on behalf of the Company or any other potential party to any Transaction or otherwise reviewed by, or discussed with, Houlihan Lokey.  The Company understands and agrees that Houlihan Lokey will not be responsible for the accuracy or completeness of such information, and shall not be liable for any inaccuracies or omissions therein.  The Company acknowledges that Houlihan Lokey has no obligation to conduct any appraisal of any assets or liabilities of the Company or any other party or to evaluate the solvency of any party under any applicable laws relating to bankruptcy, insolvency or similar matters. Houlihan Lokey's role in reviewing any information is limited solely to performing such a review as it shall deem necessary to support its own advice and analysis and shall not be on behalf of any other party. Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of the Board of Directors of the Company (solely in its capacity as such) in evaluating a Transaction, and such advice may not be relied upon by any other person or entity or used for any other purpose. Any advice rendered by, or other materials prepared by, or any communication from, Houlihan Lokey may not be disclosed, in whole or in part, to any third party, or summarized, quoted from, or otherwise referred to in any manner without the prior written consent of Houlihan Lokey, with such consent not to be unreasonably withheld. In addition, neither Houlihan Lokey nor the terms of this Agreement may otherwise be referred to without our prior written consent, with such consent not to be unreasonably withheld.

14.    **Confidential Information.**  Houlihan Lokey acknowledges that, in connection with the services to be provided pursuant to this Agreement, certain confidential, non-public and proprietary information concerning the Company and the Transaction ("Confidential Information") has been or may be disclosed by the Company to Houlihan Lokey, any of its affiliates, or any of their respective agents, advisors, accountants, attorneys, employees, subcontractors, officers, directors and other representatives (collectively, "Representatives"). Houlihan Lokey agrees that, without the Company's prior consent, no Confidential Information will be disclosed, in whole or in part, to any other party (other than to any potential party to a Transaction under appropriate assurances of confidentiality, to those Representatives who need access to any Confidential Information for purposes of performing the services to be provided hereunder, or as may be required by law or regulatory authority). The term "Confidential Information" does not include any information: (a) that was already in the possession of Houlihan Lokey or any of its Representatives, or that was available to Houlihan Lokey or any of its Representatives on a non-confidential basis, prior to the time of disclosure to Houlihan Lokey or such Representatives; (b) obtained by Houlihan Lokey or any of its Representatives from a third party which, insofar as is known to Houlihan Lokey or such Representatives, is not subject to any prohibition against disclosure; (c) which was or is independently developed by Houlihan Lokey or any of its Representatives without violating any confidentiality obligations under this paragraph; or (d) which was or becomes generally available to the public through no fault of Houlihan Lokey. If Houlihan Lokey becomes required by legal process or requested by regulatory authority to disclose any Confidential Information, prompt notice thereof (to the extent legally permissible) shall be given to the Company (provided that no notification shall be required

George Washington Bridge Bus Station Development Venture LLC
Page 8

in respect of any disclosure to regulatory authorities having jurisdiction over Houlihan Lokey), and Houlihan Lokey may disclose only that information which its counsel advises it is compelled to disclose. The obligations set forth in this paragraph shall remain in effect for a period of one year after the Effective Date.

15.    **Limitations on Services as Advisor.** Houlihan Lokey's services are limited to those specifically provided in this Agreement, or subsequently agreed upon in writing by the parties hereto. Houlihan Lokey shall have no obligation or responsibility for any other services including, without limitation, any crisis management or business consulting services related to, among other things, the implementation of any operational, organizational, administrative, cash management, or similar activities. The parties understand that Houlihan Lokey is being engaged hereunder as an independent contractor to provide the services hereunder solely to the Company, and that Houlihan Lokey is not acting as an agent or fiduciary of the Company, its security holders or creditors or any other person or entity in connection with this engagement, and the Company agrees that it shall not make, and hereby waives, any claim based on an assertion of such an agency or fiduciary relationship. In performing its services pursuant to this Agreement, Houlihan Lokey is not assuming any responsibility for the Company's decision on whether to pursue, endorse or support any business strategy, or to effect, or not to effect, any Transaction(s), which decision shall be made by the Company in its sole discretion. Any duties of Houlihan Lokey arising by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder will be owed solely to the Company.

16.    **Bankruptcy Court Approval.** In the event that the Company is or becomes a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, the Company shall seek an order authorizing the employment of Houlihan Lokey pursuant to the terms of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Section 328(a) of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders and not subject to any other standard of review under Section 330 of the Bankruptcy Code.  In so agreeing to seek Houlihan Lokey's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Houlihan Lokey's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Transaction, that the value to the Company of Houlihan Lokey's services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Transaction Fee(s) is reasonable regardless of the number of hours to be expended by Houlihan Lokey's professionals in the performance of the services to be provided hereunder.  The Company shall submit Houlihan Lokey's employment application as soon as practicable following the Company's filing of a voluntary Chapter 11 case, or the entry of an order for relief in any involuntary case filed against the Company, and use its best efforts to cause such application to be considered on the most expedited basis.  The employment application and the proposed order authorizing employment of Houlihan Lokey shall be provided to Houlihan Lokey as much in advance of any Chapter 11 filing as is practicable, and must be acceptable to Houlihan Lokey in its sole discretion.  Following entry of the order authorizing the employment of Houlihan Lokey, the Company shall pay all fees and expenses due pursuant to this Agreement, as approved by the court having jurisdiction of the bankruptcy case involving the Company (the "Bankruptcy Court"), as promptly as possible in accordance with the terms of this Agreement and the order of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and will work with Houlihan Lokey to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court.  Houlihan Lokey shall have no obligation to provide services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Houlihan Lokey's retention under this Agreement is approved under Section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which is acceptable to Houlihan Lokey in all respects.  If the order authorizing the employment of Houlihan Lokey is not obtained, or is later reversed or set aside for any reason, Houlihan Lokey may

George Washington Bridge Bus Station Development Venture LLC
Page 9

terminate this Agreement, and the Company shall reimburse Houlihan Lokey for all fees and reasonably documented, out-of-pocket expenses reasonably incurred prior to the date of expiration or termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders. Prior to commencing a Chapter 11 case, the Company shall pay all amounts due and payable to Houlihan Lokey in cash. The terms of this Section are solely for the benefit of Houlihan Lokey, and may be waived, in whole or in part, only by Houlihan Lokey.

17.    **Additional Services.**  To the extent Houlihan Lokey is requested by the Company to perform any financial advisory or investment banking services which are not within the scope of this engagement, the Company shall pay Houlihan Lokey such fees as shall be mutually agreed upon by the parties hereto in writing, in advance, depending on the level and type of services required, and shall be in addition to the fees and expenses described hereinabove.

18.    **Required Services.**  If Houlihan Lokey is required to render services not described herein, but which relate directly or indirectly to the subject matter of this Agreement (including, but not limited to, producing documents, answering interrogatories, attending depositions, giving expert or other testimony, whether by subpoena, court process or order, or otherwise), the Company shall pay Houlihan Lokey additional fees to be mutually agreed upon for such services, plus reasonable and reasonably documented related out-of-pocket costs and expenses, including, among other things, the reasonable and reasonably documented legal fees and expenses of Houlihan Lokey's counsel in connection therewith.

19.    **Credit.**  After the announcement or closing of any Transaction, Houlihan Lokey may, at its own expense, place announcements on its corporate website and in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement, including the Company's logo or other identifying marks) describing its services in connection therewith. Furthermore, if requested by Houlihan Lokey, the Company agrees that in any press release announcing any Transaction, the Company will include in such press release a mutually acceptable reference to Houlihan Lokey's role as financial advisor to the Company with respect to such Transaction.

20.    **Choice of Law; Jury Trial Waiver; Jurisdiction.**  **THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN NEW YORK.  THIS AGREEMENT AND ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.  EACH OF HOULIHAN LOKEY AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS EQUITY HOLDERS) IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF HOULIHAN LOKEY PURSUANT TO, OR THE PERFORMANCE BY HOULIHAN LOKEY OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE BROUGHT AND MAINTAINED IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION SITTING IN THE COUNTY OF NEW YORK IN THE STATE OF NEW YORK OR IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, WHICH COURTS SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS, AND AGREES TO VENUE IN SUCH COURTS; PROVIDED THAT**

George Washington Bridge Bus Station Development Venture LLC
Page 10

**SUCH CONSENT AND AGREEMENT SHALL NOT BE DEEMED TO REQUIRE ANY BANKRUPTCY CASE INVOLVING THE COMPANY TO BE FILED IN SUCH COURTS, AND IF THE COMPANY BECOMES A DEBTOR UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, DURING ANY SUCH CASE, ANY CLAIMS MAY ALSO BE HEARD AND DETERMINED BEFORE THE BANKRUPTCY COURT. EACH PARTY FURTHER IRREVOCABLY SUBMITS AND CONSENTS IN ADVANCE EXCLUSIVELY TO SUCH JURISDICTION AND VENUE IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURTS, AND HEREBY WAIVES IN ALL RESPECTS ANY CLAIM OR OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS. THE COMPANY AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION, SUIT OR CLAIM BROUGHT IN ANY OF THE COURTS REFERRED TO ABOVE SHALL BE CONCLUSIVE AND BINDING UPON IT AND MAY BE ENFORCED IN ANY OTHER COURTS HAVING JURISDICTION OVER IT BY SUIT UPON SUCH JUDGMENT. THE COMPANY IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN ALL SUCH DISPUTES BY THE MAILING OF COPIES OF SUCH PROCESS TO THE COMPANY AT 4211 BROADWAY, NEW YORK, NEW YORK 10033.**

21.    **Indemnification and Standard of Care.**  As a material part of the consideration for the agreement of Houlihan Lokey to furnish its services under this Agreement, the Company agrees (i) to indemnify and hold harmless Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, and (ii) to reimburse each Indemnified Party for all reasonable and reasonably documented out-of-pocket expenses (including, without limitation, the reasonable fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling, compromising or otherwise becoming involved in any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person or entity (including, without limitation, any shareholder or derivative action or any claim to enforce this Agreement), arising out of or related to such engagement or matter.  However, the Company shall not be liable under the foregoing indemnification provision for any loss, claim, damage or liability which arises out of any action or failure to act by such Indemnified Party (other than an action or failure to act undertaken at the request or with the consent of the Company) and which is finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of such Indemnified Party.

If for any reason the foregoing indemnification or reimbursement is unavailable to any Indemnified Party or insufficient fully to indemnify any Indemnified Party or to hold it harmless, then the Company shall contribute to the amount paid or payable by such Indemnified Party as a result of the losses, claims, damages, liabilities or expenses referred to in subsections (i) or (ii) of such indemnification or reimbursement provisions in such proportion as is appropriate to reflect the relative benefits received by the Company, on the one hand, and Houlihan Lokey, on the other hand, in connection with the matters contemplated by this Agreement.  If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law, then the Company shall contribute to such amount paid or payable by such Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Company (and its affiliates, and their respective directors, employees, agents and other advisors), on the one hand, and such Indemnified Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations.  Notwithstanding the foregoing, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the amount of fees actually received by Houlihan Lokey from the Company pursuant to this Agreement. Relative benefits received by the Company, on the one hand, and Houlihan Lokey, on the other hand, shall be deemed to be in the same proportion as (i) the total value paid or received or

George Washington Bridge Bus Station Development Venture LLC
Page 11

contemplated to be paid or received by the Company, and its security holders, creditors, and other affiliates, as the case may be, pursuant to the transaction(s) (whether or not consummated) contemplated by the engagement hereunder, bears to (ii) the fees received by Houlihan Lokey under this Agreement. The Company shall not settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement (whether or not an Indemnified Party is an actual or potential party thereto), or participate in or otherwise facilitate any such settlement, compromise, consent or termination by or on behalf of any person or entity, unless such settlement, compromise, consent or termination contains a release of the Indemnified Parties reasonably satisfactory in form and substance to Houlihan Lokey.

The Company further agrees that neither Houlihan Lokey nor any other Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Company or any person or entity asserting claims on behalf of or in right of the Company arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, except for losses, claims, damages or liabilities incurred by the Company which arise out of any action or failure to act by such Indemnified Party (other than an action or failure to act undertaken at the request or with the consent of the Company) and which are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of such Indemnified Party.

The Company shall cause any new company or entity that may be formed by the Company, for any purpose, to agree to all of the obligations in this Section to Houlihan Lokey in accordance with the foregoing provisions. Prior to entering into any agreement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets, or (ii) significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth in this Agreement, the Company will notify Houlihan Lokey in writing thereof (if not previously so notified) and, if requested by Houlihan Lokey, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth in this Agreement, including the assumption of such obligations by another party, insurance, surety bonds, the creation of an escrow, or other credit support arrangements, in each case in an amount and upon terms and conditions satisfactory to Houlihan Lokey.

The indemnity, reimbursement, and other obligations and agreements of the Company set forth herein (i) shall apply to any services provided by Houlihan Lokey in connection with this engagement prior to the Effective Date and to any modifications of this Agreement, (ii) shall be in addition to any obligation or liability which the Company may otherwise have to any Indemnified Party, and (iii) shall survive the completion of the services described in, and any expiration or termination of the relationship established by, this Agreement. The Company agrees that Houlihan Lokey would be irreparably injured by any breach of any such obligations or agreements, that money damages alone would not be an adequate remedy for any such breach and that, in the event of any such breach, Houlihan Lokey shall be entitled, in addition to any other remedies, to injunctive relief and specific performance.

22.    **Miscellaneous.** This Agreement shall be binding upon the parties hereto and their respective successors, heirs and assigns and any successor, heir or assign of any substantial portion of such parties' respective businesses and/or assets, including any Chapter 11 or Chapter 7 trustee appointed on behalf of the Company.

Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the parties hereto, the Indemnified Parties and each of their respective successors, heirs and assigns, any rights or remedies (directly or indirectly as a third party beneficiary or otherwise)

George Washington Bridge Bus Station Development Venture LLC
Page 12

under or by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder.

This Agreement is the complete and exclusive statement of the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral. This Agreement may not be amended, and no portion hereof may be waived, except in a writing duly executed by the parties hereto.

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify and record information that identifies each person with whom they do business as a condition to doing business with that person. Accordingly, the Company will provide Houlihan Lokey upon request (i) certain information regarding the identities of all individuals who, directly or indirectly, own 25% or more of the Company's equity interests as well as the Company's executive officers, and (ii) certain identifying information necessary to verify the Company's identity, such as a government-issued identification number (e.g., a U.S. taxpayer identification number), certified articles of incorporation, a government-issued business license, partnership agreement, or trust instrument. By executing this Agreement, the Company confirms that all such information provided to Houlihan Lokey is accurate and complete.

This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

The Company has all requisite power and authority to enter into this Agreement. This Agreement has been duly and validly authorized by all necessary action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company, enforceable in accordance with its terms. This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Houlihan Lokey because this Agreement was drafted by Houlihan Lokey, and the parties waive any statute or rule of law to such effect.

The Company agrees that it will be solely responsible for ensuring that any Transaction complies with applicable law. The Company understands that Houlihan Lokey is not undertaking to provide any legal, regulatory, accounting, insurance, tax or other similar professional advice and the Company confirms that it is relying on its own counsel, accountants and similar advisors for such advice.

To the extent that the Company hereunder is comprised of more than one entity or company, the obligations of the Company under this Agreement are joint and several, and any consent, direction, approval, demand, notice or the like given by any one of such entities or companies shall be deemed given by all of them and, as such, shall be binding on the Company.

The Company understands and acknowledges that Houlihan Lokey and its affiliates (collectively, the "Houlihan Lokey Group") engage in providing investment banking, securities trading, financing, financial advisory, and consulting services and other commercial and investment banking products and services to a wide range of institutions and individuals. In the ordinary course of business, the Houlihan Lokey Group and certain of its employees, as well as investment funds in which they may have financial interests or with which they may co-invest, may acquire, hold or sell, long or short positions, or trade or

George Washington Bridge Bus Station Development Venture LLC
Page 13

otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other obligations) of, or investments in, the Company or any other party that may be involved in the matters contemplated by this Agreement or have other relationships with such parties. With respect to any such securities, financial instruments and/or investments, all rights in respect of such securities, financial instruments and investments, including any voting rights, will be exercised by the holder of the rights, in its sole discretion. In addition, the Houlihan Lokey Group may in the past have had, and may currently or in the future have, financial advisory or other investment banking or consulting relationships with parties involved in the matters contemplated by this Agreement, including parties that may have interests with respect to the Company, a Transaction or other parties involved in a Transaction, from which conflicting interests or duties may arise. Although the Houlihan Lokey Group in the course of such other activities and relationships or otherwise may have acquired, or may in the future acquire, information about the Company, a Transaction or such other parties, or that otherwise may be of interest to the Company, the Houlihan Lokey Group shall have no obligation to, and may not be contractually permitted to, disclose such information, or the fact that the Houlihan Lokey Group is in possession of such information, to the Company or to use such information on the Company's behalf.

In order to enable Houlihan Lokey to bring relevant resources to bear on its engagement hereunder from among its global affiliates, the Company agrees that Houlihan Lokey may share information obtained from the Company and other parties hereunder with other members of the Houlihan Lokey Group, and may perform the services contemplated hereby in conjunction with such other members.

The Company acknowledges that Houlihan Lokey is currently providing services to one of the Company's primary creditors in relation to an unaffiliated company.

George Washington Bridge Bus Station Development Venture LLC
Page 14

   If the foregoing correctly sets forth our agreement, please sign and return to us a copy of this Agreement along with a check (or wire transfer confirmation) for $50,000 on account of the Initial Fee.

   All of us at Houlihan Lokey thank you for choosing us to advise the Company, and look forward to working with you on this engagement.

        Very truly yours,

        **HOULIHAN LOKEY CAPITAL, INC.**

        By: _____
          D. Reid Snellenbarger
          Managing Director

Accepted and agreed to as of the Effective Date:

**GEORGE WASHINGTON BRIDGE BUS STATION DEVELOPMENT VENTURE LLC**, on its own behalf, and on behalf of its direct and indirect subsidiaries

By: _____
  Bernard A. Katz
  Manager



# HOULIHAN LOKEY

**Personal and Confidential**

September 24, 2019

George Washington Bridge Bus Station Development Venture LLC
4211 Broadway
New York, New York 10033
Attn: [Name]

Initial Fee                                                                                                           $50,000.00

PAYMENT DUE UPON RECEIPT

**Please Send Checks To:**
Houlihan Lokey Capital, Inc.
Accounts Receivable Department
10250 Constellation Blvd., 5th Floor
Los Angeles, California 90067

**Wire Transfer Instructions:**
Bank of America
Wire Transfer ABA #026009593
ACH ABA #121000358
fbo Houlihan Lokey Capital, Inc.
Account #1453120593
Swift Code (International Wires Only): BOFAUS3N

## EXHIBIT B

**SNELLENBARGER DECLARATION**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re | Chapter 11 |
| GEORGE WASHINGTON BRIDGE BUS STATION DEVELOPMENT VENTURE LLC, | Case No. 19-13196 (SCC) |
| Debtor.[1] | |

### DECLARATION OF REID SNELLENBARGER IN SUPPORT OF DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF HOULIHAN LOKEY CAPITAL, INC. AS ITS FINANCIAL ADVISOR AND INVESTMENT BANKER *NUNC PRO TUNC* TO THE PETITION DATE

I, Reid Snellenbarger, declare as follows:

I am familiar with the matters set forth herein and, if called as a witness, I could and would testify thereto.  Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Application (as defined below).

I am a Managing Director of Houlihan Lokey Capital, Inc. ("**Houlihan Lokey**") and am duly authorized to execute this declaration (this "**Declaration**") on behalf of Houlihan Lokey.

I make this Declaration in support of *The Debtor's Application for Entry of an Order Authorizing the Retention and Employment of Houlihan Lokey Capital, Inc. as Its Financial Advisor and Investment Banker Nunc Pro Tunc to the Petition Date* (the "**Application**").

### Houlihan Lokey's Professional Qualifications

Houlihan Lokey (NYSE: HLI) is a global investment bank with expertise in financial restructuring, capital markets, valuation, and strategic consulting. Houlihan Lokey serves

---

[1]    The The last four digits of the debtor's federal taxpayer identification number are 8685. The debtor's business address is 11890 Sunrise Valley Drive, Suite 554, Reston, VA 20191.

corporations, institutions, and governments worldwide from 26 offices located in the United

States, Europe, the Middle East, and the Asia-Pacific region. Independent advice and intellectual

rigor are hallmarks of Houlihan Lokey's commitment to client success across its advisory

services. Houlihan Lokey is ranked by Thomson Reuters as the No. 1 M&A advisor for all U.S.

transactions, the No. 1 global restructuring advisor, and the No. 1 global M&A fairness opinion

advisor over the past 20 years. Houlihan Lokey annually serves more than 800 clients ranging

from closely held companies to Global 500 corporations

      Houlihan Lokey's Financial Restructuring Group, which has more than 190

professionals, is one of the leading advisors and investment bankers to debtors, secured and

unsecured creditors, acquirers, and other parties-in-interest involved in financially troubled

companies based in a variety of industries and requiring complex financial restructurings, both in

and outside of bankruptcy.  Houlihan Lokey has been retained to provide investment banking

and financial advisory services in, among other cases, *In re Specialty Retail Shops Holding

Corp.,* No. 19-80064 (TLS) (Bankr. D. Neb. Jan. 25, 2019); *In re Sears Holdings Corporation,*

No. 18-23538 (RDD) (Bankr. S.D.N.Y. Dec. 18, 2018); *In re Nine West Holdings, Inc.,* No. 18-

10947 (SCC) (Bankr. S.D.N.Y. June 18, 2018); *In re Cobalt Int'l Energy, Inc.,* No. 17-36709

(MI) (Bankr. S.D. Tex. Jan. 11, 2018); *In re Walter Investment Management Corporation*, Case

No. 17-13446 (Bankr. S.D.N.Y. Nov. 30, 2017); *In re Seadrill Limited*, Case No. 17-60079

(Bankr. S.D. Tex. Sep. 12, 2017); *In re Westinghouse Electric Company LLC*, Case No. 17-

10751 (Bankr. S.D.N.Y. Mar. 29, 2017); *In re Roust Corporation*, Case No. 16-23786 (Bankr.

S.D.N.Y. Dec. 30, 2016); *In re Sports Authority Holdings, Inc.*, Case No. 16-10527 (Bankr. D.

Del. Mar. 2, 2016); *In re Relativity Fashion, LLC* (a.k.a. Relativity Media), Case No. 15-11989

(Bankr. S.D.N.Y. Jul. 30, 2015); *In re RadioShack Corporation*, Case No. 15-10197 (Bankr. D.

2

Del. Feb. 5, 2015); *In re Caesars Entertainment Operating Company, Inc.*, Case No. 15-01145

(Bankr. N.D. Ill. Jan. 15, 2015); *In re Entegra Power Group LLC*, Case No. 14-11859 (Bankr. D.

Del. Aug. 4, 2014); *In re Premier International Holdings Inc.* (a.k.a. Six Flags Theme Parks),

Case No. 09-12019 (Bankr. D. Del. June 13, 2009); *In re Gen. Growth Props.*, No. 09-11977

(ALG) (Bankr. S.D.N.Y Apr. 16, 2009); *In re Lehman Brothers Holdings Inc.*, Case No. 08-

13555 (Bankr. S.D.N.Y. Sept. 15, 2008); *In re Buffets Holdings, Inc.*, Case No. 08-10141

(Bankr. D. Del. Jan. 22, 2008); *In re Conseco Inc*, Case No. 02-49672 (Bankr. N.D. Ill. Dec. 17,

2002); *In re WorldCom, Inc.*, Case No. 02-13533 (Bankr. S.D.N.Y. July 21, 2002); and *In re

Enron Corp.*, Case No. 01-16034 (Bankr. S.D.N.Y. Dec. 2, 2001).

Houlihan Lokey has agreed to provide investment banking and advisory services to the

Debtor in the Chapter 11 Case pursuant to the terms and conditions of the engagement letter

dated as of October 4, 2019 (the "**Engagement Agreement**"), a copy of which is attached to the

Application as **Exhibit 1** to the Proposed Order.

In addition to me, the principal professionals that are expected to render services to the

Debtor under the Engagement Agreement are as follows: Gary Gordon, Jeffrey Lewis, Joshua

Schainker and Steven Balash (collectively, the "**Group**"). A summary of the qualifications of

the principal professionals is attached hereto as **Schedule 1** and is incorporated herein by this

reference.

By way of further disclosure:

a) From time to time, the Group, which is providing the services in the Chapter 11 Case, has provided services, and likely will continue to provide services to certain attorneys, other professionals, creditors (including lenders), and/or security holders of the Debtor and various other parties, some of whom may be providing services to, or may be adverse to, or may be otherwise connected to, the Debtor, in each case in matters unrelated to the Chapter 11 Case.

48036/0047-17951351v2
48036/0047-17951351v3

b)      In addition to the Group, Houlihan Lokey and the other subsidiaries of its direct parent company, Houlihan Lokey, Inc., that are engaged in providing investment banking and financial advisory services globally (collectively, the "**Houlihan Lokey Group**") provide services to a wide range of institutions and individuals and may in the past have had, and may currently or in the future have, financial advisory or other investment banking or consulting relationships with parties that may have interests adverse to the Debtor.  In the ordinary course of business, investment funds affiliated with the Houlihan Lokey Group and certain of the Houlihan Lokey Group's employees, as well as investment funds in which such employees may have financial interests, but over whose investment decisions such employees have no input or control, may acquire, hold or sell, long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other obligations) of, or investments in, the Debtor or other parties that may have an interest in the Chapter 11 Case or have other relationships with such parties.  With respect to any such securities, financial instruments and/or investments, all rights in respect of such securities, financial instruments and investments, including any voting rights, will be exercised by the holder of the rights, in its sole discretion. Moreover, the Houlihan Lokey employees who are working on the Chapter 11 Case are subject to compliance mechanisms and policies and procedures designed to prevent confidential, non-public information from being improperly shared.

c)      Through Houlihan Lokey's coverage of Real Estate and due to the investment banking market that Houlihan Lokey operates in, the Group and the Houlihan Lokey Group, routinely advise Companies, investors and other stakeholders in the Real Estate sector.  We do not believe such past and current engagements present any actual or potential conflicts of interest to the current engagement with the Company.  In addition, in the ordinary course of its investment banking coverage of Real Estate, Houlihan Lokey from time to time, discusses general industry issues and trends with other real estate owners and investors.

d)      Houlihan Lokey's Financial Restructuring Group is currently advising New York City Regional Center in an unrelated and unaffiliated New York real estate investment.  New York City Regional Center is an EB-5 lender that funds real estate and infrastructure projects across the New York City area.

e)      The Houlihan Lokey Group's Hedge Fund and Derivatives Valuation Services Group provides valuation opinions on the securities and derivative holdings of various business development companies, private equity firms and hedge funds, which may include debt securities of the Debtor.  This work is unrelated to the financial advisory and investment banking services that Houlihan Lokey intends to provide in the Chapter 11

4

Case.  Moreover, the Houlihan Lokey Group, through the establishment of an "Information Wall" has separated its employees in the Hedge Fund and Derivatives Valuation Services Group from the rest of the employees of the Houlihan Lokey Group.  This "Information Wall" includes physical and technological barriers, compliance mechanisms and policies and procedures designed to prevent confidential, non-public information and work product from being shared improperly.

f)    In the ordinary course of its business, Houlihan Lokey from time to time discusses issues concerning stressed and distressed companies with creditors and prospective creditors that are clients of the firm, or that otherwise contact Houlihan Lokey, or that are referred to the firm in light of Houlihan Lokey's reputation for covering such companies and/or relevant industry expertise. At the time of those contacts, it is not known whether any particular company will actually file for bankruptcy, or if any of these creditors and/or potential creditors will serve on any future Committee, or even be a creditor of the relevant estate in the event of a future bankruptcy. It is also Houlihan Lokey's customary practice to communicate with and, when appropriate or requested, send materials to one, or more, of the 50 largest unsecured creditors identified by a debtor and who are, therefore, potential members of a creditors' committee, if we either know, work with, are contacted by, or are otherwise referred to the relevant creditor. In some circumstances, we may contact potential committee members with whom we are not previously familiar.

g)    Houlihan Lokey personnel may have business associations with certain creditors of the Debtor or counsel or other professionals involved in the Chapter 11 Case on matters unrelated to this case.  In addition, in the ordinary course of its business, Houlihan Lokey may engage counsel or other professionals in unrelated matters who now represent, or in the future may represent, creditors or other interested parties in the Chapter 11 Case.

I understand that the Debtor has submitted, or intends to submit, separate applications to retain, among others, Cole Schotz P.C., as counsel to the Debtor, and may retain additional professionals during the term of the Engagement Agreement.  Houlihan Lokey will use reasonable efforts to work cooperatively with the Debtor to avoid duplication of services.

To determine its relationship with parties-in-interest in the Chapter 11 Case, Houlihan Lokey has researched the client databases maintained with respect to the Houlihan Lokey Group to determine whether it had any relationships with the entities (individually an "**Interested**

5

Party" and collectively, the "**Interested Parties**") that were identified to Houlihan Lokey by the

Debtor.  Such entities include those in the following categories:

     a.     Direct and Indirect Equity Holders
     b.     Directors and Officers
     c.     Bankruptcy Judges
     d.     District Court Judges
     e.     U.S. Trustee Office
     f.     Banks/Lender/UCC Lien Parties/Administrative Agents
     g.     Unsecured Creditors
     h.     Landlords
     i.     Tenants
     j.     Litigation / Arbitration Parties
     k.     Bankruptcy Professionals
     l.     Contract Counterparties
     m.     Utility Providers
     n.     Ordinary Course Professionals

The attached **Schedule 2** details the relationship check performed by Houlihan Lokey,

and identifies any relationships discovered through such investigation that members of the

Houlihan Lokey Group have with any Interested Party in the Chapter 11 Case.

To the best of my knowledge, information, and belief after reasonable inquiry, other than

as disclosed in this Declaration, neither I, the Houlihan Lokey Group, nor any of our

professionals or employees participating in or connected with Houlihan Lokey's engagement

with the Debtor: (i) is related to the Debtor or any other party-in-interest herein; (ii) has any

connection with or holds or represents any interest adverse to the Debtor, their estates, their

creditors, or any other Interested Party, or their respective attorneys in the matters on which

Houlihan Lokey is proposed to be retained; or (iii) has advised any Interested Party, except for

the Debtor, in connection with the Chapter 11 Case.  In addition, Houlihan Lokey does not

believe that any relationship that the Houlihan Lokey Group, or any of our professionals or

employees participating in or connected with Houlihan Lokey's engagement with the Debtor

48036/0047-17951351v2
48036/0047-17951351v3

may have with any Interested Party in connection with any unrelated matter will interfere with or impair Houlihan Lokey's representation of the Debtor in the Chapter 11 Case.

To the extent Houlihan Lokey discovers any facts bearing on the matters described herein during the period of Houlihan Lokey's retention, Houlihan Lokey will undertake to amend and supplement the information contained in this Declaration to disclose such facts.

Based on all of the foregoing, Houlihan Lokey is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code.

No agreement presently exists to share with any other person or firm any compensation received by Houlihan Lokey for its services in the Chapter 11 Case.  If any such agreement is entered into, Houlihan Lokey undertakes to amend and supplement this Declaration to disclose the terms of any such agreement.

No promises have been received by Houlihan Lokey, or by any employee thereof, as to compensation in connection with the Chapter 11 Case other than in accordance with the provisions of the Bankruptcy Code.

I am generally familiar with the Bankruptcy Code and the Bankruptcy Rules, and Houlihan Lokey will comply with them, subject to the Orders of the Court.

[*Remainder of Page Intentionally Left Blank*]

48036/0047-17951351v2
48036/0047-17951351v3

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge and belief.

Dated:  October __, 2019

/s/ *Reid Snellenbarger*
D. Reid Snellenbarger
Managing Director
Houlihan Lokey Capital, Inc.

48036/0047-17951351v2
48036/0047-17951351v3

**<u>SCHEDULE 1</u>**

**SUMMARY OF QUALIFICATIONS**

**D. Reid Snellenbarger, Managing Director**

Mr. Snellenbarger is a shareholder of Houlihan Lokey and a senior member of the firm's Financial Restructuring Group. For over two decades, he has specialized in assisting companies, lenders, creditors, and investors in unique and stressed situations. Mr. Snellenbarger's experience includes conducting acquisitions and divestitures of unique and special situation assets, raising various forms of capital, and negotiations relating to the restructuring of private and public securities, both in Chapter 11 and out-of-court situations.

Mr. Snellenbarger recently advised Ditech Holding Corporation on the sale of its assets in Chapter 11; Orchids Paper Products Company on the sale of its assets in Chapter 11; Walter Investment Management Corporation on its prepackaged plan of reorganization; Prospect Mortgage on its discounted bond tender process; an ad hoc group of bondholders of Residential Capital in its Chapter 11 case; TCFC Finance Co. on the financing of its lease to Vail Resorts; the OpCo debt holders of Kerzner International in an out-of-court restructuring; Ally on the sale of its Resort Portfolio; General Growth Properties bankruptcy cases; Kimball Hill Homes in its restructuring process in Chapter 11; Island One Resorts on its sale and restructuring; Roney Palace Hotel on the sale of its assets in Chapter 11; PaperWorks Industries, Inc. on its out-of-court restructuring; Gawker Media Group on its asset sale and third-party DIP financing in Chapter 11; Phoenix Brands and Tactical Holdings on the sale of their assets in Chapter 11; and the Unsecured Creditors' Committee in the Saint Vincent's Catholic Medical Centers.

Before joining Houlihan Lokey, Mr. Snellenbarger was a Vice President with PricewaterhouseCoopers' Corporate Finance Group in the Chicago restructuring practice.

Mr. Snellenbarger holds a B.S. in Finance with distinction from Purdue University. Mr. Snellenbarger has served on Houlihan Lokey's Valuation and Technical Standards Committee and is a member of the American Bankruptcy Institute and the Turnaround Management Association

**Gary Gordon, Managing Director**

Mr. Gordon is a member of Houlihan Lokey's Real Estate Strategic Advisory practice. He has been involved in the execution of $20 billion dollars of public and private real estate advisory assignments, including the privatization of REITS, asset and portfolio sales, joint ventures, restructuring and note sales, and corporate real estate monetization transactions, including sale-leasebacks.  Mr. Gordon was responsible for the sale of over 15 million square feet of buildings for J.P. Morgan and participated in the restructuring of General Growth Properties and the NY Times Building.

Before joining Houlihan Lokey, Mr. Gordon had a 25-year career at JPMorgan Chase, where he was a Managing Director in the Real Estate, Lodging & Leisure Group. While there, his notable advising assignments included the sale of a joint venture interest in Roseland Properties, the sale of NewsCorp's 23-acre mixed-use development site in Boston's financial district, and the sales of 650 Madison Avenue, 75 Wall Street, 522 Fifth Avenue, and Tiffany's headquarters. Mr. Gordon

advised on the privatization of Urban Properties, First Washington Realty Trust, and Lexford for EQR. He served as advisor to the Port Authority of New York on strategic options for the World Trade Center and has worked on transactions in Latin America, Europe, and New Zealand.

Mr. Gordon holds a B.A. in Economics from the State University of New York at Binghamton and an M.S. in Urban Planning from Rensselaer Polytechnic Institute. He is a member of the Urban Land Institute and the International Council of Shopping Centers and holds the MAI and Counselors of Real Estate (CRE) designations.

### Jeffrey Lewis, Director

Mr. Lewis is a member of Houlihan Lokey's Financial Restructuring Group. He has been involved in restructurings of private and public securities in Chapter 11 and out-of-court, distressed M&A transactions and recapitalizations since 1996. Mr. Lewis' experience includes representing debtors, creditors, and investors in large- and middle-market domestic and cross-border companies.

Mr. Lewis recently advised Walter Investment Management Corporation on its prepackaged plan of reorganization; PaperWorks Industries, Inc. on its out-of-court restructuring; Wingspan Portfolio Holdings on the sale of Wingspan Portfolio Advisors and Dimont & Associates on an out-of-court restructuring; an ad-hoc group of bondholders of Residential Capital in its Chapter 11 case, including valuation and expert testimony in litigation; and TCFC Finance Co. on the financing of its lease to Vail Resorts. His other experience includes advising a group of secured lenders to Kerzner International Ltd.; advising the creditors of Gramercy Realty on a 900-property REIT; and advising Barzel Industries and Tactical Intermediate Holdings on the sale of their assets in Chapter 11 proceedings.

Before joining Houlihan Lokey, Mr. Lewis led the New York restructuring practice of PricewaterhouseCoopers' Corporate Advisory and Restructuring LLC. Mr. Lewis received a B.A in Government and B.B.A. in Finance from the University of Texas, and an MBA in Finance and Accounting from Vanderbilt Owen Graduate School of Management.

### Joshua Schainker, Senior Vice President

Mr. Schainker is a member of Houlihan Lokey's Real Estate Strategic Advisory Group. He was previously with Houlihan Lokey's Financial Advisory Services business, where he focused on transaction and valuation opinions across various industries.

Before joining Houlihan Lokey, Mr. Schainker was a Senior Associate at Duff & Phelps, LLC, a valuation advisory firm headquartered in New York, where he provided business and intangible asset valuations in several industries in support of acquisitions, litigation, purchase price allocations, and financial advisory.

Mr. Schainker holds a dual degree from the University of Pennsylvania, where he received a B.S. in Economics, with a concentration in Finance, from the Wharton School and a B.A. in Asian and

2

Middle Eastern studies from the School of Arts and Sciences. He holds the designation of Chartered Financial Analyst and is a member of the CFA Institute and NYSSA.

**Steven Balash, Vice President**

Mr. Balash is a member of Houlihan Lokey's Financial Restructuring Group.

Mr. Balash's recent experience includes advising Heritage Home Group through its Chapter 11 bankruptcy and sale transactions; Solvaira Specialties on the structuring and negotiation of its out-of-court sale transaction; Strategic Products and Services on its out-of-court sale transaction; TCFC Finance Co. on the financing of its lease to Vail Resorts and execution of a master developer agreement and ultimate sale of its interest; Texas Pellets and Louisiana Pellets on their in-court sales transactions; the Official Committee of Unsecured Creditors to Furniture Brands International in its Chapter 11 bankruptcy; West Penn Allegheny Health System on strategic restructuring and sale alternatives; and Linden Ponds, an Erickson Living managed continuing care retirement community, through its Chapter 11 bankruptcy.

Mr. Balash holds a B.B.A. in Finance and Real Estate, with distinction, from the University of Wisconsin–Madison.

48036/0047-17951351v2
48036/0047-17951351v3

**<u>SCHEDULE 2</u>**

**<u>Retention Checklist</u>**

- Direct and Indirect Equity Holders
- Directors and Officers
- Bankruptcy Judges
- District Court Judges
- U.S. Trustee Office
- Banks/Lender/UCC Lien Parties/Administrative Agents
- Unsecured Creditors
- Landlords
- Tenants
- Litigation / Arbitration Parties
- Bankruptcy Professionals
- Contract Counterparties
- Utility Providers
- Ordinary Course Professionals

# HOULIHAN LOKEY RELATIONSHIPS

**HOULIHAN LOKEY CORPORATE FINANCE – ACTIVE ENGAGEMENTS**
STV Group, Inc.

**HOULIHAN LOKEY CORPORATE FINANCE – CLOSED ENGAGEMENTS**
Goldman, Sachs & Co.
Hill International Consulting Inc.
Robert K. Futterman & Associates LLC
Skadden, Arps, Slate, Meagher & Flom LLP
TRC Companies, Inc.

**HOULIHAN LOKEY FINANCIAL ADVISORY SERVICES – ACTIVE ENGAGEMENTS**
Bank United Financial Corporation
Citibank, N.A.
Deluxe Corporation
Dentons US LLP
Goldman, Sachs & Co.
JPMorgan Chase Bank, N.A.
Locke Lord LLP
Manatt Phelps & Phillips, LLP
Skadden, Arps, Slate, Meagher & Flom LLP
Venable LLP

**HOULIHAN LOKEY FINANCIAL ADVISORY SERVICES – CLOSED ENGAGEMENTS**
Akerman LLP
Bank United Financial Corporation
CBRE Group, Inc.
Citibank, N.A.
Goldman, Sachs & Co.
Foley & Lardner LLP
JPMorgan Chase Bank, N.A.
Locke Lord LLP
Pepper Hamilton LLP
Skadden, Arps, Slate, Meagher & Flom LLP
TJX Companies, Inc.
TRC Companies, Inc.
Venable LLP
Weil, Gotshal & Manges LLP

**HOULIHAN LOKEY FINANCIAL RESTRUCTURING – ACTIVE ENGAGEMENTS**
Citibank, N.A.
Goldman, Sachs & Co.
JPMorgan Chase Bank, N.A.
New York City Regional Center
Weil, Gotshal & Manges LLP

1

**HOULIHAN LOKEY FINANCIAL RESTRUCTURING – CLOSED ENGAGEMENTS**

Banco Bilbao Vizcaya Argentaria S.A. d/b/a BBVA
Goldman, Sachs & Co.
JPMorgan Chase Bank, N.A.
Weil, Gotshal & Manges LLP

48036/0047-17951351v2
48036/0047-17951351v3