**COLE SCHOTZ P.C.**
Michael D. Sirota
Felice R. Yudkin
Ryan T. Jareck
Mark Tsukerman
Rebecca W. Hollander
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
(212) 752-8000
(212) 752-8393 Facsimile
*Counsel to the Debtor and*
*Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>GEORGE WASHINGTON BRIDGE BUS STATION DEVELOPMENT VENTURE LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 19-13196 (SCC) |

**DEBTOR'S MOTION FOR (I) AN ORDER (A) APPROVING THE BIDDING PROCEDURES AND FORM OF ASSET PURCHASE AGREEMENT FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) ESTABLISHING THE NOTICE PROCEDURES AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (C) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (D) SCHEDULING A SALE HEARING, AND (E) GRANTING RELATED RELIEF, AND (II) AN ORDER (A) APPROVING THE SALE OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO, AND (C) GRANTING RELATED RELIEF**

---

[1] The last four digits of the debtor's federal taxpayer identification number are 8685.  The debtor's business address is 11890 Sunrise Valley Drive, Suite 554, Reston, VA  20191.

1

George Washington Bridge Bus Station Development Venture LLC, the debtor and debtor in possession in the above-captioned Chapter 11 case (the "**Debtor**"), hereby files this motion (the "**Motion**") for entry an Order, substantially in the form attached hereto as **Exhibit A** (the "**Bidding Procedures Order**"), authorizing and approving (i) the proposed bidding procedures (the "**Bidding Procedures**") in the form attached to the Bidding Procedures Order as Exhibit 1, and the form of asset purchase agreement attached hereto as **Exhibit B** (the "**Purchase Agreement**") for soliciting bids for the Acquired Assets[2] or proposals to sponsor a plan of reorganization, (ii) establishing notice procedures and approving the form of notice and manner of all procedures in connection with the proposed sale of the Debtor's business (the "**Sale**"), (iii) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases, (iv) scheduling a hearing (the "**Sale Hearing**") to approve the Sale, and (v) granting related relief.  In addition, by this Motion, the Debtor ultimately seeks entry of an Order, substantially in the form attached hereto as **Exhibit C** (the "**Sale Order**"), authorizing and approving, but not directing, the sale of the Acquired Assets free and clear of any and all liens, claims, encumbrances and interests and the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale and granting related relief.

In support of the Motion, the Debtor relies upon and incorporates by reference the *Declaration of Bernard A. Katz in Support of Chapter 11 Petitions and First-Day Relief* (the "**First-Day Declaration**").  In further support of the Motion, the Debtor respectfully represents as follows:

---

[2] All capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the Bidding Procedures or the Purchase Agreement, as applicable.

48036/0047-17650321v5

## RELIEF REQUESTED

1.      As set forth above, by this Motion, the Debtor first seeks entry of the Bidding

Procedures Order, which will authorize and approve, among other things: (a) the proposed

Bidding Procedures; (b) the notice procedures and the form of notice and manner of all

procedures in connection with the auction (the "**Auction**") and the Sale; (c) the procedures for

the assumption and assignment of certain executory contracts and unexpired leases; (d) the

scheduling of the Sale Hearing to approve the Sale; and (e) related relief.  Second, at the Sale

Hearing, the Debtor will seek entry of the Sale Order that will approve the sale of the Acquired

Assets to the Successful Bidder, the assumption and assignment of certain executory contracts

and unexpired leases and grant related relief.

2.      For the reasons that follow, the Debtor submits that the relief requested herein is

in the best interest of the Debtor, its estate, creditors, stakeholders, and all other parties-in-

interest.  The Motion, therefore, should be granted.

## JURISDICTION AND VENUE

3.      The United States Bankruptcy Court for the Southern District of New York

(the "**Court**" or "**Bankruptcy Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§

157 and 1334 and the Amended Standing Order of Reference from the United States District

Court for the Southern District of New York, dated February 1, 2012.  The Debtor confirms its

consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy

Rules**"), to the Court entering a final order in connection with this Motion to the extent that it is

later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final

orders or judgments in connection herewith consistent with Article III of the United States

Constitution.

4.      Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

48036/0047-17650321v5

5.      The legal predicates for the relief requested herein are sections 105, 363, 365, 503, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Bankruptcy Rules 2002, 6004, and 6006, and Rules 6004-1 and 6006-1 of the Local Rules (the "**Local Bankruptcy Rules**") of the Bankruptcy Court, and the Guidelines for the Conduct of Assets Sales promulgated by General Order M-383 of the Bankruptcy Court (the "**Sale Guidelines**").

## BACKGROUND

### I.      The Chapter 11 Case

6.      On October 7, 2019 (the "**Petition Date**"), the Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**").

7.      The Debtor continues to operate its business and manage its property as a debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      To date, the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") has not appointed a creditors' committee in the Chapter 11 Case, nor has any trustee or examiner been appointed therein.

9.      The Debtor's business operations, corporate and capital structure, and restructuring efforts are described in greater detail in the First-Day Declaration.

### II.     The Debtor's Marketing and Sales Efforts

10.     The Debtor intends to conduct a marketing process through its experienced investment banker, Houlihan Lokey, Inc. ("**HL**").  HL will canvass the market to obtain offers for the Acquired Assets pursuant to an open auction process approved by this Court, which will afford the Debtor the best opportunity to maximize value.  Subject to the Bidding Procedures, and in consultation with its prepetition secured lenders, including George Washington Bridge Bus Station and Infrastructure Development Fund LLC (the "**Senior Secured Lender**"), and New York City Regional Center LLC (the "**DIP Lender**," and collectively with the Senior

4

Secured Lender, the "**Senior Lenders**"), and the Debtor and its advisors will retain the right to pursue any transaction or restructuring strategy that, in the Debtor's business judgment, will maximize the value of its estate.  If the Debtor receives multiple offers based on the proposed qualification criteria set forth in the Bidding Procedures, the Debtor intends to conduct the Auction to determine the highest or best offer for the Debtor's business.

11.    Consequently, the Debtor believes that the Bidding Procedures will maximize the value of the Debtor's estate for the benefit of all its creditors, stakeholders, and other parties-in-interest.

### III.    The Bidding Procedures[3]

12.    By this Motion, the Debtor seeks approval of the Bidding Procedures.  The Bidding Procedures are designed to maximize value for the Debtor's estate, while ensuring an orderly sale process consistent with the timeline available to the Debtor under its DIP financing. The Bidding Procedures describe, among other things, the procedures for interested parties to access due diligence, the manner in which bidders become Qualified Bidders (as defined in the Bidding Procedures) and bids become Qualified Bids (as defined in the Bidding Procedures), the receipt and negotiation of bids received, the conduct of the Auction, the selection and approval of any ultimately successful bidders, and the deadlines with respect to accomplishing the foregoing.  The Debtor believes that the Bidding Procedures and milestones contained within its DIP financing afford the Debtor a sufficient and reasonable opportunity to maximize the value of a sale of the Debtor's assets for the benefit of its estate.

---

[3] The following summary is qualified in its entirety by reference to the provisions of the Bidding Procedures, a full copy of which is attached as <u>Exhibit 1</u> to the Bidding Procedures Order attached hereto as **<u>Exhibit A</u>**.  In the event of any inconsistencies between the provisions of the Bidding Procedures and the terms set forth herein, the terms of the Bidding Procedures shall govern. Unless otherwise defined in the summary set forth in the accompanying text, capitalized terms shall have the meanings ascribed to them in the Bidding Procedures.

48036/0047-17650321v5

13.     To further maximize the competitiveness of the bidding process, the Debtor also

seeks authority, but not direction, to (a) select one or more parties to serve as a stalking horse

bidder (a "**Stalking Horse Bidder**"), and (b) in connection with any Stalking Horse Bidder and

related agreement, provide a Breakup Fee and/or Expense Reimbursement, each as defined and

described in the Bidding Procedures, in an amount not to exceed, in the aggregate, three percent

(3%) of the proposed purchase price.

14.     The Bidding Procedures establish the following key dates:

- **Bid Deadline**: To participate in the bidding, each potential bidder, must deliver to the notice parties enumerated in the Bidding Procedures a written offer, so as to be received by no later than February 10, 2020 at 4:00 (EST) (the "**Bid Deadline**").

- **Auction**: If the Debtor receives two or more Qualified Bids, the Debtor will conduct the Auction of the Acquired Assets. If the Auction is held, it shall take place on February 13, 2020 at 10:00 a.m. (EST) at the offices of Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor, New York, New York 10019, or such other place and time as determined by the Debtor in consultation with the Consultation Parties.

- **Sale Hearing**: The hearing to approve the sale of the Acquired Assets to the Successful Bidder is scheduled to take place on February 20, 2020 at 11:00 a.m. (EST) before the Honorable Shelley C. Chapman, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004, Courtroom 623, or at such time thereafter as counsel may be heard.

15.     Key terms of the Bidding Procedures are highlighted below:

- **Due Diligence Materials**: Any party that submits to the Debtor (i) an executed confidentiality agreement in such form reasonably satisfactory to the Debtor, and (ii) reasonable evidence demonstrating the party's financial ability to consummate a Sale as reasonably determined by the Debtor may be granted access to diligence materials.

- **Form and Content of Qualified Bids**: A Qualified Bid is a written offer to purchase all of the Acquired Assets submitted to the Debtor and its advisors, so as to be received by the Bid Deadline that satisfies each of the following conditions:

  - Good Faith Offer; No Partial Bids: Each Bid must constitute a good faith, bona fide offer to purchase all of the Acquired Assets or newly issued equity interests of the

6

reorganized Debtors pursuant to a Plan. Partial Bids will not be considered. A Bid may not be materially less favorable than the terms of the Stalking Horse Agreement, if any.

- Purchase Price: Each Bid must clearly identify the purchase price to be paid (the "**Purchase Price**"), which Purchase Price shall be paid in cash only or such other form of consideration acceptable to the Senior Lenders, with the exception of any Credit Bid; provided, that, in any event, each Bid must provide cash consideration for the payment of any applicable Breakup Fee and Expense Reimbursement in cash in full.

- Credit Bid: Persons or entities holding a perfected security interest in the Debtor's assets may submit a credit bid (a "**Credit Bid**") on such assets, to the extent permitted by applicable law, any Bankruptcy Court orders and the documentation governing the Debtor's prepetition or post-petition secured credit facilities.

- Good Faith Deposit: Each Bid must be accompanied by a deposit in the amount of ten percent (10%) of the Purchase Price, before any reductions for assumed liabilities (the "**Good Faith Deposit**"); provided, that a potential bidder submitting a Credit Bid will not be required to accompany its Bid with a Good Faith Deposit for any portion of the Purchase Price that is a Credit Bid.

- Executed Agreement: Each Bid must include an executed agreement (a "**Modified Agreement**") and any necessary transaction documents, signed by an authorized representative of such Potential Bidder, pursuant to which the Potential Bidder proposes to effectuate the acquisition of all of the assets of the Debtor or newly issued equity interests of the reorganized Debtor pursuant to the Debtor's chapter 11 plan. Each Bid must also include a copy of the Modified Purchase Agreement marked against the Purchase Agreement to show all changes requested by the Potential Bidder (including those related to the assumption and assignment of executory contracts and unexpired leases, and other material terms such that the Debtor may determine how such Bid compares to the terms of the Purchase Agreement and competing Bids). Each Modified Purchase Agreement must provide a commitment to close within two (2) business days after all closing conditions are met.

48036/0047-17650321v5

- ▪ <u>Designation of Assigned Contracts and Leases</u>: A Bid must identify any and all executory contracts and unexpired leases of the Debtor that the Potential Bidder wishes to be assumed pursuant to a Sale (the "**Assigned Contracts**"). A Bid must specify whether the Debtor or the Potential Bidder will be responsible for any cure costs associated with such assumption, and include a good faith estimate of such cure costs.  Any Potential Bidder that identifies the Agreement of Lease dated July 21, 2011 by and between the Port Authority of New York and New Jersey and the Debtor (as amended, modified and supplemented, the "**Lease**") as an unexpired lease of the Debtor that the Potential Bidder wishes to assume must certify that neither the Potential Bidder nor any management company that the Potential Bidder intends to manage the Leased Premises (as defined in the Lease) is a Prohibited Person (as defined in the Lease).

- ▪ <u>Designation of Assumed Liabilities</u>: A Bid must identify all liabilities which the Potential Bidder proposes to assume as part of the Sale.

- ▪ <u>Corporate Authority</u>: A Bid must include written evidence reasonably acceptable to the Debtor demonstrating appropriate corporate authorization to consummate the Sale; provided that, if the Potential Bidder is an entity specially formed for the purpose of effectuating the Sale, then the Potential Bidder must furnish written evidence reasonably acceptable to the Debtor of the approval of the Sale by any equity, interest holder(s) or sponsor(s) of such Potential Bidder.

- ▪ <u>Disclosure of Identity of Potential Bidder</u>: A Bid must fully disclose the identity of each entity that will be bidding for the Acquired Assets or otherwise participating in connection with such Bid, and the complete terms of any such participation, including any connections, agreements, arrangements or understandings with the Debtor, or any other known, potential, prospective bidder, or Potential Bidder, or any officer, director, manager, member or equity holder of the Debtor.

- ▪ <u>Disclosure of Connections</u>:  A Bid must fully disclose any connections or agreements with the Debtor, any other known Potential Bidder and/or any current or former officer, manager, director, or shareholder of the Debtor or its affiliates.

48036/0047-17650321v5

- ■ <u>Proof of Financial Ability to Perform</u>: A Bid must include written evidence that the Debtor may reasonably conclude, in consultation with its advisors and the Consultation Parties, demonstrates that the Potential Bidder has the necessary financial ability to timely consummate a Sale and must further contain information that can be publicly filed and/or disseminated providing adequate assurance of future performance of all executory contracts and unexpired leases to be assumed and assigned in such Sale.

- ■ <u>Third Party Approvals</u>: A Bid must set forth each third-party approval required, if any, for the Potential Bidder to consummate the Sale, the actions the Potential Bidder will undertake to obtain such third-party approval(s), and the time within which the Potential Bidder expects to receive such third-party approval(s). A Potential Bidder further agrees that its legal counsel will coordinate in good faith with Debtors' legal counsel and counsel to the Senior Secured Lenders to discuss and explain such Potential Bidder's analysis, strategy, and timeline for securing any such approvals as soon as reasonably practicable.

- ■ <u>Contingencies:</u> Except as provided in the Purchase Agreement, a Bid must not be subject to material conditions or contingencies to closing, including without limitation obtaining financing, internal approvals or further due diligence.

- ■ <u>Bid Irrevocable</u>: A Bid must provide that it is irrevocable until two (2) business days after the closing of the Sale. Each Potential Bidder further agrees that its Bid, if not chosen as the Successful Bidder, shall serve, without modification, as a Backup Bidder as may be designated by the Debtor at the Sale Hearing, in the event the Successful Bidder fails to close as provided in the Successful Bidder Purchase Agreement and the Sale Order.[4]

- ■ <u>As-Is, Where-Is</u>: A Bid must include the following disclaimer: EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT OR ANY ANCILLARY DOCUMENT DELIVERED BY THE DEBTOR

---

[4] Pursuant to the Bidding Procedures, the Backup Bidder shall be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, the Backup Bidder's final and best Overbid) open and irrevocable until the earlier of (i) 5:00 p.m. (prevailing Eastern Time) on the date that is at least twenty-one (21) days after the date of entry of the Sale Order (the "**Outside Backup Date**"), or (ii) the closing of the transaction with the Successful Bidder.

48036/0047-17650321v5

PURSUANT TO THIS AGREEMENT (I) THE DEBTOR MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AT LAW OR IN EQUITY, RELATING TO THE BUSINESS, THE ACQUIRED ASSETS OR THE ASSUMED LIABILITIES, INCLUDING ANY REPRESENTATION OR WARRANTY AS TO VALUE, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR FOR ORDINARY PURPOSES, OR ANY OTHER MATTER, (II) THE DEBTOR MAKES NO, AND HEREBY DISCLAIMS ANY, OTHER REPRESENTATION OR WARRANTY REGARDING THE BUSINESS, THE ACQUIRED ASSETS OR THE ASSUMED LIABILITIES, AND (III) THE ACQUIRED ASSETS AND THE ASSUMED LIABILITIES ARE CONVEYED ON AN "AS IS, WHERE IS" BASIS AS OF THE CLOSING, AND THE PURCHASER SHALL RELY UPON ITS OWN EXAMINATION THEREOF. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT OR ANY ANCILLARY DOCUMENT DELIVERED BY THE DEBTOR PURSUANT TO THIS AGREEMENT, THE DEBTOR MAKES NO REPRESENTATION OR WARRANTY REGARDING ANY BUSINESS OTHER THAN THE BUSINESS, ANY ASSETS OTHER THAN THE ACQUIRED ASSETS OR ANY LIABILITIES OTHER THAN THE ASSUMED LIABILITIES, AND NONE SHALL BE IMPLIED AT LAW OR IN EQUITY.

- <u>Time Frame for Closing</u>: A Bid by a Potential Bidder must be reasonably likely to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtor, in consultation with the Consultation Parties, but in no event later than the maturity date of the DIP loan under the DIP loan documents.

- <u>Consent to Jurisdiction</u>: Each Potential Bidder must (i) submit to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtor, the Bidding Procedures, the Auction, any Modified Purchase Agreement, or the construction and enforcement of documents relating to any Sale, (ii) waive any right to a jury trial in connection with any disputes relating to the Debtor, the Bidding Procedures, the Auction, any Modified Purchase Agreement, or the construction and enforcement of documents relating to any

Sale and (iii) commit to the entry of a final order or judgment in any way related to the Debtor, the Bidding Procedures, the Auction, any Modified Purchase Agreement, or the construction and enforcement of documents relating to any Sale if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

- ▪ Bid Protections: Except with respect to a Stalking Horse Bid, a Bid must not entitle the Potential Bidder to any break-up fee, termination fee, transaction fee, expense reimbursement, or any similar type of payment or reimbursement and, by submitting a Bid, the Potential Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its Bid or participation in any Auction. Each Potential Bidder presenting a Bid will bear its own costs and expenses (including legal fees) in connection with any proposed Sale.

- • **Auction and Auction Procedures**: At the Auction, all Qualified Bidders may submit Overbids (as defined in the Bidding Procedures); provided, however, such Overbid shall be made in increments of not less than $1,000,000 above the prior bid. The Auction shall continue until there is one Qualified Bid that the Debtor determines in its reasonable business judgment is the highest or otherwise best Qualified Bid at the Auction (the "**Successful Bid**," and the Qualified Bidder submitting such Successful Bid, the "**Successful Bidder**"), which shall be subject to approval by the Bankruptcy Court. In selecting the Successful Bid, the Debtor may consider any factors relevant to the value of the Qualified Bid, including the amount and nature of the consideration, including any assumed liabilities, the nature, number and type of changes to the Purchase Agreement, if any, the extent to which such modifications are likely to delay the closing of the Sale, the total consideration to be received by the Debtor, the likelihood of each Qualified Bidder's ability to close a transaction and the timing thereof, and the net benefit to the Debtor's estate. Promptly following the Debtor's selection of the Successful Bid and the conclusion of the Auction, the Debtor shall announce the Successful Bid and Successful Bidder and shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder.

- • **Reservation of Rights**: Except as otherwise provided in the Bidding Procedures or the Bidding Procedures Order, and subject to the rights of the Senior Lenders and Consultation Parties, the Debtor reserves the right as it may reasonably determine to be in the best interest of its estate and in the exercise of its fiduciary duties to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise

48036/0047-17650321v5

best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Debtor and its estate; (e) impose additional terms and conditions with respect to all potential bidders; (f) extend the deadlines set forth herein; and (g) continue or cancel the Auction and/or Sale Hearing in open court without further notice. Notwithstanding anything to the contrary contained in the Bidding Procedures or the Bidding Procedures Order, nothing in the Bidding Procedures will prevent the Debtor from considering any and all transactions, including, but not limited to, proposals to sponsor a plan of reorganization. Notwithstanding anything to the contrary contained in the Bidding Procedures or the Bidding Procedures Order, nothing in the Bidding Procedures will prevent the Debtor from exercising its fiduciary duties under applicable law.

16.     The Bidding Procedures expressly recognize the Debtor's fiduciary obligations to maximize value. Accordingly, the Bidding Procedures preserve the Debtor's right to announce additional procedural rules for conducting the Auction as necessary or appropriate to maximize value for its estate and does not impair the Debtor's ability to consider any and all Qualified Bids.

**IV.     Form and Manner of Sale Notice**

17.     Within two (2) business days after the entry of the Bidding Procedures Order, or as soon thereafter as practicable (the "**Mailing Date**"), the Debtor will cause the notice, substantially in the form attached hereto as **Exhibit D** (the "**Sale Notice**"), to be served on (a) any party that has filed a notice of appearance in this Chapter 11 case; (b) any entity on the Master Service List; (c) any parties known or reasonably believed to have expressed interest in the Acquired Assets or any portion thereof; (d) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in the Acquired Assets; (e) all parties to executory contracts and unexpired leases to be assumed and assigned, or rejected as part of the Sale; (f) all applicable state and local taxing authorities; (g) the Port Authority of New York and New Jersey, and (f) any other governmental agency that has a reasonably known interest with respect to the Sale and transactions proposed thereunder (the "**Notice Parties**").

12

18.     Additionally, on the Mailing Date or as soon as reasonably practicable thereafter, the Debtor proposes to publish the Sale Notice (as may be modified for publication purposes, the "**Publication Notice**"), on one occasion, in the national edition of the *New York Times*.  The Debtor believes that the Publication Notice is sufficient and proper notice of the Sale to any other interested parties whose identities are unknown to the Debtor.

19.     The Debtor submits that the Sale Notice and Publication Notice are reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (i) the date, time, and place of the Auction; (ii) the Bidding Procedures and certain dates and deadlines related thereto; (iii) the objection deadline for the Motion and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the Acquired Assets for the Sale; (v) instructions for obtaining a copy of the Purchase Agreement; (vi) representations describing the Sale as being free and clear of any and all liens, claims, encumbrances, and other interests, with all such liens, claims, encumbrances, and other interests attaching to the sale proceeds with the same validity and priority; and (vii) notice of the proposed assumption and assignment of the Assigned Contracts to the Successful Bidder arising from the Auction, if any, and the procedures and deadlines for objecting thereto, and no other or further notice of the Sale shall be required.

**V.     Assumption Procedures**

20.     The Debtor also seeks approval of the procedures for assuming and assigning executory contracts and unexpired leases (the "**Assumption Procedures**") to facilitate the fair and orderly assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale.  The key provisions of the Assumption Procedures are:

- **Contract Assumption Notice**: No less than twenty-one (21) days prior to the Sale Objection Deadline (the "**Assumption and Assignment Service Deadline**"), the Debtor shall serve a notice of contract assumption in substantially the form

13

attached hereto as **Exhibit E** to the Bidding Procedures Order (the "**Contract Assumption Notice**") via overnight delivery on all counterparties to all potential Assigned Contracts and provide a copy of the same to the Consultation Parties. The Contract Assumption Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the executory contract or unexpired lease, as applicable, (ii) the name of the counterparty to the executory contract or unexpired lease, as applicable, (iii) the Debtor's good faith estimates of the Cure Payments required in connection with the executory contract or unexpired lease, as applicable, and (iv) the Sale Objection Deadline; provided, however, that service of a Contract Assumption Notice does not constitute an admission that any contract is an executory contract or unexpired lease, as applicable, or that the stated Cure Payment related to any executory contract or unexpired lease constitutes a claim against the Debtor. Further, the inclusion of an executory contract or unexpired lease, as applicable, on the Contract Assumption Notice is not a guarantee that such executory contract or unexpired lease, as applicable, will ultimately be assumed and assigned.

- **Cure Payments and Adequate Assurance of Future Performance**: The payment of the applicable Cure Payments by the Debtor or Successful Bidder, as applicable, the provision of adequate assurance by the Debtor or the Successful Bidder, as applicable, that it will promptly cure any non-monetary defaults existing prior to the Closing under the Assigned Contracts, and the provision of adequate assurance of future performance by the Successful Bidder under the Assigned Contracts shall (i) effect a cure of all defaults existing thereunder, and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

- **Additions**: The Successful Bidder may designate up to three (3) business days before the Sale Hearing (the "**Designation Deadline**"), additional executory contracts and/or unexpired leases as agreements to be assumed by the Debtor and assigned to the Successful Bidder (the "**Additional Assigned Contracts**"). Within one (1) business days of notice of the Additional Assigned Contracts by the Successful Bidder, the Debtor shall serve a Contract Assumption Notice on each of the counterparties to such Additional Assigned Contracts and their counsel of record, if any, indicating (i) that the Debtor intends to assume and assign the counterparty's executory contract or unexpired lease, as applicable, to the Successful Bidder, and (ii) the corresponding Cure Payment.

- **Removal**: The Successful Bidder may remove any executory contract or unexpired lease, as applicable, to be assumed by the Debtor and assigned to the Successful Bidder (the "**Eliminated Agreements**") until the Designation Deadline. Following the Successful Bidder's removal of an Eliminated Agreement, the Debtor shall as soon as reasonably practicable thereafter serve a notice (a "**Removal Notice**") on each of the impacted counterparties and their counsel of record, if any, indicating that the Debtor no longer intends to assign the

14

counterparty's contract or unexpired lease, as applicable, to the Successful Bidder in connection with the Sale.

- **Supplemental Contract Assumption Notice**: Although the Debtor intends to make a good faith effort to identify all Assigned Contracts that may be assumed and assigned in connection with a Sale, the Debtor may discover certain executory contracts or unexpired leases inadvertently omitted from the list of Assigned Contracts or a Successful Bidder may identify other executory contracts or unexpired leases that it desires to assume and assign in connection with the Sale. Accordingly, the Debtor reserves the right, but only in accordance with the Purchase Agreement, or as otherwise agreed by the Debtor and the Successful Bidder, at any time after the Assumption and Assignment Service Deadline and before the closing of a Sale, to (i) supplement the list of Assigned Contracts with previously omitted executory contracts and/or unexpired leases, (ii) remove Assigned Contracts from the list of executory contracts and unexpired leases ultimately selected as Assigned Contracts that a Successful Bidder proposes to be assumed and assigned to it in connection with a Sale, and/or (iii) modify the previously stated Cure Payment associated with any Assigned Contracts. In the event the Debtor exercises any of these reserved rights, the Debtor will promptly serve a supplemental notice of executory contract and/or unexpired lease assumption (a "**Supplemental Assumption Notice**") on each of the counterparties to such Assigned Contracts and their counsel of record, if any, and the Consultation Parties; provided, however, the Debtor may not add an executory contract or unexpired lease to the list of Assigned Contracts that has been previously rejected by the Debtor by order of the Court. Each Supplemental Assumption Notice will include the same information with respect to listed Assigned Contracts as was included in the Contract Assumption Notice.

- **Objections**: Objections, if any, to the proposed assumption and assignment or the Cure Payment proposed with respect thereto, must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Bankruptcy Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed amount of the Cure Payment, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by counsel to the Debtor on or before 14 days after service of the Contract Assumption Notice (the "**Cure Objection Deadline**"), or such deadline set forth in the Supplemental Assumption Notice. The deadline to object to assumption and assignment solely with respect to the adequate assurance of future performance from the Successful Bidder, however, is the date that is two days after the conclusion of the Auction, but any such objection must be received before the start of the Sale Hearing.

21.     Any party failing to timely file an objection to the cure amount, the proposed

assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on

48036/0047-17650321v5

the Contract Assumption Notice or Supplemental Assumption Notice, or the Sale is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Assigned Contract or Additional Assigned Contract (including the adequate assurance of future performance), (c) the relief requested in the Motion, and (d) the Sale.  Such party shall forever be barred and estopped from objecting to the Cure Payments, the assumption and assignment of the Assigned Contract, or Additional Assigned Contract, adequate assurance of future performance, the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder, for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtor and the Successful Bidder, as applicable, with respect to such party's Assigned Contract or Additional Assigned Contract.

## BASIS FOR RELIEF REQUESTED

22.     The Debtor submits that the Sale is authorized under section 363(b) of the Bankruptcy Code governing sales outside of the ordinary course of business.  Section 363(b) of the Bankruptcy Code provides, in relevant part: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b).  This Court's power under section 363 is supplemented by section 105(a), which provides in relevant part: "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105.  As set forth below, the Debtor submits it has satisfied the requirements of sections 105, 363, and 365 of the Bankruptcy Code.

48036/0047-17650321v5

I.      **The Bidding Procedures Are Fair and Designed to Maximize Value for the Debtor's Estate**

23.      The Debtor submits that the Bidding Procedures are appropriate under sections 105 and 363 of the Bankruptcy Code to ensure that bidding is fair and reasonable and will yield the maximum value for the Debtor's estate, creditors, stakeholders, and other parties-in-interest. The Bidding Procedures proposed herein are designed to maximize the value received for the Acquired Assets by facilitating a competitive bidding process in which all potential bidders are encouraged to participate and submit competing bids. The Bidding Procedures provide potential bidders with sufficient notice and an opportunity to acquire information necessary to submit a timely and informed bid. Thus, the Debtor and all parties-in-interest can be assured that the consideration for the Debtor's business will be fair and reasonable. At the same time, the Bidding Procedures provide the Debtor with the opportunity to consider all competing offers and to select, in its discretion, the highest and best offer.

24.      Accordingly, the Debtor believes the Court should approve the Bidding Procedures.

II.     **Approval of the Sale is Warranted Under Section 363(b) of the Bankruptcy Code Because a Sound Business Justification Exists.**

25.      A debtor should be authorized to sell assets outside of the ordinary course of business pursuant to section 363 of the Bankruptcy Code and prior to obtaining confirmation of a plan of reorganization if it demonstrates a sound business purpose for doing so. *See, e.g., Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d

17

1063, 1070-71 (2d Cir. 1983); *In Bos. Generating, LLC*, 440 B.R. 302, 322 (Bankr. S.D.N.Y.

2010); *In re Glob. Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere*

*Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989).

26.     The Debtor has articulated a clear business justification because, in its reasonable

business judgment, a sale of the Acquired Assets, conducted in accordance with the Bidding

Procedures, will maximize value and is in the best interests of the Debtor, its creditors, estates,

stakeholders, and other parties-in-interest.

27.     Once a court has determined there is a sound business justification for a sale

outside of a plan of reorganization, the court must also determine that (i) the debtor has provided

the interested parties with adequate and reasonable notice, (ii) the sale price is fair and

reasonable, and (iii) the buyer is proceeding in good faith.  *See In re Gen. Motors Corp.*, 407

B.R. 463, 493-94 (Bankr. S.D.N.Y. 2009); *Polvay v. B.O. Acquisitions, Inc. (In re Betty Owens*

*Sch., Inc.)*, No. 96 Civ. 3576 (PKL), 1997 WL 188127, at *4 (S.D.N.Y. Apr. 17, 1997).

28.     Here, the proposed Notice Procedures provide interested parties with adequate

and reasonable notice.  Moreover, the Debtor will demonstrate that through its thorough

marketing process conducted by HL, the sale price achieved will be market, fair and reasonable.

In addition, the Debtor is represented by experienced advisors and attorneys and expect that any

Successful Bidder will negotiate at arm's-length and proceed in good faith.

29.     Accordingly, it is a valid exercise of the Debtor's business judgment to seek the

relief requested by this Motion.

## III.    The Sale Satisfies the Requirements of Section 363(f) for a Sale Free and Clear of All Liens, Claims, Encumbrances and Interests

30.     Section 363(f) permits a debtor to sell property free and clear of another party's

interest in the property if: (a) applicable non-bankruptcy law permits such a free and clear sale;

(b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property

exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the

holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary

satisfaction of its interest. *See* 11 U.S.C. § 363(f). Because section 363(f) is stated in the

disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the

proposed sale. *See In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) is

written in the disjunctive, authorizing a trustee or debtor-in-possession to sell property of the

estate free and clear of all liens "if any of the five conditions of § 363(f) are met"); *Scherer v.*

*Fed. Nat'l Mortg. Ass'n (In re Terrace Chalet Apts., Ltd.)*, 159 B.R. 821, 825 (N.D. Ill. 1993)

(sale extinguishes liens under section 363(f) as long as one of the five specified exceptions

applies).

31.      Here, the Debtor submits that sections 363(f)(2) and (5) are satisfied. First, all

parties known to have asserted a lien or other encumbrance on the Acquired Assets will receive

notice of the Sale. To the extent they have not objected by the Sale Objection Deadline, they

will be deemed to consent to the Sale free and clear of all liens, claims, encumbrances and

interests (other than Assumed Liabilities). The Debtor proposes to sell the Acquired Assets in a

commercially reasonable manner and expect that the value of the proceeds from such sale will

adequately reflect the value of the property sold. Second, the Debtor further proposes that upon

the closing, any party with a lien or other encumbrance shall have a corresponding security

interest in the proceeds of the Sale, as such liens and encumbrances will attach to the proceeds of

the Sale with the same validity, priority, and force and effect as such lien or encumbrance had

immediately prior to the closing of the Sale. In addition, all such persons could be compelled to

accept money satisfaction for their interests. As such, the requirements of section 363(f) of the

48036/0047-17650321v5

Bankruptcy Code would be satisfied for the sale of the Acquired Assets free and clear of all
encumbrances (other than the Assumed Liabilities).

32.    The Debtor also submits that it is appropriate to sell the Acquired Assets free and
clear of successor liability relating to the Acquired Assets.  Such limitations on successor
liability ensure that the Successful Bidder is protected from any claims or lawsuits premised on
the theory that the Successful Bidder is a successor in interest to the Debtor's estate.  If such
relief is not granted, the purpose of an Order purporting to authorize the transfer of assets free
and clear of encumbrances (other than the Assumed Liabilities) would be thwarted by the
potential for holders of claims to thereafter use the transfer as a basis to assert claims against a
buyer arising from the Debtor's conduct.  Moreover, without such assurances, the Debtor would
run the risk that potential bidders may not enter the Auction or, if they did, would do so with a
reduced bid amount to account for that potential exposure and liability.

33.    Courts have consistently held that a buyer of a debtor's assets pursuant to a
section 363 sale takes free and clear from successor liability relating to the debtor's business.
*See, e.g., In Matter of Motors Liquidation Co.*, No. 15-2844-BK(L), 2016 WL 3766237 (2d Cir.
July 13, 2016), *12, *13 ("We agree that successor liability claims can be 'interests' when they
flow from a debtor's ownership of transferred assets" and holding that "a bankruptcy court may
approve a § 363 sale 'free and clear' of successor liability claims if those claims flow from the
debtor's ownership of the sold assets. Such a claim must arise from a (1) right to payment (2) that
arose before the filing of the petition or resulted from pre-petition conduct fairly giving rise to
the claim"); *In re Chrysler LLC*, 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) ("[I]n personam
claims, including any potential state successor or transferee liability claims against New
Chrysler, as well as in rem interests, are encompassed by section 363(f) and are therefore

extinguished by the Sale."); *Contrarian Funds, LLC v. Westpoint Stevens, Inc. (In re Westpoint Stevens, Inc.)*, 333 B.R. 30, 50 (S.D.N.Y. 2005), *rev'd in part on other grounds*, 600 F.3d 231 (2d Cir. 2010) ("Where . . . a sale is to be free and clear of existing liens and interests other than those of the estate, one or more of the criteria specified in section 363(f) of the statute must also be met.").

34.     For these reasons, the Successful Bidder should not be liable under any theory of successor liability relating to the Acquired Assets, but instead, should hold the Acquired Assets free and clear of claims (other than the Assumed Liabilities) including successor liability claims.

## IV.    A Successful Bidder Should be Entitled to the Protections of Section 363(m) of the Bankruptcy Code and the Sale Does Not Violate Section 363(n).

35.     Section 363(m) of the Bankruptcy Code provides in relevant part that the reversal or modification on appeal of an authorization under section 363(b) of a sale or lease of property does not affect the validity of a sale or lease under such authorization to a buyer who bought or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.  11 U.S.C. § 363(m).  "Although the Bankruptcy Code does not define the meaning of 'good-faith buyer,' . . . most courts have adopted a traditional equitable definition: 'one who purchases the assets for value, in good faith and without notice of adverse claims.'"  *Licensing by Paolo v. Sinatra (In Re Gucci)*, 126 F.3d 380, 392 (2d Cir. 1997)).  The Second Circuit held that "[t]he 'good faith' component of the test under § 363(m) speaks 'to the equity of [the bidder's] conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'"  *In Kabro Assocs.*

*Of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir.

1997) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978).

36.     As will be demonstrated at the Sale Hearing, the Debtor will have negotiated the

sale at arm's-length and without collusion.  Accordingly, the Debtor requests that the Sale Order

include a provision that the Successful Bidder for the Acquired Assets is a "good faith" buyer

within the meaning of section 363(m) of the Bankruptcy Code.  The Debtor believes that

providing the Successful Bidder with such protection will ensure that the maximum price will be

achieved for the Acquired Assets.

37.     Furthermore, as will be demonstrated at the Sale Hearing, neither the Debtor nor

the Successful Bidder will have engaged in any conduct that would cause or permit the Purchase

Agreement to be avoided under section 363(n) of the Bankruptcy Code.  The Debtor will have

negotiated the Purchase Agreement with the Successful Bidder in good faith and at arms' length.

Moreover, the Bidding Procedures are designed to prevent the Debtor or the Successful Bidder

from engaging in any conduct that would cause or permit the Purchase Agreement to be avoided

under section 363(n) of the Bankruptcy Code.

## V.     The Assumption and Assignment of Executory Contracts and Unexpired Leases Should Be Authorized

38.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in

possession "subject to the court's approval, may assume or reject any executory contract or

[unexpired] lease of the debtor."  11 U.S.C. § 365(a).  A debtor's decision to assume or reject an

executory contract or unexpired lease is governed by the business judgment standard.  *See Orion*

*Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d

Cir. 1993) (section 365 of the Bankruptcy Code "permits the trustee or debtor in possession,

subject to the approval of the bankruptcy court, to go through the inventory of executory

22

contracts of the debtor and decide whether ones it would be beneficial to adhere to and which

ones it would be beneficial to reject"). Once the debtor states a valid business justification,

"[t]he business judgment rule is a presumption that in making a business decision the directors of

a corporation acted on an informed basis, in good faith and in the honest belief that the action

taken was in the best interest of the company." *Official Comm. Of Subordinated Bondholders v.*

*Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992).

39.     The business judgment rule is crucial in chapter 11 cases and shields a debtor's

management from judicial second-guessing. *See Comm. of Asbestos Related Litigants and/or*

*Creditors v. Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("The Code

favors the continued operation of a business by a debtor and a presumption of reasonableness

attached to a debtor's management decisions."). Generally, courts defer to a debtor-in-

possession's business judgment to assume or reject an executory contract or lease. *See*, *e.g.*,

*NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *In re Minges*, 602 F.2d 38, 42 (2d Cir.

1979); *In re Riodizio*, 204 B.R. 417, 424-25 (Bankr. S.D.N.Y. 1997); *In re G Survivor Corp.*,

171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

40.     Further, pursuant to section 365(b)(1) of the Bankruptcy Code, for a debtor to

assume an executory contract, it must "cure, or provide adequate assurance that the debtor will

promptly cure," any default, including compensation for "actual pecuniary loss" relating to such

default. 11 U.S.C. § 365(b)(1). Once an executory contract is assumed, the trustee or debtor in

possession may elect to assign such contract. Section 365(f) of the Bankruptcy Code provides

that the "trustee may assign an executory contract . . . only if the trustee assumes such contract . .

. and adequate assurance of future performance is provided." 11 U.S.C. § 365(f)(2). The

meaning of "adequate assurance of future performance" depends on the facts and circumstances

of each case.  Adequate assurance may be provided, among other means, by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *See, e.g., In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding that adequate assurance is present when an assignee has financial resources and has expressed a willingness to devote sufficient funding to the business to give it a strong likelihood of success).

41.     The Debtor requests approval under section 365 of the Bankruptcy Code of the Debtor's assumption and assignment of certain executory contracts and unexpired leases to the Successful Bidder.  The Debtor further requests that the Sale Order provide that the Assigned Contracts will be transferred to and remain in full force and effect for the benefit of the Successful Bidder notwithstanding any provisions in such contracts or leases, including those described in sections 365(b)(2), (f)(1) and (f)(3) of the Bankruptcy Code that prohibit such assignment.

42.     To the extent necessary, the Debtor will present facts at the Sale Hearing to demonstrate the financial wherewithal, willingness, and ability of the Successful Bidder to perform under the Assumed Contracts.  The Sale Hearing will afford the Court and other interested parties the opportunity to evaluate the ability of the Successful Bidder to provide adequate performance under the Assumed Contracts, as required under section 365(b)(1)(C) of the Bankruptcy Code.

43.     Further, the Debtor will give notice to all parties to the potentially Assigned Contracts in substantially the form attached hereto as **Exhibit E**.  The Contract Assumption Notice will include the amounts the Debtor believes are necessary to cure any defaults in accordance with section 365(b) of the Bankruptcy Code.

48036/0047-17650321v5

44.     Accordingly, the Debtor submits that implementation of the proposed contract

assumption procedures is appropriate and should be approved by this Court.

**VI.     The Expense Reimbursement and Breakup Fee Have a Sound Business
          Purpose and Should Be Approved**

45.     The Debtor also seeks authority, but not direction, pursuant to the Bidding

Procedures to pay a Breakup Fee and/or Expense Reimbursement (collectively, the "**Bid**

**Protections**") to a Stalking Horse Bidder in an aggregate amount not to exceed three percent

(3%) of any proposed purchase price.  The Debtor seeks to utilize such authority only in its

discretion if the Debtor determines in its business judgment (in consultation with the

Consultation Parties and with the consent of the Senior Lenders (with such consent not to be

unreasonably withheld)), that any such Bid Protection will facilitate a competitive bidding and

Auction process.

46.     Payment of expense reimbursements, like those proposed here, in a bidding

process for sales is appropriate under section 363(b) of the Bankruptcy Code so long as such

payment is a valid exercise of the Debtor's business judgment.  *Official Comm. of Subordinated*

*Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y.

1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (Courts in this district have recognized that

break-up fees and expense reimbursements may be used to protect bidders in connection with a

sale of assets pursuant to section 363 of the Bankruptcy Code and that such fees can be

"important tools to encourage bidding and to maximize the value of the debtor's assets.").

Under section 363(b) of the Bankruptcy Code, the Debtor may use, sell, or lease estate property

outside of the ordinary court of business so long as they articulate a sound business reason for

doing so.  *See*, *e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989);

25

*Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R.

391, 398 (Bankr. S.D.N.Y. 1983).

47.    The Debtor first seeks authority, but not direction, to pay a Breakup Fee, in the

event that the Debtor elects to enter into a stalking horse arrangement with a third-party bidder.

"Break-up fees are important tools to encourage bidding and to maximize the value of the

debtor's assets . . . .  [i]n fact, because the . . . corporation has a duty to encourage bidding,

break-up fees can be necessary to discharge [such] duties to maximize value." *Integrated*

*Resources*, 147 B.R. at 659–60.  Specifically, bid protections like the Breakup Fee "may be

legitimately necessary to convince a 'white knight' bidder to enter the bidding by providing

some form of compensation for the risks it is undertaking." *In re 995 Fifth Ave. Assocs., L.P.*, 96

B.R. 24, 28 (Bankr. S.D.N.Y. 1989); *see also Integrated Resources*, 147 B.R. at 660–61 (bid

protections can prompt bidders to commence negotiations and "ensure that a bidder does not

retract its bid").

48.    Courts in this jurisdiction consider three questions in connection with analyzing

breakup fees: "(1) is the relationship of the parties who negotiated the break-up fee tainted by

self-dealing or manipulation; (2) does the fee hamper, rather than encourage, bidding; (3) is the

amount of the fee unreasonable relative to the proposed purchase price?" *Integrated Res.*, 147

B.R. at 657.  The answer to each of these questions in this matter is unequivocally, no.  First, the

Debtor proposes to pay the Breakup Fee only in the event it determines it would be beneficial to

enter into a stalking horse agreement.  Second, the Breakup Fee would encourage, rather than

hinder, bidding because it is a typical concession a debtor provides to lock in a floor, stalking

horse bid, and sends a strong signal to the market that the debtor is serious about running a

competitive auction process to maximize value.  Third, the aggregate amount of the Breakup

48036/0047-17650321v5

Fee, if offered at all, and any Expense Reimbursement (as discussed below), will not exceed

three percent (3%) of any proposed purchase price, an amount that is well within the market for

transactions of this type. *See In re Metaldyne Corp.*, 409 B.R. 661, 670 (Bankr. S.D.N.Y. 2009)

("The total amount of the proposed break-up fee and expense reimbursement is less than 3% of

the total purchase price. This falls within the range of what courts in this jurisdiction have found

to be [an] acceptable break-up fees."); *see also In re D.A.B. Grp., LLC*, Case No. 14-12057

(SCC) (Bankr. S.D.N.Y. Dec. 18, 2014) (approving a break-up fee of approximately 3% of the

purchase price); *In re Choice Building Supplies of Westchester Co. Inc.*, Case No. 13-23859

(RDD) (Bankr. S.D.N.Y. May 5, 2014) (approving a break-up fee of approximately 3.64% of the

purchase price); *In re Hostess Brands, Inc.*, Case No. 12-22052 (RDD) (Bankr. S.D.N.Y. Jan. 28,

2013) (approving a break-up fee of approximately 3% of the purchase price); *In re HMX

Acquisition Corp.*, Case No. 12-14300 (ALG) (Bankr. S.D.N.Y. Nov. 29, 2012) (approving a

break-up fee and expense reimbursement of approximately 3.46% of the purchase price); *In re

Bos. Generating, LLC*, Case No. 10-14419 (SCC) (Bankr. S.D.N.Y. Oct. 12, 2010) (approving a

break-up fee and expense reimbursement totaling approximately 3.18% of the purchase price); *In

re Cabrini Med. Ctr.*, Case No. 09-14398 (AJG) (Bankr. S.D.N.Y. Dec. 30, 2009) (approving a

break-up fee of approximately 3.75% of the purchase price); *In re Tronox Inc.*, Case No. 09-

10156 (ALG) (Bankr. S.D.N.Y. Sept. 23, 2009) (approving a break-up fee and expense

reimbursement totaling approximately 3.72% of the total purchase price).  The Debtor submits

the standard has been satisfied and the Breakup Fee should be approved.

      49.     The Debtor also believes the granting of the Expense Reimbursement is in the

best interests of its estate.  Any serious bidder will expend time and resources negotiating,

drafting, and performing due diligence activities necessitated by the Auction, and runs the risk

that it will be overbid at the Auction.  Providing the Debtor with the option to offer an Expense

Reimbursement, in the Debtor's business judgment, will only enhance the competitive bidding

process and drive value for the benefit of all stakeholders.

50.    Accordingly, for the reasons set forth above, the Court should grant the Debtor

the authority to incur and pay the Bid Protections in its discretion as a valid exercise of the

Debtor's business judgment (in consultation with the Consultation Parties).

## IMMEDIATE AND UNSTAYED RELIEF IS NECESSARY

51.    The Court may grant the relief requested in this Motion immediately if the "relief

is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  In explicating

the standards governing preliminary injunctions, the Second Circuit instructed that irreparable

harm "'is a continuing harm which cannot be adequately redressed by final relief on the merits'

and for which 'money damages cannot provide adequate compensation.'"  *Kamerling v.

Massanari*, 295 F.3d 206, 214 (2d Cir. 2002).  Further, the "harm must be shown to be actual and

imminent, not remote or speculative."  *Id.*  The Debtor submits that, for the reasons already set

forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable

harm.

52.    The Debtor also requests that the Court waive the stay imposed by Bankruptcy

Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other

than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the

court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the

Debtor seeks in this Motion is necessary for the Debtor to operate without interruption and to

preserve value for their estates.  Accordingly, the Debtor respectfully requests that the Court

waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief

sought herein justifies immediate relief.

48036/0047-17650321v5

## RESERVATION OF RIGHTS

53.     Nothing in this Motion should be construed as (a) authority to assume or reject

any executory contract or unexpired lease of real property, or as a request for the same; (b) an

admission as to the validity, priority, or character of any claim or other asserted right or

obligation, or a waiver or other limitation of the Debtor's ability to contest same on any ground

permitted by bankruptcy or applicable non-bankruptcy law; (c) a promise to pay any claim; or

(d) granting third-party-beneficiary status or bestowing any additional rights on any third party.

## NOTICE

54.     Notice of this Motion will be given to: (i) Office of the United States Trustee, 201

Varick Street, Suite 1006, New York, New York, 10014, (ii) counsel for the DIP Lender and the

Senior Secured Lender, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153 (Attn:  Matthew S. Barr, Esq. and David J. Cohen, Esq.); (iii) counsel for UMEZ, Venable

LLP, Rockefeller Center, 1270 Avenue of the Americas, 24th Floor, New York, New York

10020 (Attn:  Rishi Kapoor, Esq. and Michael C. Phillipou, Esq.); (iv) counsel for the Building

Secured Lender and the Building Loan Agent, Manatt, Phelps & Phillips, LLP, 7 Times Square,

New York, New York 10036 (Attn: Neil S. Faden, Esq.); (v) counsel for The Port Authority of

New York and New Jersey, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New

York, New York 10036 (Attn: Jay M. Goffman, Esq. and Christine A. Okike, Esq.);  (vi) counsel

for Tutor Perini Building Corp., Nida & Romyn, P.C., 1900 Avenue of the Stars,

Suite 650, Los Angeles, CA 90067 (Attn: Robert Nida, Esq.), (vii) the Internal Revenue Service,

(viii) the Securities and Exchange Commission, (ix) the parties included on the Debtor's

consolidated list of their 20 largest unsecured creditors, (x) the United States Attorney of the

Southern District of New York, and (xi) all parties entitled to notice pursuant to Local

Bankruptcy Rule 9013-1(b).  The Debtor submits that no other or further notice is required.

48036/0047-17650321v5

## NO PRIOR REQUEST

55.     No previous request for the relief sought herein has been made to this Court or any other court.

*[Remainder of Page Intentionally Left Blank]*

48036/0047-17650321v5

## CONCLUSION

The Debtor respectfully requests that this Court enter the Bidding Procedures Order and, after the Sale Hearing, the Sale Order, substantially in the forms annexed hereto, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: November 5, 2019
      New York, New York           Respectfully submitted,

**COLE SCHOTZ P.C.**

*/s/ Ryan T. Jareck*
Michael D. Sirota
Felice R. Yudkin
Ryan T. Jareck
Mark Tsukerman
Rebecca W. Hollander
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: (212) 752-8000

*Counsel to the Debtor and*
*Debtor in Possession*

48036/0047-17650321v5