**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>GEORGE WASHINGTON BRIDGE BUS STATION DEVELOPMENT VENTURE LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 19-13196 (SCC) |

**ORDER (A) APPROVING BIDDING PROCEDURES AND FORM OF ASSET
PURCHASE AGREEMENT IN CONNECTION WITH THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) APPROVING
PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 67] (the "**Motion**")[2] of the above-captioned debtor and

debtor in possession (the "**Debtor**"), seeking entry of an order (this "**Order**"), (a) authorizing

and approving the bidding procedures attached hereto as <u>**Exhibit 1**</u> (the "**Bidding Procedures**")

in connection with the sale of the Acquired Assets and the form of asset purchase agreement in

connection with the Sale, (b) approving the form and manner of notice of the Auction and the

Sale Hearing, (c) scheduling the Sale Hearing and setting other related dates, (e) approving

procedures for the assumption and assignment of executory contracts and unexpired leases and

noticing of related Cure Payments, and (f) granting related relief; and upon the First Day

Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334; and this Court having the power to enter a final order consistent with Article III of the

United States Constitution; and this Court having found that venue of this proceeding and the

---

[1] The last four digits of the debtor's federal taxpayer identification number are 8685.  The debtor's business address is 626 South State Street, Newtown, Pennsylvania 18940.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the First Day Declaration, as applicable.

Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having

found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were

appropriate under the circumstances and no further notice need be provided; and this Court

having reviewed the Motion and having heard the statements in support of the relief requested

therein at a hearing before this Court; and this Court having determined that the legal and factual

bases set forth in the Motion and at the hearing establish just cause for the relief granted herein;

and this Court having determined that the relief requested by the Motion is in the best interests of

the Debtor, its estate, creditors, and other parties in interest; and upon all of the proceedings in

this Chapter 11 case conducted before this Court; and after due deliberation and sufficient cause

appearing therefor, it is hereby

## FOUND, CONCLUDED AND DETERMINED THAT:

A.    Bidding Procedures. The Debtor has articulated good and sufficient reasons for

authorizing and approving the Bidding Procedures attached hereto as **Exhibit 1**, which are fair,

reasonable, and appropriate under the circumstances and designed to maximize the value of the

Acquired Assets.

B.    Asset Purchase Agreement. The form of asset purchase agreement attached to the

Motion as Exhibit B (the "**Purchase Agreement**") is reasonable and appropriate for soliciting

bids for the Acquired Assets.

C.    Sale Notice. The notice, substantially in the form attached hereto as **Exhibit 2**,

provided by the Debtor regarding the Sale of the Acquired Assets by the Auction and Sale

Hearing (the "**Sale Notice**") is reasonably calculated to provide all interested parties with timely

and proper notice of the proposed Sale, including: (i) the date, time, and place of the Auction; (ii)

the Bidding Procedures and certain dates and deadlines related thereto; (iii) the objection

deadline for the Motion and the date, time, and place of the Sale Hearing; (iv) specific

identification of the Acquired Assets for sale; (v) instructions for promptly obtaining a copy of

the Purchase Agreement; (vi) representations describing the Sale as being free and clear of liens,

claims, interests, and other encumbrances, with all such liens, claims, interests, and other

encumbrances attaching to the sale proceeds with the same validity and priority; and (vii) notice

of the proposed assumption and assignment of the Assigned Contracts to the Successful Bidder

and the right, procedures, and deadlines for objecting thereto, and no further notice of the Sale

shall be required.

        D.      <u>Assumption and Assignment Procedures</u>. The Motion and the Contract

Assumption Notice (as defined herein) are reasonably calculated to provide counterparties to the

Assigned Contracts with proper notice of the intended assumption and assignment of their

executory contracts and any Cure Payments (as defined herein).  The Assumption Procedures (as

defined herein) are appropriate.

        E.      <u>Other Findings</u>. The findings and conclusions set forth herein constitute the

Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made

applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the

preceding findings of fact constitute conclusions of law, they are adopted as such. To the extent

any of the preceding conclusions of law constitute findings of fact, they are adopted as such.

      **NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

      1.      The Motion is GRANTED as set forth herein.

**I.**      **Important Dates and Deadlines**

      2.      **<u>Sale Hearing</u>**. The Sale Hearing will commence on **<u>March 11, 2020, at 11:00</u>**

**<u>a.m. (prevailing Eastern Time)</u>**, before the Honorable Shelley C. Chapman of the United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New

York 10004-1408, Courtroom 623. The Sale Hearing may be adjourned by the Debtor without further notice other than by announcement in open Court or on the Court's calendar.

3.    **Sale Objection Deadline**. Objections, if any, to the Motion and the Sale of the Acquired Assets to a Successful Bidder, except objections solely related to the identity of the Successful Bidder and adequate assurance of future performance by a Successful Bidder, must be made by **March 4, 2020, at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**"). Objections solely based on the identity of the Successful Bidder and adequate assurance of future performance must be made by **4:00 p.m. (prevailing Eastern Time)** on the date that is two (2) business days before the Sale Hearing (the "**Supplemental Limited Sale Objection Deadline**"). In each case, all objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court no later than the Sale Objection Deadline and served on (i) counsel to the Debtor, and (ii) any other entity on the Master Service List.

4.    **Response Deadline**. Responses or replies, if any, to timely filed objections to entry of the Sale Order approving a Sale to the Successful Bidder must be filed by **March 9, 2020, at 4:00 p.m. (prevailing Eastern Time)**, provided that such deadline may be extended by agreement of the Debtor and the affected objecting party. Responses or replies, if any, to timely filed objections to the identity of the Successful Bidder and/or adequate assurance of future performance may be presented at the Sale Hearing.

5.    **Competitive Bidding**. The following dates regarding the competitive bidding process are hereby established and approved:

    a.    **Bid Deadline: February 28, 2020, at 4:00 p.m. (prevailing Eastern Time), the deadline by which all Qualified Bids (as defined in the Bidding Procedures)**

4

**must be actually received in writing in electronic format by the parties specified in the Bidding Procedures (the "Bid Deadline"); and**

b.      **Auction: March 3, 2020, at 10:00 a.m. (prevailing Eastern Time), is the date and time the Auction, which will be held at the offices of counsel to the Debtor: Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor, New York, New York 10019, or such other place and time as the Debtor shall notify all Qualified Bidders that have submitted Qualified Bids and any official committee appointed in the Debtor's chapter 11 case and its counsel.**

6.      **Stalking Horse Bid Deadline and Bid Protections**. The Debtor may, but is not obligated to, as an exercise of its business judgment, select a Stalking Horse Bidder with respect to the Acquired Assets and provide such Stalking Horse Bidder with the Bid Protections, as defined in the Bidding Procedures.  Notwithstanding the foregoing, anything to the contrary in this Order or the Bidding Procedures, if the Debtor seeks to select a Stalking Horse Bidder with respect to the Sale and provide such Stalking Horse Bidder with Bid Protections, the Debtor shall file a supplement to the Motion (a "**Supplemental Motion**") seeking approval of such Bid Protections and serve such Supplemental Motion on the Court and the parties that received notice of the Motion.  Such Supplemental Motion shall include a summary of the material terms of the Stalking Horse Agreement and the proposed Bid Protections.  If no objection to the Supplemental Motion is filed and served on the Debtor by 4:00 p.m. (prevailing Eastern Time), three (3) business days following service of such Supplemental Motion, the Debtor shall be entitled to immediately file a certificate of no objection with the Court and the Debtor's selection of the Stalking Horse Bidder and the Bid Protections shall be deemed approved, without the need for a hearing or further Order of this Court.  If a timely objection is filed, an expedited hearing to consider approval of the Stalking Horse Agreement and the Bid Protections and any objections thereto will be held pending the Court's availability but no later than seven (7) days from the date of the filing of the objection.

II.       **Bidding Procedures and Related Relief**

A.        Bidding Procedures.

7.        The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1** and incorporated by reference as though fully set forth herein, are hereby approved in their entirety.  The Bidding Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed Sale, and any party desiring to submit an offer for the Acquired Assets must comply with the terms of the Bidding Procedures and this Order.  The Bidding Procedures shall also govern the terms on which the Debtor will proceed with the Auction and/or the Sale. The Debtor is authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures.

8.        No person or entity shall be entitled to any expense reimbursement, break-up fee, "topping," or other similar fee or payment (except the Stalking Horse Bidder, if any, as set forth above).

9.        The deposits provided by all Qualified Bidders shall be held in escrow by the Debtor or its agent and shall not become property of the Debtor's bankruptcy estate unless or until released from escrow to the Debtor pursuant to the terms of the applicable escrow agreement or Order of this Court.

III.      **Auction**

10.       The Debtor is authorized, subject to the terms of this Order and the Bidding Procedures, to take actions reasonably necessary, in the discretion of the Debtor, to conduct and implement the Auction.

11.       Only the Debtor, the Consultation Parties, and any Qualified Bidder, in each case, along with their representatives and counsel, or such other parties as the Debtor shall determine,

shall attend the Auction (such attendance required to be in person) and only such Qualified

Bidders will be entitled to make Bids at the Auction.

12.    The Debtor and its professionals shall direct and preside over the Auction and the

Auction shall be transcribed.  Other than as expressly set forth in this Order or the Bidding

Procedures, the Debtor may conduct the Auction in the manner it reasonably determines will

result in the highest or otherwise best Qualified Bid.

13.    Each Qualified Bidder participating in the Auction must confirm that it (a) has not

engaged in any collusion with respect to the bidding or sale of any of the assets described herein,

(b) has reviewed, understands and accepts the Bidding Procedures and (c) has consented to the

core jurisdiction of this Court and to the entry of a final order by this Court on any matter related

to this Order, the Sale, or the Auction if it is determined that this Court would lack Article III

jurisdiction to enter such a final order or judgment absent the consent of the parties.

14.    The Debtor may (a) select, in its business judgment, pursuant to the Bidding

Procedures, the overall highest or otherwise best Qualified Bid and the Successful Bidder, and

(b) reject any bid that, in the Debtor's business judgment, is (i) inadequate or insufficient, (ii) not

in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local

Bankruptcy Rules or the Bidding Procedures, or (iii) contrary to the best interests of the Debtor

and its estate, creditors, and parties-in-interest.

## IV.    **Sale Hearing Notice and Related Relief**

15.    The Sale Notice is hereby approved.  Within three (3) business days following the

entry of this Order, or as soon as reasonably practicable thereafter (the "**Mailing Date**"), the

Debtor will cause the Sale Notice to be served on: (a) any party that has filed a notice of

appearance in this Chapter 11 case; (b) any entity on the Master Service List; (c) any parties

known or reasonably believed to have expressed an interest in the Acquired Assets or any

portion thereof; (d) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in the Acquired Assets; (e) all parties to executory contracts and unexpired leases to be assumed and assigned, or rejected as part of the Sale; (f) all applicable state and local taxing authorities; (g) the Port Authority of New York and New Jersey; and (h) any other governmental agency that has a reasonably known interest with respect to the Sale and transactions proposed thereunder.

16.    In addition, on the Mailing Date, the Debtor shall publish a notice, substantially in the form of the Sale Notice (as may be modified for publication purposes), on one occasion, in the national edition of *The New York Times*.  Such publication notice shall be deemed sufficient and proper notice of the Sale to any other interested parties whose identities are unknown to the Debtor.

## V.    Assumption and Assignment Procedures

17.    The procedures set forth below regarding the assumption and assignment of the executory contracts and unexpired leases proposed to be assumed by the Debtor pursuant to section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder pursuant to section 365(f) of the Bankruptcy Code in connection with the Sale (the "**Assumption Procedures**") are hereby approved to the extent set forth herein.

18.    The Assumption Procedures shall govern the assumption and assignment of all of the Debtor's executory contracts and unexpired leases to be assumed and assigned in connection with the Sale under the Purchase Agreement (each, an "**Assigned Contract**," and, collectively, the "**Assigned Contracts**"), subject to the payment of any payments necessary to cure any defaults arising under any Assigned Contract (the "**Cure Payments**"), the provision of adequate assurance by the Debtor or the Successful Bidder, as applicable, that it will promptly cure any non-monetary defaults existing prior to the Closing under the Assigned Contracts, and the

provision of adequate assurance of future performance by the Successful Bidder under the

Assigned Contracts:

a.     **Contract Assumption Notice**. No less than twenty-one (21) days prior to the Sale Objection Deadline (the "**Assumption and Assignment Service Deadline**"), the Debtor shall serve a notice of contract assumption in substantially the form attached hereto as **Exhibit 3** (the "**Contract Assumption Notice**") via overnight delivery on all counterparties to all potential Assigned Contracts and provide a copy of the Contract Assumption Notice to the Consultation Parties. The Contract Assumption Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the executory contract or unexpired lease, as applicable, (ii) the name of the counterparty to the executory contract or unexpired lease, as applicable, (iii) the Debtor's good faith estimates of the Cure Payments (if any) required in connection with the executory contract or unexpired lease, as applicable, and (iv) the Sale Objection Deadline; provided, however, that service of a Contract Assumption Notice does not constitute an admission that any contract is an executory contract or that the stated Cure Payment related to any contract or unexpired lease constitutes a claim against the Debtor. Further, the inclusion of an executory contract or unexpired lease, as applicable, on the Contract Assumption Notice is not a guarantee that such executory contract or unexpired lease, as applicable, will ultimately be assumed and assigned to the Successful Bidder.

b.     **Cure Payments and Adequate Assurance of Future Performance**. The payment of the applicable Cure Payments by the Debtor or Successful Bidder, as applicable, the provision of adequate assurance by the Debtor or the Successful Bidder, as applicable, that it will promptly cure any non-monetary defaults existing prior to the Closing under the Assigned Contracts, and the provision of adequate assurance of future performance by the Successful Bidder under the Assigned Contracts shall (i) effect a cure of all defaults existing thereunder, and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

c.     **Additions**. The Successful Bidder may designate, up to three (3) business days before the Sale Hearing (the "**Designation Deadline**"), additional executory contracts and/or unexpired leases as agreements to be assumed by the Debtor and assigned to the Successful Bidder (the "**Additional Assigned Contracts**"). Within one (1) business day of notice of the Additional Assigned Contracts by the Successful Bidder, the Debtor shall serve a Contract Assumption Notice on each of the counterparties to such Additional Assigned Contracts and their counsel of record, if any, indicating (i) that the Debtor intends to assume and assign the counterparty's executory contract or unexpired lease, as applicable, to the Successful Bidder, and (ii) the corresponding Cure Payment.

d.      **Removal**. The Successful Bidder may remove any executory contract or unexpired lease, as applicable, to be assumed by the Debtor and assigned to the Successful Bidder (the "**Eliminated Agreements**") until the Designation Deadline.  Following the Successful Bidder's removal of an Eliminated Agreement, the Debtor shall as soon as reasonably practicable thereafter serve a notice (a "**Removal Notice**") on each of the impacted counterparties and their counsel of record, if any, indicating that the Debtor no longer intends to assume and assign the counterparty's executory contract or unexpired lease, as applicable, to the Successful Bidder in connection with the Sale.

e.      **Supplemental Contract Assumption Notice**. Although the Debtor intends to make a good faith effort to identify all Assigned Contracts that may be assumed and assigned in connection with a Sale, the Debtor may discover certain executory contracts or unexpired leases inadvertently omitted from the Assigned Contracts list.  Accordingly, the Debtor reserves the right at any time after the Assumption and Assignment Service Deadline and before the closing of a Sale, to (i) supplement the list of Assigned Contracts with previously omitted executory contracts or unexpired leases, (ii) remove Assigned Contracts from the list of executory contracts or unexpired leases ultimately selected as Assigned Contracts that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale, and/or (iii) modify the previously stated Cure Payment associated with any Assigned Contracts. In the event the Debtor exercises any of these reserved rights, the Debtor will promptly serve a supplemental notice of contract assumption (a "**Supplemental Assumption Notice**") on each of the counterparties to such Assigned Contracts and their counsel of record, if any, and the Consultation Parties; provided, however, the Debtor may not add an executory contract or unexpired lease to the list of Assigned Contracts that has been previously rejected by the Debtor by Order of the Court. Each Supplemental Assumption Notice will include the same information with respect to listed Assigned Contracts as was included in the Contract Assumption Notice.

f.      **Objections**. Objections, if any, to the proposed assumption and assignment or the Cure Payment proposed with respect thereto, must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed amount of the Cure Payment, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by counsel to the Debtor on or before fourteen (14) days after service of the Contract Assumption Notice (the "**Cure Objection Deadline**"), or such deadline set forth in the applicable Supplemental Assumption Notice.  The deadline to object to assumption and assignment solely with respect to the adequate assurance of future performance by the Successful Bidder shall be extended to the date that is two (2) days after the conclusion of the Auction, but any such objection must be received before the start of the Sale Hearing; provided, however, and for the avoidance of doubt, the deadline to object to the Cure Payment shall not be extended.

10

19.     Any party failing to timely file an objection to the cure amount, the proposed

assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on

the Contract Assumption Notice or Supplemental Assumption Notice, as applicable, or the Sale

is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of

such Assigned Contract or Additional Assigned Contract (including the adequate assurance of

future performance), (c) the related relief requested in the Motion, and (d) the Sale.  Such party

shall be forever barred and estopped from objecting to the Cure Payment, the assumption and

assignment of the Assigned Contract, or Additional Assigned Contract, adequate assurance of

future performance, the relief requested in the Motion, whether applicable law excuses such

counterparty from accepting performance by, or rendering performance to, the Successful

Bidder, as applicable, for purposes of section 365(c)(1) of the Bankruptcy Code and from

asserting any additional cure or other amounts against the Debtor and the Successful Bidder, as

applicable, with respect to such party's Assigned Contract or Additional Assigned Contract.

20.     The Debtor shall have no liability or obligation with respect to defaults relating to

the Assigned Contracts arising, accruing, or relating to a period on or after the effective date of

assignment.

## VI.    Other Related Relief

21.     Any objections to the entry of this Order and the relief granted herein that have

not been withdrawn, waived, resolved or settled, and all reservations of rights included therein,

are hereby overruled.

22.     Any obligations of the Debtor set forth in the Purchase Agreement that are

intended to be performed prior to the Sale Hearing and/or entry of the Sale Order are authorized

as set forth herein.

11

23.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

24.     To the extent the provisions of this Order are inconsistent with the provisions of any exhibits referenced herein or with the Motion, the provisions of this Order shall control.

25.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

26.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


Dated: New York, New York
        December 4, 2019

                                        /S/ Shelley C. Chapman
                                        HONORABLE SHELLEY C. CHAPMAN
                                        UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

**Bidding Procedures**

## BIDDING PROCEDURES[1]

On October 7, 2019, George Washington Bridge Bus Station Development Venture LLC, a Delaware limited liability company (the "**Debtor**"), commenced a Chapter 11 case in the Bankruptcy Court for the Southern District of New York (the "**Court**") to pursue a sale of the Debtor's business.

On December __, 2019, the Bankruptcy Court entered an order [Docket No. [__]] (the "**Bidding Procedures Order**") approving, among other things, these bidding procedures (the "**Bidding Procedures**") and the form of asset purchase agreement ("**Purchase Agreement**") to solicit bids on the Acquired Assets or proposals to sponsor a plan of reorganization (a "**Plan**").

These Bidding Procedures set forth, among other things, (i) the procedures for bidders to submit bids for an investment in, or other acquisition of, the Debtor's business (the "**Business**"), pursuant to a Plan or a Qualified Bidder (as defined below), (ii) the manner in which bidders and bids become Qualified Bidders and Qualified Bids; (iii) the process for negotiating the bids received; (iv) the process by which the Debtor is authorized to conduct the auction ("**Auction**") for the Sale; (v) the procedure for the ultimate selection of any Successful Bidder; and (vi) the process for approval of a potential Sale at a Sale Hearing (each as defined herein).

Pursuant to these Bidding Procedures, the Debtor and its advisors shall (i) determine whether any person is a Qualified Bidder (as defined below), (ii) coordinate the efforts of Potential Bidders (as defined below) in conducting their due diligence activities, (iii) receive offers from Potential Bidders, and (iv) negotiate any offers made to acquire the Business.

---

[1] All terms used but not otherwise defined herein shall have the meanings ascribed to them in the motion for approval of the Bidding Procedures [Docket No. 67] (the "**Motion**").

2

The key dates for the sale process are as follows:

| | |
|---|---|
| December 17, 2019 at 5:00 p.m. EST | Deadline to Submit Non-Binding Indications of Interest |
| February 28, 2020 at 4:00 p.m. EST | Bid Deadline - Due Date for Bids and Deposits |
| March 3, 2020 at 10:00 a.m. EST | Auction |
| March 4, 2020 at 4:00 p.m. EST | Sale Objection Deadline[2] |
| March 9, 2020 at 4:00 p.m. EST | Sale Objection Response Deadline |
| 4:00 p.m. EST on the date that is two (2) business days before the Sale Hearing | Supplemental Limited Sale Objection Deadline (objections limited to identity of the Successful Bidder and adequate assurance of future performance) |
| At the Sale Hearing | Supplemental Limited Sale Objection Response Deadline |
| March 11, 2020 at 11:00 a.m. EST | Sale Hearing |

## Due Diligence

**Access to Diligence Materials**

To participate in the bidding process and to receive access to due diligence (the "**Diligence Materials**"), a party interested in acquiring the Acquired Assets or sponsoring a Plan must submit to the Debtor (i) an executed confidentiality agreement in such form reasonably satisfactory to the Debtor, and (ii) reasonable evidence demonstrating the party's financial ability to consummate a Sale as reasonably determined by the Debtor. A party who qualifies for access to Diligence Materials pursuant to these Bidding Procedures shall be a "**Potential Bidder**."

The Debtor will afford any Potential Bidder the time and opportunity to conduct reasonable due diligence, as determined by the Debtor, including reasonable access to management and its professionals, access to the electronic data room and other information that a Potential Bidder may reasonably request; provided, however, that the Debtor shall not be obligated to furnish any due diligence information after the Bid Deadline to any party that has not submitted a Qualified Bid (as defined below). The availability of additional due diligence to a Qualified Bidder will cease on the date of the Auction; provided, however, that the Successful

---

[2] This objection deadline applies to all objections to the Sale Motion and the Sale of the Acquired Assets to a Successful Bidder, with the exception of objections solely related to the identity of the Successful Bidder and adequate assurance of future performance by the Successful Bidder.

3

Bidder shall be permitted to continue to conduct due diligence until the closing of the Sale (subject to the terms of the Successful Bidder Purchase Agreement (as defined below)). The Debtor reserves the right to withhold any Diligence Materials that the Debtor determines are business-sensitive or otherwise not appropriate for disclosure to a Potential Bidder who is a competitor of the Debtor or is affiliated with any competitor of the Debtor. Neither the Debtor nor its representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Potential Bidder.

Each Potential Bidder will be deemed to acknowledge and represent it (a) has had an opportunity to conduct any and all due diligence regarding the Debtor's assets and liabilities that are the subject of the Auction prior to making any such bid, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Debtor's assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures.

All due diligence requests must be directed to the Debtor's investment banker, Houlihan Lokey, Inc., 245 Park Ave., 20th Floor, New York, NY 10167, Attn: Gary Gordon (GGordon@HL.com) and Steven Balash (SBalash@HL.com).

**Due Diligence from Potential Bidders**

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtor or its advisors regarding the ability of such Potential Bidder to consummate its transaction.

## <u>Designation of Stalking Horse Bidder</u>

The Debtor is authorized, but not obligated to, with the prior written consent of the Senior Secured Lenders (with such consent not to be unreasonably withheld), (i) designate one or more Potential Bidders to act as a Stalking Horse Bidder in connection with the Auction and enter into a stalking horse agreement (a "**Stalking Horse Agreement**") with such Stalking Horse Bidder, (ii) in connection with any Stalking Horse Agreement provide a breakup fee (the "**Breakup Fee**"), and agree to reimburse the reasonable and documented out-of-pocket fees and expenses (the "**Expense Reimbursement**," and together with the Breakup Fee, collectively, the "**Bid Protections**"). The aggregate amount that may be paid to any or all Stalking Horse Bidders on account of the Bid Protections shall not exceed three percent (3%) of the proposed Purchase Price.

To the extent the Debtor, after receiving the prior written consent of the Senior Secured Lenders, designates a Stalking Horse Bidder and enters into a Stalking Horse Agreement, the Debtor shall promptly upon execution of a Stalking Horse Agreement, and in no event more than two (2) calendar days following such execution, file with the Bankruptcy Court, a notice that contains information about the Stalking Horse Bidder, the Stalking Horse Bid, and attaches the proposed Stalking Horse Agreement.

Notwithstanding the foregoing, the selection of a Stalking Horse Bidder and the granting of Bid Protections shall be subject to and governed by the Bidding Procedures Order, including, but not limited to, the filing of a Supplemental Motion with the Court.

### Non-Binding Indications of Interest

Parties interested in purchasing the Debtor's business are encouraged to submit an non-binding indication of interest to the Debtor **no later than 5:00 p.m. (prevailing Eastern Time) on December 17, 2019** in writing (each a "**Non-Binding Indication of Interest**"). Non-Binding Indications of Interest should be sent to the Debtor's investment banker, Houlihan Lokey, Inc., 245 Park Ave., 20th Floor, New York, NY 10167, Attn: Gary Gordon (GGordon@HL.com) and Steven Balash (SBalash@HL.com).

Submitting a Non-Binding Indication of Interest by the deadline listed herein does not obligate the interested party to consummate a transaction, submit a formal bid or to participate in the bidding process, nor does it cause such party to be deemed to be a Potential Bidder. It also does not exempt such party from having to submit a Qualified Bid by the Bid Deadline (as defined below) or comply with these Bidding Procedures to participate in any subsequent Auction, all as described below. For the avoidance of doubt, a party that does not submit a Non-Binding Indication of Interest is not precluded from submitting a Qualified Bid by the Bid Deadline.

### Bid Deadline

The Debtor shall assist Potential Bidders (as defined below) in conducting their respective due diligence investigations and shall accept Bids (as defined below) until **February 28, 2020, at 4:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**") to acquire or invest in the Business.

**The submission of a bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the assets specified in such bid.** Any party that does not submit a bid by the Bid Deadline will not be allowed to (i) submit any offer after the Bid Deadline or (ii) participate in any Auction.

No later than the Bid Deadline, a Potential Bidder that desires to make a bid to consummate the Sale shall deliver written copies of its Bid (as defined below) in electronic format to: (i) the Debtor, George Washington Bridge Bus Station Development Venture LLC, c/o BAK Advisors, 626 South State Street, Newtown, PA 18940, Attn: Bernard A. Katz (bernie@bakadvisors.com); (ii) counsel for the Debtor, Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor, New York, NY 10019, Attn: Michael D. Sirota, Esq. (msirota@coleschotz.com) and Ryan T. Jareck, Esq. (rjareck@coleschotz.com); (iii) investment banker to the Debtor, Houlihan Lokey, Inc., 245 Park Ave 20th Floor, New York, NY 10167, Attn: Gary Gordon (GGordon@HL.com) and Steven Balash (SBalash@HL.com); and (iv) provided that the DIP Lender or Senior Secured Lender is not a Bidder, counsel for the DIP Lender and Senior Secured Lender, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Matthew S. Barr, Esq. and David J. Cohen, Esq.

The Debtor may, with the consent of the Senior Secured Lenders, extend the Bid Deadline without further order of the Bankruptcy Court subject to providing notice to all Potential Bidders and the Stalking Horse Bidder, if any.

**Communications with Potential Bidders**

There must be no communications between and among Potential Bidders, or between Potential Bidders and the Consultation Parties (as defined below), unless the Debtor has previously authorized such communication in writing. Should any Potential Bidder attempt to communicate directly with a Consultation Party, such Consultation Party shall immediately direct the Potential Bidder to the Debtor's counsel. The Debtor reserves the right, in its reasonable business judgment, to disqualify any Potential Bidder that has communications between and among themselves or with a Consultation Party without the Debtor's prior written consent. The Debtor further reserves its right, in its reasonable business judgment, to revoke a Consultation Party's consultation rights if such Consultation Party violates this provision; provided that the Debtor shall provide such Consultation Party with notice that the Debtor is exercising its rights to revoke the Consultation Party's consultation rights.

### <u>Determination of Qualified Bid Status</u>

To be eligible for consideration as a Qualified Bid and to participate in the Auction, each Potential Bidder must deliver to the Debtor and its advisors a written, irrevocable, signed offer (each, a "**Bid**") that must be determined by the Debtor, in its business judgment, to satisfy each of the following conditions:[3]

a. **Good Faith Offer; No Partial Bids**: Each Bid must constitute a good faith, bona fide offer to purchase all of the Acquired Assets or newly issued equity interests of the reorganized Debtor pursuant to a Plan. Partial Bids will not be considered. A Bid may not be materially less favorable than the terms of the Stalking Horse Agreement, if any.

b. **Good Faith Deposit**: Each Bid must be accompanied by a deposit in the amount of ten percent (10%) of the Purchase Price (as defined in the Modified Purchase Agreement (as defined below)), before any reductions for assumed liabilities (the "**Good Faith Deposit**"). The Good Faith Deposit shall come in the form of a wire transfer, certified check or other form acceptable to the Debtor, in consultation with the Consultation Parties. Each Good Faith Deposit will be deposited and held in one or more interest-bearing escrow accounts by the Debtor but shall not become property of the Debtor's estate absent further Order of the Bankruptcy Court.  Requests for wire instructions should be directed to Houlihan Lokey, Inc., 245 Park Ave., 20th Floor, New York, NY 10167, Attn: Gary Gordon (GGordon@HL.com) and Steven Balash (SBalash@HL.com).

c. **Executed Agreement**: Each Bid must include an executed agreement (a "**Modified Agreement**") and any necessary transaction documents, signed by an authorized representative of such Potential Bidder, pursuant to which the Potential

---

[3]    The Debtor may, in consultation with the Consultation Parties, and with the consent of the Senior Secured Lenders (with such consent not to be unreasonably withheld), waive any of the following requirements for a Bid to constitute a Qualified Bid to the extent reasonably necessary to promote bids and a robust auction so long as any such waiver is not materially inconsistent with these Bidding Procedures.

Bidder proposes to effectuate the acquisition of all of the assets of the Debtor or newly issued equity interests of the reorganized Debtor pursuant to the Debtor's chapter 11 plan.  Each Bid must also include a copy of the Modified Purchase Agreement marked against the Purchase Agreement to show all changes requested by the Potential Bidder (including those related to the assumption and assignment of executory contracts and unexpired leases, and other material terms such that the Debtor may determine how such Bid compares to the terms of the Purchase Agreement and competing Bids).  Each Modified Purchase Agreement must provide a commitment to close within two (2) business days after all closing conditions are met.

d.    **Purchase Price**: Each Bid must clearly identify the purchase price to be paid (the "**Purchase Price**").

e.    **Cash Requirements**: Each Bid must provide cash consideration for the payment of any applicable Break-Up Fee in cash in full.

f.    **Designation of Assigned Contracts and Leases**: A Bid must identify any and all executory contracts and unexpired leases of the Debtor that the Potential Bidder wishes to be assumed pursuant to a Sale. A Bid must specify whether the Debtor or the Potential Bidder will be responsible for any cure costs associated with such assumption, and include a good faith estimate of such cure costs.  Any Potential Bidder that identifies the Agreement of Lease dated July 21, 2011 by and between the Port Authority of New York and New Jersey and the Debtor (as amended, modified and supplemented, the "**Lease**") as an unexpired lease of the Debtor that the Potential Bidder wishes to assume must certify that neither the Potential Bidder nor any management company that the Potential Bidder intends to manage the Leased Premises (as defined in the Lease) is a Prohibited Person (as defined in the Lease).

g.    **Designation of Assumed Liabilities**: A Bid must identify all liabilities which the Potential Bidder proposes to assume.

h.    **Corporate Authority**: A Bid must include written evidence reasonably acceptable to the Debtor demonstrating appropriate corporate authorization to consummate the proposed Sale; provided that, if the Potential Bidder is an entity specially formed for the purpose of effectuating the Sale, then the Potential Bidder must furnish written evidence reasonably acceptable to the Debtor of the approval of the Sale by the equity or interest holder(s) of such Potential Bidder.

i.    **Disclosure of Identity of Potential Bidder**: A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Acquired Assets or otherwise participating in connection with such Bid (including the identity of any parent companies of such entity), and the complete terms of any such participation, including any connections, agreements, arrangements or understandings with the Debtor, or any other known, potential, prospective bidder, or Potential Bidder, or any officer, director, or equity holder of the Debtor.

7

**j.**     **Disclosure of Connections**: A Bid must fully disclose any connections or agreements with the Debtor or its affiliates, any other known Potential Bidder and/or any officer or director of the Debtor or its affiliates.

**k.**     **Proof of Financial Ability to Perform**: A Bid must include written evidence that the Debtor may reasonably conclude, in consultation with its advisors and the Consultation Parties, demonstrates that the Potential Bidder has the necessary financial wherewithal to timely consummate a Sale and must further contain information that can be publicly filed and/or disseminated providing adequate assurance of future performance of all executory contracts and unexpired leases to be assumed and assigned in such Sale.  Such information must include the following:

   (1)    contact names and numbers for verification of financing sources;

   (2)    written evidence of the Potential Bidder's internal resources and proof of any debt funding commitments from a recognized banking institution and, if applicable, equity commitments in an aggregate amount equal to the cash portion of such Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtor in the amount of the cash portion of such Bid, in each case, as are needed to close the Sale;

   (3)    the Potential Bidder's most current audited (if any) and latest unaudited financial statements or, if the bidder is an entity formed for the purpose of making a bid, the current audited (if any) and latest unaudited financial statements of the equity holder(s) of the bidder or such other form of financial disclosure, and a guaranty from such equity holder(s);

   (4)    a description of the Potential Bidder's pro forma capital structure; and

   (5)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor demonstrating that such Potential Bidder has the ability to promptly close the Sale.

**l.**     **Third-Party Approvals**: A Bid must set forth each third-party approval required for the Potential Bidder to consummate the Sale, and the time within which the Potential Bidder expects to receive such third-party approvals, and the Debtor may consider the timing of such approvals, and any actions the Potential Bidder will take to ensure receipt of such approvals as promptly as possible, when considering the other Bid Assessment Criteria (as defined below).  A Potential Bidder further agrees that its legal counsel will coordinate in good faith with Debtor's legal counsel and the Senior Secured Lenders' legal counsel to discuss and explain such Potential Bidder's analysis, strategy, and timeline for securing any such approvals as soon as reasonably practicable.

8

m.    **Conditions/Contingencies**: Except as provided in the Purchase Agreement, a Bid must not be subject to material conditions or contingencies to closing, including without limitation obtaining financing, internal approvals or further due diligence.

n.    **Bid Irrevocable**: A Bid must provide that it is irrevocable until two (2) business days after the closing of the Sale. Each Potential Bidder further agrees that its Bid, if not chosen as the Successful Bidder, shall serve, without modification, as a Backup Bidder (as defined below) as may be designated by the Debtor at the Sale Hearing, in the event the Successful Bidder fails to close as provided in the Successful Bidder Purchase Agreement, as modified, if at all, and the Sale Order.

o.    **As-Is, Where-Is**: A Bid must include the following disclaimer: EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT OR ANY ANCILLARY DOCUMENT DELIVERED BY ANY SELLER PURSUANT TO THIS AGREEMENT (I) THE DEBTOR MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AT LAW OR IN EQUITY, RELATING TO THE BUSINESS, THE ACQUIRED ASSETS OR THE ASSUMED LIABILITIES, INCLUDING ANY REPRESENTATION OR WARRANTY AS TO VALUE, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR FOR ORDINARY PURPOSES, OR ANY OTHER MATTER, (II) THE DEBTOR MAKES NO, AND HEREBY DISCLAIMS ANY, OTHER REPRESENTATION OR WARRANTY REGARDING THE BUSINESS, THE ACQUIRED ASSETS OR THE ASSUMED LIABILITIES, AND (III) THE ACQUIRED ASSETS AND THE ASSUMED LIABILITIES ARE CONVEYED ON AN "AS IS, WHERE IS" BASIS AS OF THE CLOSING, AND THE PURCHASER SHALL RELY UPON ITS OWN EXAMINATION THEREOF. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT OR ANY ANCILLARY DOCUMENT DELIVERED BY THE DEBTOR PURSUANT TO THIS AGREEMENT, THE DEBTOR MAKES NO REPRESENTATION OR WARRANTY REGARDING ANY BUSINESS OTHER THAN THE BUSINESS, ANY ASSETS OTHER THAN THE ACQUIRED ASSETS OR ANY LIABILITIES OTHER THAN THE ASSUMED LIABILITIES, AND NONE SHALL BE IMPLIED AT LAW OR IN EQUITY.

p.    **Time Frame for Closing**: A Bid by a Potential Bidder must be reasonably likely to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtor, but in no event later than the maturity date of the DIP loan.

q.    **Consent to Jurisdiction**: Each Potential Bidder must (i) submit to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtor, the Bidding Procedures, the Auction, any Modified Purchase Agreement, or the construction and enforcement of documents relating to any Sale, (ii) waive any right to a jury trial in connection with any disputes relating to the Debtor, the Bidding Procedures, the Auction, any

Modified Purchase Agreement, or the construction and enforcement of documents relating to any Sale, and (iii) commit to the entry of a final order or judgment in any way related to the Debtor, the Bidding Procedures, the Auction, any Modified Purchase Agreement, or the construction and enforcement of documents relating to any Sale if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

r.    **Bid Protections**: Except with respect to a Stalking Horse Bid, a Bid must not entitle the Potential Bidder to any break-up fee, termination fee, transaction fee, expense reimbursement, or any similar type of payment or reimbursement and, by submitting a Bid, the Potential Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its Bid or participation in any Auction. Each Potential Bidder presenting a Bid will bear its own costs and expenses (including legal fees) in connection with any proposed Sale.

s.    <u>**Representations and Warranties**</u>: A Bid must include the following representations and warranties:

   i.    a statement that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the applicable assets prior to submitting its Bid;

   ii.    a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Modified Agreement ultimately accepted and executed by the Debtor;

   iii.    a statement that the Potential Bidder agrees to serve as Back-Up Bidder, if its Bid is selected as the next highest or next best bid after the Successful Bid with respect to the applicable assets;

   iv.    a statement that the Potential Bidder has not engaged in any collusion with respect to the submission of its Bid;

   v.    a statement that all proof of financial ability to consummate a Sale Transaction in a timely manner and all information provided to support adequate assurance of future performance is true and correct; and

   vi.    a statement that the Potential Bidder agrees to be bound by the terms of the Bidding Procedures.

### Review of Bids; Designation of Qualified Bids

A Bid received from a Potential Bidder that meets the above requirements, as determined by the Debtor, in consultation with the Senior Secured Lenders, shall constitute a "**Qualified Bid**" for such assets (and such Potential Bidder, a "**Qualified Bidder**"); provided that if the Debtor receives a Bid prior to the Bid Deadline that is not a Qualified Bid, the Debtor may, in consultation with the Senior Secured Lenders, provide the Potential Bidder with the opportunity to cure or remedy any deficiencies prior to the Bid Deadline.

The Senior Secured Lenders may, at their sole discretion, also be a Qualified Bidder and may submit such Bid or Overbid in cash, cash equivalents or other forms of consideration, including a credit bid, either in whole or in part, to the extent permitted under and consistent with section 363(k) of the Bankruptcy Code up to the full allowed amount of their claims, which credit bid(s), if otherwise meeting the above requirements, as determined by the Debtor in its sole discretion, shall be deemed as a part of a Qualified Bid in connection with the bidding process, the Auction, and the Sale.

All information disclosed by any Bidder in connection with all of the preceding requirements will be made available by the Debtor to the Consultation Parties promptly upon the Debtor's receipt thereof but in any event no later than twelve (12) hours following the earlier of receipt of a Bid and the Bid Deadline.

Within two (2) business days after the Bid Deadline, the Debtor and its advisors will determine which Potential Bidders are Qualified Bidders and will notify the Potential Bidders whether Bids submitted constitute Qualified Bids so as to enable such Qualified Bidders to bid at the Auction. Any Bid that is not deemed a Qualified Bid will not be considered by the Debtor. To the extent there is any dispute regarding whether a bidder is a Qualified Bidder, such dispute may be raised with the Bankruptcy Court on an expedited basis prior to the commencement of the Auction.

Prior to the Auction, the Debtor and its advisors will evaluate Qualified Bids and identify, in consultation with the Senior Secured Lenders, the Qualified Bid that is, in the Debtor's reasonable business judgment, the highest or otherwise best bid (the "**Starting Bid**"). In making such determination, the Debtor will take into account, among other things, the execution risk attendant to any submitted bids. Within twenty-four (24) hours of such determination, but in no event later than twenty-four (24) hours before the start of the Auction, the Debtor will (i) notify the Consultation Parties as to which Qualified Bid is the Starting Bid, and (ii) distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid and the Consultation Parties.

If any Bid is determined by the Debtor not to be a Qualified Bid, the Debtor will refund such Potential Bidder's Good Faith Deposit and all accumulated interest thereon on or within ten (10) business days after the Bid Deadline.

By submitting its Bid, each Potential Bidder is agreeing with each other Potential Bidder to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after the Auction.

Without the written consent of the Debtor after consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid for the Debtor during the period that such Qualified Bid remains binding as specified herein; provided, that any Qualified Bid may be improved at the Auction as set forth in these Bidding Procedures.

## Auction

If two or more Qualified Bids are received by the Bid Deadline, the Debtor will conduct an auction (the "**Auction**") to determine the highest or otherwise best Qualified Bid. This determination shall take into account any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to the estate and may include, but are not limited to, the following: (a) the amount and nature of the consideration, including any assumed liabilities; (b) the number, type and nature of any changes to the Purchase Agreement requested by each Qualified Bidder; (c) the extent to which such modifications or provisions are likely to delay closing of the sale of the Debtor's assets and the cost to the Debtor of such modifications or delay; (d) the total consideration to be received by the Debtor; (e) the likelihood the Qualified Bidder can close the transaction timely; and (f) any other qualitative or quantitative factor the Debtor deems reasonably appropriate under the circumstances (collectively, the "**Bid Assessment Criteria**"). Notwithstanding anything herein to the contrary, the Debtor will not select a combination of Qualified Bids for substantially all of the Acquired Assets in multiple lots.

If no Qualified Bid (other than the Stalking Horse Bid, if any) is received by the Bid Deadline, the Debtor will not conduct the Auction, and shall file a notice with the Bankruptcy Court indicating that no Auction will be held.

## Procedures for Auction

If the Debtor receives two or more Qualified Bids, the Auction shall take place on **March 3, 2020 at 10:00 a.m. (EST)** at the offices of Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor, New York, New York 10019, or such other place and time as determined by the Debtor, in consultation with the Consultation Parties. The Auction may be postponed, adjourned or cancelled as the Debtor deems appropriate, in consultation with the Senior Secured Lenders, provided the Debtor provides notice of such postponement or adjournment and the time and place for the commencement of the Auction. The Auction shall be conducted according to the following procedures:

**Participation**

Only the Debtor, the Consultation Parties, and any Qualified Bidder that has submitted a Qualified Bid, in each case, along with their representatives and counsel, or such other parties as the Debtor shall determine shall attend the Auction (such attendance to be in person) and only such Qualified Bidders will be entitled to make any Bids at the Auction.

**The Debtor Shall Conduct the Auction**

The Debtor and its professionals shall direct and preside over the Auction and the Auction shall be transcribed. Other than as expressly set forth herein, the Debtor may conduct the Auction in the manner it reasonably determines will result in the highest or otherwise best Qualified Bid. The Debtor shall provide each participant in the Auction with a copy of the Modified Purchase Agreement associated with the Starting Bid. In addition, at the start of the Auction, the Debtor shall describe the terms of the Starting Bid. Each Qualified Bidder participating in the Auction must confirm, both before and after the Auction, that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, and (b) has reviewed, understands and accepts the Bidding Procedures.

All Qualified Bidders may submit further Bids, along with a markup or a further markup of the applicable purchase agreement. The Auction will be conducted in rounds. All Qualified Bidders are required to bid in each round or they forfeit their right to participate in subsequent rounds. At any time, a Qualified Bidder may request that the Debtor announce the then current highest and best bid. If requested, the Debtor shall use reasonable efforts to clarify any and all questions any Qualified Bidder may have regarding the Debtor's announcement of the Starting Bid or the then current and highest bid.

The Debtor, in consultation with the Consultation Parties, may announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent with the Bidding Procedures.

**Overbids**

An "**Overbid**" is any bid made at the Auction subsequent to the Debtor's announcement of the respective Starting Bid. Any Overbid for purposes of this Auction must comply with the following conditions:

a.  **Minimum Overbid Increments**: Any Overbid after and above the respective Starting Bid or any subsequent Overbid shall be made in increments valued at not less than $1,000,000 (and, in the event Bid Protections were offered to a Stalking Horse Bidder, the Overbid shall be no less than the value of the Bid Protections, if any, plus a value equal to $1,000,000). Additional consideration in excess of the amount set forth in the respective Starting Bid may include cash and/or non-cash consideration, provided, however, that the value for such non-cash consideration shall be determined by the Debtor in its reasonable business judgment, in consultation with the Consultation Parties.

b.  **Remaining Terms Are the Same as for Qualified Bids**: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, provided, however, that (i) the Bid Deadline shall not apply and (ii) no additional Good Faith Deposit shall be required beyond the Good Faith Deposit previously submitted by a Qualified Bidder, provided that the Successful Bidder shall be required to make a representation at the end of the Auction that it will provide any additional deposit necessary so that its Good Faith Deposit is

equal to the amount of ten percent (10%) of the Purchase Price contained in the Successful Bid. Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Qualified Bidder to the Purchase Agreement or a previously submitted Modified Purchase Agreement, in connection therewith (including any changes to the designated assigned executory contracts and unexpired leases and assumed liabilities). Any Overbid must remain open and binding on the Qualified Bidder until and unless the Debtor accepts a higher or otherwise better Overbid from another Qualified Bidder (except, to the extent required hereby, to serve as the Backup Bid).

At the Debtor's discretion, to the extent not previously provided, a Qualified Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information reasonably acceptable to the Debtor) reasonably demonstrating such Qualified Bidder's ability to close the Sale proposed by such Overbid.

**Announcement and Consideration of Overbids**

    **c.**    **Announcement of Overbids**: The Debtor shall announce at the Auction the material terms of each Overbid, the total amount of consideration offered in each such Overbid, the basis for calculating such total consideration and such other terms as the Debtor reasonably determines will facilitate the Auction.

    **d.**    **Consideration of Overbids**: Subject to the deadlines set forth herein, the Debtor reserves the right in its reasonable business judgment and in consultation with the Consultation Parties, to make one or more continuances of the Auction to, among other things facilitate discussions between the Debtor and Qualified Bidders or allow a Qualified Bidder to consider how it wishes to proceed.

**Closing the Auction**

The Auction shall continue until there is one Qualified Bid that the Debtor determines in its reasonable business judgment is the highest or otherwise best Qualified Bid at the Auction. Thereafter, the Debtor shall select such Qualified Bid as the overall highest or otherwise best Qualified Bid (such Bid, the "**Successful Bid**," the Qualified Bidder submitting such Successful Bid, the "**Successful Bidder**" and the Qualified Bidder's purchase agreement, the "**Successful Bidder Purchase Agreement**"). In making this decision, the Debtor shall consider the Bid Assessment Criteria.

The Auction shall close when the Successful Bidder submits fully executed sale and transaction documents memorializing the terms of the Successful Bid. Promptly following the Debtor's selection of the Successful Bid and the conclusion of the Auction, the Debtor shall announce the Successful Bid and Successful Bidder and shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder.

The Debtor shall not consider any Bids submitted after the conclusion of the Auction.

For the avoidance of doubt, nothing in these Bidding Procedures shall prevent the Debtor from exercising its fiduciary duties under applicable law

**Designation of Backup Bidder**

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Bid at the Auction, as determined by the Debtor, in the exercise of its business judgment, will be designated as the backup bidder (the "**Backup Bidder**"). The Backup Bidder shall be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, the Backup Bidder's final Overbid) (the "**Backup Bid**") open and irrevocable until the earlier of (i) 5:00 p.m. (prevailing Eastern Time) on the date that is at least twenty-one (21) days after the date of entry of the Sale Order (the "**Outside Backup Date**"), or (ii) the closing of the transaction with the Successful Bidder.

Following the Sale Hearing, if the Successful Bidder fails to consummate an approved transaction, the Backup Bidder will be deemed to maintain the new prevailing bid, and the Debtor will be authorized, but not required, without further order of the Bankruptcy Court, to consummate the Sale with the Backup Bidder.

**Sale Is As Is/Where Is**

Except as otherwise provided in the Successful Bidder Purchase Agreement or the Sale Order, the Acquired Assets or any other assets of the Debtor sold pursuant to the Bidding Procedures, shall be conveyed at the closing of a transaction with a Successful Bidder in their then-present condition, "**AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED**." Except as may be set forth in the Successful Bidder Purchase Agreement or the Sale Order, the Acquired Assets are sold free and clear of any and all liens, claims, interests, restrictions, charges and encumbrances of any kind or nature to the fullest extent permissible under the Bankruptcy Code, with such liens, claims, interests, restrictions, charges, and encumbrances to attach to the net proceeds of sale with the same validity and with the same priority.

**Sale Objections and Hearing**

A hearing to consider approval of the Successful Bid (the "**Sale Hearing**") is scheduled to take place on **March 11, 2020 at 11:00 a.m. (EST)** before the Honorable Shelley C. Chapman, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004, Courtroom 623, or at such time thereafter as counsel may be heard. At the Sale Hearing, the Debtor will present the Successful Bid to the Bankruptcy Court for approval; provided, however, to the extent that the Successful Bid is to be implemented pursuant to a Plan, the Sale Hearing shall be used as a status conference.

Objections to the Sale (each, a "**Sale Objection**"), shall (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtor, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Court

(a) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (vi) be served upon the Objection Notice Parties (as defined in the in the Bidding Procedures Order) by **March 4, 2020 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**"); provided, that the Debtor may extend the Sale Objection Deadline, as the Debtor deems appropriate in the exercise of their reasonable business judgment and in consultation with the Consultation Parties.  If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the Sale Hearing.

Each Successful Bidder shall appear at the Sale Hearing and be prepared to have a representative(s) testify in support of its Successful Bid and such Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and/or assigned as part of the proposed transaction.

Any party who fails to file with the Court and serve on the Objection Notice Parties a Sale Objection by the Sale Objection Deadline may be forever barred from asserting, at the Sale Hearing or thereafter, any Sale Objection to the relief requested in the Motion with regard to a Successful Bidder, or to the consummation and performance of a Sale contemplated by a purchase or investment agreement between the Debtor and each Successful Bidder, including the transfer of assets to such Successful Bidder, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 1141(c) of the Bankruptcy Code.

For the avoidance of doubt and notwithstanding anything herein to the contrary, nothing in these Bidding Procedures shall, or shall be construed to, in any way amend, impair, prejudice, alter or otherwise modify the terms of the DIP Credit Agreement or the rights of the DIP Lender thereunder.

## Return of Good Faith Deposits of Qualified Bidders

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtor but shall not become property of the Debtor's estate absent further order of the Bankruptcy Court. The Good Faith Deposit of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after the Sale Hearing. If the Backup Bidder is not designated the Successful Bidder, the Good Faith Deposit of the Backup Bidder, if any, shall be returned to the Backup Bidder on the date that is the earlier of forty-eight (48) hours after (a) the closing of the transaction with the Successful Bidder and (b) the Outside Backup Date.  In the case of a breach or failure to perform on the part of the Successful Bidder (including any Backup Bidder designated as a Successful Bidder), the remaining portion of the defaulting Successful Bidder's Good Faith Deposit shall be forfeited to the Debtor as liquidated damages, in addition to any and all rights, remedies and/or causes of action that may be available to the Debtor at law or in equity, and, the Debtor shall be free to consummate the proposed transaction at the next highest price bid at the Auction by a Qualified Bidder, without the need for an additional

16

hearings or orders of the Courts. The Debtor reserves the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures. Upon the return of the Good Faith Deposits, their respective bidders shall receive any and all interest that will have accrued thereon. If the Successful Bidder timely closes the Sale transaction, its Good Faith Deposit shall be credited towards the purchase price.

### The Consultation Parties

Throughout the bidding process, the Debtor and its advisors will regularly and timely consult with the with, (i) George Washington Bridge Bus Station and Infrastructure Development Fund, LLC, as the senior secured lender, (ii) New York City Regional Center LLC, in its capacity as the DIP Lender, and (iii) the Port Authority of New York and New Jersey, and (iv) with respect to each of the forgoing (i) through (iii), their respective advisors (collectively, the "**Consultation Parties**" and each, a "**Consultation Party**") as explicitly provided for in the Bidding Procedures; provided, however, that the Debtor shall not be required to consult with any Consultation Party (and its advisors) that becomes a Qualified Bidder.

The Debtor shall promptly provide copies of all Bids (as defined below) and Non-Binding Indications of Interest received by the Debtor to the Consultation Parties, but in no event later than the next calendar day after such Bid or Non-Binding Indications of Interest is received.

All rights of the Senior Secured Lenders pursuant to the DIP Order,[4] DIP Credit Agreement,[5] or otherwise with respect to these Bidding Procedures and any potential Sale are fully reserved.

### Reservation of Rights of the Debtor

Except as otherwise provided in the Bidding Procedures or the Bidding Procedures Order, and subject to the rights of the Senior Secured Lenders and Consultation Parties, the Debtor reserves the right as it may reasonably determine to be in the best interest of its estate and in the exercise of its fiduciary duties to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reduce the Overbid amount; (e) reject any Bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (3) contrary to the best interests of the Debtor and its estate; (f) impose additional terms and

---

[4] The "**DIP Order**" means that certain *Final Order (I) Authorizing Debtor to (A) Obtain Post-petition Senior Secured Financing, and (B) Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Granting Certain Relief as to Rent Proceeds, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 62].

[5] The "**DIP Credit Agreement**" means that certain *Superpriority Senior Secured Debtor-in-Possession Loan Agreement dated October 11, 2019* by and among George Washington Bridge Bus Station Development Venture LLC and New York City Regional Center, LLC.

conditions with respect to all potential bidders; (g) extend the deadlines set forth herein; and (h) continue or cancel the Auction and/or Sale Hearing in open court without further notice.

Notwithstanding anything to the contrary contained herein, nothing in the Bidding Procedures will prevent the Debtor from considering any and all transactions, including, but not limited to, proposals to sponsor a plan of reorganization.

Notwithstanding anything to the contrary contained herein, nothing in the Bidding Procedures will prevent the Debtor from exercising its fiduciary duties under applicable law.

**Exhibit 2**

**Sale Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>GEORGE WASHINGTON BRIDGE BUS STATION DEVELOPMENT VENTURE LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 19-13196 (SCC) |

<u>**NOTICE OF AUCTION AND SALE HEARING**</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On October 7, 2019, the above-captioned debtor and debtor in possession (the "**Debtor**"), filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

2.      On November 5, 2019, in connection with the proposed sale (the "**Sale**") of certain assets (the "**Acquired Assets**") of the Debtor at an auction for the Acquired Assets (the "**Auction**") or proposals to sponsor a plan of reorganization (a "**Plan**"), the Debtor filed a motion (the "**Motion**"), seeking, among other things, (i) entry of an order (the "**Bidding Procedures Order**")[2] approving the bidding procedures (the "**Bidding Procedures**") governing the Sale; (ii) establishing procedures for the assignment and assumption of executory contracts and unexpired leases (the "**Assumption and Assignment Procedures**"); and (iii) granting related relief [Docket No. 67].

3.      On December ___, 2019, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. __].  Pursuant to the Bidding Procedures Order, if two or more Qualified Bids are received before the Bid Deadline, the Debtor will conduct the Auction to determine the highest or otherwise best Qualified Bid, beginning on March 3, 2020 at 10:00 a.m. (EST) at the offices of Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor, New York, New York 10019, or such other place and time as the Debtor shall notify all Qualified Bidders that have submitted Qualified Bids and any official committee appointed in the Debtor's Chapter 11 case and its counsel. Only the Debtor, the Consultation Parties, and parties that have submitted a Qualified Bid, as set forth in the Bidding Procedures Order, **by no later than February 28, 2020**

---

[1] The last four digits of the debtor's federal taxpayer identification number are 8685.  The debtor's business address is 626 South State Street, Newtown, Pennsylvania 18940.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Bidding Procedures Order.

**at 4:00 p.m. (EST)** (the "**Bid Deadline**") may participate at the Auction. Any party that wishes to take part in this process and submit a bid for the Debtor's assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

4.  A hearing to approve the Sale (the "**Sale Hearing**") will be held on March 11, 2020 at 11:00 a.m. (EST) before the Honorable Shelley C. Chapman, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004, Courtroom 623, or at such time thereafter as counsel may be heard, unless otherwise continued by the Debtor pursuant to terms of the Bidding Procedures.

5.  Objections, if any, to the Motion and the Sale of the Acquired Assets to a Successful Bidder, except objections related solely to the identity of the Successful Bidder and adequate assurance of future performance by a Successful Bidder, must be made by **March 4, 2020, at 4:00 p.m., prevailing Eastern Time** (the "**Sale Objection Deadline**"). Objections solely to the identity of the Successful Bidder and adequate assurance of future performance must be made by **4:00 p.m., prevailing Eastern Time** on the date that is two (2) business days before the Sale Hearing. In each case, all objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court no later than the Sale Objection Deadline or the Supplemental Limited Sale Objection Deadline, as applicable, and served on (i) counsel for the Debtor, and (ii) any other entity on the Master Service List. *Any party who fails to timely file an objection to entry of the Sale Order (i) shall be forever barred from objecting thereto, (ii) shall be deemed to consent to the sale of the Acquired Assets as approved by the Sale Order, and (iii) shall be deemed to "consent" for purposes of Section 363(f)(2) of the Bankruptcy Code.*

*[The remainder of this page is intentionally blank]*

6.      This Notice and the Sale Hearing is subject to the fuller terms and conditions of the Motion and the Bidding Procedures Order, which shall control in the event of any conflict, and the Debtor encourages parties-in-interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of all or substantially all of the Debtor's assets and/or copies of any related document, including the Motion, or the Bidding Procedures Order, may make a written request to counsel for the Debtor, Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor, New York, New York 10019, Attention: Ryan Jareck (rjareck@coleschotz.com) and Felice Yudkin (fyudkin@coleschotz.com). In addition, copies of the Motion, the Bidding Procedures Order and this Notice can be found through PACER on the Court's website, https://ecf.nysb.uscourts.gov (registration required), and are on file with the Clerk of the Bankruptcy Court, One Bowling Green, New York, NY 10004.


Dated: December __, 2019
        New York, New York

                              **COLE SCHOTZ P.C.**


                              */s/*_____
                              Michael D. Sirota
                              Felice R. Yudkin
                              Ryan T. Jareck
                              Mark Tsukerman
                              Rebecca W. Hollander
                              1325 Avenue of the Americas, 19th Floor
                              New York, New York 10019
                              Telephone: (212) 752-8000

                              *Counsel to the Debtor and Debtor in Possession*

4

**<u>Exhibit 3</u>**

**Contract Assumption Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>GEORGE WASHINGTON BRIDGE BUS<br>STATION DEVELOPMENT VENTURE<br>LLC,[1]<br><br>        Debtor. | Chapter 11<br><br>Case No. 19-13196 (SCC) |

**NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT OF**
**CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

PLEASE TAKE NOTICE THAT:

   1.  On October 7, 2019, the above-captioned debtor and debtor in possession (the "**Debtor**"), filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

   2.  On November 5, 2019, in connection with the proposed sale (the "**Sale**") of certain assets (the "**Acquired Assets**") of the Debtor at an auction for the Acquired Assets (the "**Auction**") or proposals to sponsor a plan of reorganization (a "**Plan**"), the Debtor filed a motion (the "**Motion**"), seeking, among other things, (i) entry of an order (the "**Bidding Procedures Order**")[2] approving the bidding procedures (the "**Bidding Procedures**") governing the Sale; (ii) establishing procedures for the assignment and assumption of executory contracts and unexpired leases (the "**Assumption and Assignment Procedures**"); and (iii) granting related relief [Docket No. 67].

   3.  Pursuant to the Bidding Procedures Order, the Debtor hereby provides notice that it is seeking to assume and assign to the Successful Bidder the executory contracts and/or unexpired leases (each, an "**Assigned Contract**") listed on **Exhibit A** attached hereto.

   4.  When the Debtor assumes and assigns an Assigned Contract to which you are a party, on the closing date of the Sale, or as soon thereafter as practicable, the Successful Bidder will pay you the amount the Debtor's records reflect is owing for prepetition arrearages as set forth on **Exhibit A** (the "**Cure Payment**"). The Debtor's records reflect that all postpetition

---

[1] The last four digits of the debtor's federal taxpayer identification number are 8685.  The debtor's business address is 626 South State Street, Newtown, Pennsylvania 18940.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Bidding Procedures Order.

2

amounts owing under your Assigned Contract have been paid and will continue to be paid in the ordinary course of business until the assumption and assignment of the Assigned Contract, and that other than the Cure Payment, there are no other defaults under the Assigned Contract.

5.       Inclusion of an executory contract or unexpired lease as an Assigned Contract on **Exhibit A** is not a guarantee that such executory contract or unexpired lease will ultimately be assumed and assigned to the Successful Bidder. Should it be determined that the Assigned Contract to which you are a party will not be assumed and assigned, you will be notified in writing.

6.       Under the terms of the Bidding Procedures, the Successful Bidder may modify the list of Assigned Contracts on **Exhibit A** at any time prior to three (3) business days before the Sale Hearing (the "**Designation Deadline**"), and the Debtor reserves the right at any time before the closing of a Sale, to (i) supplement the list of Assigned Contracts with previously omitted executory contracts, (ii) remove Assigned Contracts from the list of executory contracts ultimately selected as Assigned Contracts that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale, and/or (iii) modify the previously stated Cure Payment associated with any Assigned Contracts. In the event the Debtor exercises any of these reserved rights, the Debtor will promptly serve a supplemental notice of contract assumption (a "**Supplemental Assumption Notice**"); provided, however, the Debtor may not add an executory contract or unexpired lease to the list of Assigned Contracts that has been previously rejected by the Debtor by order of the Court.

7.       Objections, if any, to the proposed Cure Payment or assumption and assignment must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed amount of the Cure Payment, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by counsel to the Debtor on or before **14 days after service of this Contract Assumption Notice** (the "**Cure Objection Deadline**"), or such deadline set forth in the applicable Supplemental Assumption Notice. The deadline to object to assumption and assignment solely with respect to the adequate assurance of future performance shall be extended to the date that is two days after the conclusion of the Auction, but any such objection must be received before the start of the Sale Hearing; provided, however, and for the avoidance of doubt, the deadline to object to the Cure Payment shall not be extended.

8.       If an objection to the Cure Payment or assumption and assignment is timely filed and not resolved by the parties, a hearing with respect to the objection will take place in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004 at the Sale Hearing to be held at 11:00 a.m. (prevailing Eastern Time) on March 11, 2020, or at a later hearing, as determined by the Debtor. A hearing regarding the Cure Payment, if any, may be continued at the discretion of the Debtor until after the Closing.

9.       **Any party failing to timely file an objection to the Cure Payment, the proposed assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on the Contract Assumption Notice or Supplemental Assumption Notice, or**

the Sale will be deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Assigned Contract or Additional Assigned Contract (including the adequate assurance of future performance), (c) the related relief requested in the Motion, and (d) the Sale. Such party will be forever barred and estopped from objecting to the Cure Payments, the assumption and assignment of the Assigned Contract, or Additional Assigned Contract, the adequate assurance of future performance or the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtor and the Successful Bidder with respect to such party's Assigned Contract or Additional Assigned Contract.

10.     After the Auction, the Debtor will file, but not serve, a notice that identifies the Successful Bidder. The Debtor and/or the Successful Bidder reserves all of their rights, claims and causes of action with respect to the Assigned Contracts listed on **Exhibit A** hereto. Notwithstanding anything to the contrary herein, the proposed assumption and assignment of each of the Assigned Contracts listed on **Exhibit A** hereto (a) shall not be an admission as to whether any such Assigned Contract was executory or unexpired as of the Petition Date or remains executory or unexpired postpetition within the meaning of Bankruptcy Code section 365; and (b) shall be subject to the Debtor's and/or any Successful Bidder's right to conduct further diligence with respect to the Cure Payment of each Assigned Contract and to modify such Cure Payment accordingly. In the event that the Debtor and/or any Successful Bidder determine that your Cure Payment should be modified, you will receive a notice, which will provide for additional time to object to such proposed modification.

Dated: _____, 2019                    Respectfully submitted,
New York, New York

                                               **COLE SCHOTZ P.C.**


                                               */s/*_____
                                               Michael D. Sirota
                                               Felice R. Yudkin
                                               Ryan T. Jareck
                                               Mark Tsukerman
                                               Rebecca W. Hollander
                                               1325 Avenue of the Americas, 19th Floor
                                               New York, New York 10019
                                               Telephone: (212) 752-8000
                                               *Counsel to the Debtor and Debtor in Possession*

48036/0050-18238240v2