**HUGHES HUBBARD & REED LLP**
Kathryn A. Coleman
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 837-6000
E-Mail: katie.coleman@hugheshubbard.com

**NIDA & ROMYN, P.C.**
Robert Nida
1900 Avenue of the Stars, Suite 650
Los Angeles, CA 90067
Telephone: (310) 286-3400
E-Mail: rnida@nidaromyn.com

**BUCHALTER, P.C.**
Jeffrey K. Garfinkle
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: (949) 760-1121
E-Mail: jgarfinkle@buchalter.com

*Counsel for Tutor Perini Building Corp.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GEORGE WASHINGTON BRIDGE BUS STATION DEVELOPMENT VENTURE, LLC, | Case No. 19-13196 DSJ |
| Debtors. | |

**TUTOR PERINI BUILDING CORP.'S OBJECTION AND RESERVATION OF RIGHTS WITH RESPECT TO DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO 11 U.S.C. § 1125 FOR THE FIRST AMENDED PLAN OF GEORGE WASHINGTON BRIDGE BUS STATION DEVELOPMENT VENTURE LLC**

BN 45234149v5

Tutor Perini Building Corp. ("Tutor Perini"), by and through its undersigned counsel, hereby files this objection and reservation of rights (the "Objection") with respect to the (i) *Disclosure Statement Pursuant to 11 U.S.C. § 1125 for the First Amended Chapter 11 Plan of George Washington Bridge Bus Station Development Venture LLC* [Docket No. 469] (the "Disclosure Statement") and (ii) *Debtor's Renewed Motion for an Order (I) Approving Notice of Disclosure Statement Hearing; (II) Approving Disclosure Statement; (III) Establishing Record Date; (IV) Establishing Notice and Objection Procedures for Confirmation of First Amended Plan; (V) Approving Solicitation Packages and Procedures for Distribution Thereof; (VI) Approving Forms of Ballot and Establishing Procedures for Voting on First Amended Plan; and (VII) Approving Forms of Notice to Non-Voting Classes Under Plan* [Docket No. 470] (the "Solicitation Motion").  In support of this Objection, Tutor Perini respectfully states as follows:

### I.     PRELIMINARY STATEMENT

1.      Tutor Perini files this Objection to raise—and reserve its rights—with respect to two specific issues.  *First*, Tutor Perini does not consent to the releases set forth in the First Amended Plan.  Tutor Perini intends to "opt out" of the First Amended Plan's releases in the event that Tutor Perini is served with a ballot for the general unsecured creditor class or otherwise.  The Debtor should take this Objection as notice that Tutor Perini does not consent to the releases set forth in Article X of the First Amended Plan.  Tutor Perini is currently engaged in active litigation in other forums against certain of the Released Parties under the First Amended Plan.  In order to provide adequate information to creditors and other parties in interest, Tutor Perini respectfully requests that the Court order that the Debtor must amend the Disclosure Statement to reflect the fact that none of Tutor Perini's claims against the Released Parties will be released under the First Amended Plan.

2.      *Second*, the Debtor's proposed transaction—namely, the sale of substantially all of the Debtor's assets to the Purchaser—embodied in the First Amended Plan and Disclosure Statement (the "Sale Transaction") does not make any allowance for the payment of Tutor Perini's cure claim in connection with the assumption and assignment of the Ground Lease. Whether Tutor Perini holds a cure claim under the Ground Lease pursuant to Bankruptcy Code section 365(b) or as a third-party beneficiary is currently on appeal before Judge Rakoff. The issues have been fully briefed and argued, and the parties are awaiting Judge Rakoff's decision. Tutor Perini understands and acknowledges the statements made on the record on April 13, 2021 by counsel for the Debtor and counsel for the Purchaser in connection with the Court's consideration of the *Debtor's Supplemental Motion for an Order (I) Approving Stalking Horse Bidder, (II) Authorizing Bid Protections, and (III) Granting Related Relief* [Docket No. 467] regarding the fact that the Sale Transaction will not close in the event that Tutor Perini's position is ultimately successful on appeal. Accordingly, Tutor Perini raises the foregoing issue simply to reserve its rights with respect to the same pending the outcome of the disputed ground lease issues appeal.[1]

## II.     BACKGROUND

### A.     The Project

3.      The Debtor in this case is the developer of a public-private venture between the Port Authority, the owner of the George Washington Bridge Bus Station (the "Bus Station"), and the Debtor. The Project included building a new bus station and a large retail center.

4.      On June 30, 2011, the Port Authority approved a $183.2 million renovation and improvement plan for the Bus Station. The Port Authority provided a substantial amount of the

---

[1] Tutor Perini further acknowledges that the Court may prefer to address the foregoing objections at the confirmation stage, rather than in connection with the Disclosure Statement. Tutor Perini respectfully reserves its rights to raise the issues—and any additional confirmation issues—at confirmation.

2

funding for the construction of the Project. However, the Debtor needed additional capital to fund the construction. The Debtor secured funding from a variety of sources, including from certain lenders (the "Loans"). Together, these Loans totaled approximately $105 million in principal amount, the repayment of which was secured by, among other things, leasehold mortgages and assignments of rents.

5. The Debtor was responsible for the construction of both the retail and bus station components of the Project, in part using funds paid by the Port Authority. The Debtor hired Tutor Perini as general contractor for the Project. The Debtor leases the Bus Station from the Port Authority pursuant to that certain Agreement of Lease by and between The Port Authority of New York and New Jersey and George Washington Bridge Bus Station Development Venture LLC, dated July 21, 2011—*i.e.*, the Ground Lease.

6. Section 5.7(c) of the Ground Lease provides, in relevant part, that "[p]rovided that the Port Authority shall pay the amounts due and owing under Section 5.4 hereof, the [Debtor] shall pay all claims lawfully made against it by its contractors, subcontractors, material-men and workmen and all claims lawfully made against it by other third persons arising out of or in connection with or because of the performance of the Construction Work and shall cause its contractors and subcontractors to pay all such claims lawfully made against them."[2]

---

[2] "Construction Work" is a defined term in the Ground Lease. *See* Article 1 ("Construction Work shall have the meaning provided in Subsection 5.1.2(b) hereof.") Subsection 5.1.2(b) of the Ground Lease sets forth the work required to be performed by the Debtor to complete the Project, which work is defined as the Construction Work.

BN 45234149v5

**B.      The Chapter 11 Case**

7.      On October 7, 2019, the Debtor commenced the Chapter 11 Case by filing a petition for relief under chapter 11 of the Bankruptcy Code.

8.      On December 4, 2019, the Court entered the Bid Procedures Order.[3]  The Bid Procedures Order contemplates that the Debtor will undertake a sale process intended to culminate in a sale of substantially all of the Debtor's assets, including the assumption and assignment of the Ground Lease under section 365(b) of the Bankruptcy Code.

9.      In the Chapter 11 Case, both the Port Authority and Tutor Perini asserted cure rights under section 5.7(c) of the Ground Lease and section 365(b)(1)(A) of the Bankruptcy Code in connection with the Debtor's contemplated assumption and assignment of the Ground Lease.  Tutor Perini has raised its cure rights from the outset of the Chapter 11 Case.

10.     The Bankruptcy Court determined that the adjudication of Tutor Perini's and the Port Authority's rights to cure claims, and other related issues, was effectively a precondition to the Debtor being able to effectively market the Ground Lease for assignment.  On January 23, 2020, the parties outlined on the record an agreement in principle regarding a briefing schedule and hearing date for the Court's adjudication of certain issues relating to the Ground Lease (the "Ground Lease Issues").  The Ground Lease Issues included, among other things, whether Tutor Perini and the Port Authority held cure claims under section 5.7(c) and Bankruptcy Code section 365(b)(1)(A) and whether Tutor Perini was a third party beneficiary under the Ground Lease.

11.     On January 28, 2020, the Court entered its *Stipulated Order Regarding Adjudication of "Cure" and Indemnification Disputes* [Docket No. 165], which provided for,

---

[3]  As used herein, "Bid Procedures Order" refers to the *Order (A) Approving Bidding Procedures and Form of Asset Purchase Agreement in Connection with the Sale of Substantially All of the Debtor's Assets, (B) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief.*

4

*inter alia*, the parties to file briefs and supplementary evidence regarding the Ground Lease Issues.

12. On February 10, 2020, Tutor Perini filed the *Opening Brief of Tutor Perini Building Corp. Regarding Cure and Indemnification Disputes* [Docket No. 173]. On February 10, 2020, the Port Authority, the Debtor, and the Regional Center each also filed their respective opening briefs regarding the Ground Lease Issues.

13. On February 11, 2020, the Court entered an Order [Docket No. 183] appointing the Honorable Michael E. Wiles as mediator to conduct a mediation of the Ground Lease Issues.

14. On February 20, 2020, Tutor Perini, the Port Authority, the Debtor, and the Regional Center each filed their respective responsive briefs regarding the Ground Lease Issues.

15. On February 26, 2020, Tutor Perini filed *Tutor Perini Building Corp.'s Objection to Cure Notice* [Docket No. 218] (the "Cure Notice Objection"), which objected to *the Debtor's Notice of Proposed Assumption and Assignment of Certain Executory Contracts and Unexpired Leases*, dated February 12, 2020, on the bases set forth in the Cure Notice Objection.

16. The Ground Lease Issues were originally scheduled to be considered by the Court on February 25, 2020. However, the Court adjourned such hearing multiple times at the Debtor's request. *See*, *e.g.*, Docket Nos. 213, 260, 269, 277, 284, and 291.

17. On June 5, 2020, the Debtor filed a motion seeking approval of the Settlement with the Port Authority and the Regional Center pursuant to section 105(a) and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Settlement Motion") [Docket No. 289].

18. On July 14, 2020, the Bankruptcy Court held a hearing on the Settlement Motion and the Ground Lease Issues. The Bankruptcy Court read its ruling into the record, which bench ruling was ultimately incorporated into the Bankruptcy Court's orders adjudicating the

5

Settlement Motion and the Ground Lease Issues.  The Bankruptcy Court approved the Settlement Motion and overruled Tutor Perini's 9019 Limited Objection.  The Bankruptcy Court ruled in favor of the Debtor and Regional Center on the Ground Lease Issues.

19. On August 11, 2020, the Bankruptcy Court entered its *Order Regarding Disputed Ground Lease Issues* [Docket No. 358].

20. On August 20, 2020, Tutor Perini timely filed its *Notice of Appeal relating to the Order Regarding Disputed Ground Lease Issues* [Docket No. 372].

21. The parties have completed their briefing in the appeal of the disputed ground lease issues before Judge Rakoff.  On March 12, 2021, Judge Rakoff heard oral arguments on the disputed ground lease issues, including Tutor Perini's cure claim.  Judge Rakoff has indicated that he intends to issue his decision on the appeal in April 2021.

22. On March 25, 2021, the Debtor filed the Solicitation Motion, Disclosure Statement, and First Amended Plan.

### III.    LEGAL ARGUMENT

23. Bankruptcy Code section 1125(b) provides that a disclosure statement must contain "adequate information" regarding the plan. Bankruptcy Code section 1125(a)(1) defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information

> to creditors and other parties in interest, and the cost of providing additional information.

*See* 11 U.S.C. § 1125(a)(1). Non-bankruptcy litigation related to the debtor is one of a host of factors that the bankruptcy courts consider in determining whether a disclosure statement contains adequate information. *See*, *e.g.*, *In re Ashley River Consulting, LLC*, 2015 Bankr. LEXIS 3819, at *27-28 (Bankr. S.D.N.Y. Nov. 6, 2015) (referencing a "non-exhaustive" list of 19 factors relevant to the adequate information analysis, including "litigation likely to arise in a nonbankruptcy context").

24. Here, Tutor Perini has litigation against certain of the Released Parties pending in federal and state courts. Tutor Perini has made clear that it will "opt out" of the First Amended Plan's release provisions, thereby preserving its claims against such parties. Accordingly, in order for the Disclosure Statement to contain adequate information in accordance with Bankruptcy Code section 1125(b), Tutor Perini requests that the Disclosure Statement be modified to reflect the fact that Tutor Perini's claims will not be released.

25. In addition, the First Amended Plan and sale transaction with the Purchaser provide for the Senior Secured Lender to acquire the vast majority of the value—*i.e.*, 90%—realized from any estate claims against insiders. *See* Disclosure Statement p. 10. The Debtor's Statement of Financial Affairs [Docket No. 63] and a 2019 general ledger produced by the Debtor during discovery established that the Debtor made substantial transfers—totaling more than $500,000—to multiple insiders during both the 90-day preference period and the extended the insider preference period. The value of the estate's avoidance and recovery claims against insiders should not be transferred for the benefit of the Senior Secured Lender, particularly in this case where unsecured creditor recoveries are projected to be less than 1%. The estate's

avoidance and recovery claims are not the Senior Secured Lender's collateral and should be preserved for the benefit of unsecured creditors—as they represent the only potential source of recovery by unsecured creditors. *See*, *e.g.*, *Bethlehem Steel Corp. v. Moran Towing Corp.* (*In re Bethlehem Steel Corp.*), 390 B.R. 784, 786-87 (Bankr. S.D.N.Y. 2008) ("Avoidance actions brought pursuant to the Bankruptcy Code never belonged to the Debtor, but rather were creditor claims that could only be brought by a trustee or debtor in possession…"). Moreover, the Disclosure Statement does not set forth a clear and concise listing of the claims and causes of action, including insider causes of action and the face amount of those claims (*i.e.*, the potential recovery amounts), that the Debtor proposes to transfer to the Senior Secured Lender. That omission is violative of the Debtor's disclosure obligations. *See e.g.*, *In re Huntsville Small Engines Inc.*, 228 B.R. 9, 13 (Bankr. N.D. Ala. 1998) (finding preference action precluded by plan confirmation under doctrine of res judicata where plan and disclosure statement only contained general reservation clause); *In re Bilstat, Inc.*, 314 B.R. 603 (Bankr. S.D. Tex. 2004). ("The Court concludes that the Trustee is judicially estopped from bringing an avoidance action that was not disclosed during the bankruptcy case despite an affirmative duty of the debtor to do so and despite actual litigation between the parties.").

26.     Tutor Perini hereby expressly reserves all of its rights, claims, defenses, and argument, including, without limitation, its right to object to confirmation of the First Amended Plan for the reasons set forth in this Objection.

BN 45234149v5

## IV. CONCLUSION

WHEREFORE, Tutor Perini respectfully requests that the Court sustain this Objection, and grant such other and further relief as is just and proper.

Respectfully submitted,

DATED: April 22, 2021

**BUCHALTER, P.C.**

/s/ *Jeffrey K. Garfinkle*
Jeffrey K. Garfinkle
18400 Von Karman Avenue, Suite 800
Irvine, CA  92612-0514
Telephone:  (949) 760-1121
E-Mail:  jgarfinkle@buchalter.com

**NIDA & ROMYN, P.C.**
Robert Nida
1900 Avenue of the Stars, Suite 650
Los Angeles, CA  90067
Telephone:  (310) 286-3400
E-Mail:  rnida@nidaromyn.com

**HUGHES HUBBARD & REED LLP**
Kathryn A. Coleman
One Battery Park Plaza
New York, NY  10004
Telephone:  (212) 837-6000
E-Mail:  katie.coleman@hugheshubbard.com

*Counsel for Tutor Perini Building Corp.*